No. 23-2366

# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

K.C., et al.,

*Plaintiffs-Appellees*,

v.

INDIVIDUAL MEMBERS OF THE MEDICAL LICENSING BOARD OF INDIANA, et al.,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Southern District of Indiana
Case No. 1:23-cv-00595-JPH-KMB

# RESPONSE TO MOTION TO STRIKE APPENDIX OF AMICUS CURIAE ALLIANCE DEFENDING FREEDOM

JACOB P. WARNER
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
jwarner@ADFlegal.org

JOHN J. BURSCH
JAMES A. CAMPBELL
ALLIANCE DEFENDING FREEDOM
440 First Street NW
Suite 600
Washington, DC 20001
(616) 450-4235
jbursch@ADFlegal.org
jcampbell@ADFlegal.org

*Attorneys for Amicus Curiae*

## INTRODUCTION

Alliance Defending Freedom (ADF) submitted an *amicus* brief that carefully followed this Court's rules, presenting unique facts and legal perspectives that the litigants have not fully developed. It wasn't a copy-cat brief, and it came with an appendix cataloging in one place all the materials the brief cites—materials that are otherwise publicly available.

Appellees move to strike that appendix—though not ADF's brief—arguing that the appendix contains extra-record material. In other words, Appellees do not object to ADF citing the materials and directing the Court to the materials' publicly available locations. But Appellees think the *Court* should do all the work of tracking the materials down rather than having them gathered in one, convenient location.

Granting the motion would be pointless and simply create more work for the Court. When deciding constitutional claims, this Court and the Supreme Court often review extra-record legislative facts, relying in part on *amici* to provide them. Striking the appendix would waste judicial resources, requiring this Court to electronically search for publicly available and reviewable sources that ADF has already collected. Striking the appendix would also remove helpful context. Scientific literature often presents complex ideas. While attorneys try their best to convey that information accurately, the appendix allows for easy comparison of the brief's assertions to the literature itself. More context is better. Because

the appendix contains entirely reviewable facts, this Court should summarily deny Appellees' motion.

## ARGUMENT

### I. This Court requires *amici* to present ideas, arguments, theories, insights, or facts not found in the parties' briefs.

This Court forbids "copycat" submissions, *Prairie Rivers Network v. Dynergy Midwest Generation, LLC*, 976 F.3d 761, 763 (7th Cir. 2020), that "essentially … duplicate[ ]" the parties' efforts. *Nat'l Org. for Women, Inc. v. Scheidler*, 223 F.3d 615, 617 (7th Cir. 2000). *Amici* should instead provide new "ideas, arguments, theories, insights, facts, or data" that may help this Court decide the case. *Prairie Rivers*, 976 F.3d at 762-63; *Voices for Choices v. Ill. Bell Tel. Co.*, 339 F.3d 542, 544-45 (7th Cir. 2003) (Posner, J., in chambers); *Practitioner's Handbook for Appeals to the United States Court of Appeals for the Seventh Circuit*, XXII.B "Amicus Briefs" (2020 ed.). And *amici* need not be impartial. *Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1063 (7th Cir. 1997); *Strasser v. Doorley*, 432 F.2d 567, 569 (1st Cir. 1970).

Appellees criticize ADF for following these rules, saying it improperly presents facts outside "the district court record." Mot. 3; *see id.* at 4. But ADF is not a party "to this action." *Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 518 F. Supp. 3d 448, 453 n.2 (D.D.C. 2021), *aff'd*, 50 F.4th 164 (D.C. Cir. 2022). As an *amicus*, ADF *should* provide

"*facts* [or] legal perspectives *that the litigants have not adequately developed.*" *Sierra Club, Inc. v. EPA*, 358 F.3d 516, 518 (7th Cir. 2004) (emphasis added); *accord Prairie Rivers*, 976 F.3d at 763; *see, e.g. Blue Earth Cnty. Pork Producers, Inc. v. Cnty. of Blue Earth*, 558 N.W.2d 25, 30 (Minn. Ct. App. 1997).[1]

Appellees get the rule exactly backward. To be sure, direct litigation parties should not improperly supplement the record on appeal. Mot. 4 (citing *Midwest Fence Corp. v. U.S. Dep't of Transp.*, 840 F.3d 932, 946-47 (7th Cir. 2016)). But *amici* "are not [so] limited." *Dep't of Ecology v. Wahkiakum Cnty.*, No. 44700-2-II, 2014 WL 3359685, at *1 (Wash. Ct. App. June 25, 2014) (citing *New Meadows Holding Co. v. Wash. Water Power Co.,* 687 P.2d 212 (Wash. 1984)). They may cite extra-record facts "given the[ir] unique purpose and position." *Id.*; *accord Sierra Club,* 358 F.3d at 518 (requiring *amici* to provide "facts [or] legal perspectives that the litigants have not adequately developed."). Indeed, this Court expressly requests *amici* to provide points "of fact, law, or policy overlooked"

---

[1] *See also Funbus Sys., Inc. v. State of Cal. Pub. Utilities Comm'n.*, 801 F.2d 1120, 1125 (9th Cir. 1986) (allowing amicus to submit "extra-record facts"); *Vill. of N. Atlanta v. Cook*, 133 S.E.2d 585, 589 (Ga. 1963) ("The function of an amicus curiae 'is to call the court's attention to law or facts or circumstances in a matter then before it that may otherwise escape its consideration.'") (citation omitted); *State v. Kuhlman*, 722 N.W.2d 1, 3 (Minn. Ct. App. 2006) ("An amicus brief … may provide articles and information that are in the public domain and may have escaped a reviewing court's attention.).

3

by the parties. *Scheidler*, 223 F.3d at 617; *accord Ryan*, 125 F.3d at 1063. And that is precisely what ADF's appendix does here.

## II. Appellate courts routinely consider extra-record legislative facts when deciding constitutional questions.

This *amici* help is critical in constitutional cases. Unlike historical facts, legislative facts are "reviewed without deference" to trial court findings below. *A Woman's Choice-E. Side Women's Clinic v. Newman*, 305 F.3d 684, 689 (7th Cir. 2002). When legislation has "major social" significance, appellate courts routinely "accept [certain] sources from outside the record" to decide "the constitutionality of a statute." *State v. Erickson*, 574 P.2d 1, 4-5 (Alaska 1978); *see* Judge Neal Nettesheim & Clare Ryan, *Friend of the Court Briefs: What the Curiae Wants in an Amicus,* Wis. Law. 11 (May 2007) ("If a case has broad importance – for instance, if it is in an emerging area of law or an area in which controlling case law is not in harmony or is nonexistent – an amicus brief can offer economic, social science, or political data vital to an informed decision.").

These sources provide legislative facts. Unlike adjudicative facts, which pertain to the parties before the court, *see* Mot. 4 (citing *Cass Cnty. Music Co. v. Muedini*, 55 F.3d 263, 264 n.2 (7th Cir. 1995)), legislative facts are "social, political, economic, or scientific facts," *Erickson*, 574 P.2d at 5, that "are not unique to a particular case" and do not "vary from locality to locality, or from person to person," *United States v. Turner*, 47

F.4th 509, 525 (7th Cir. 2022) (citation omitted). These facts provide critical "background." *Erickson*, 574 P.2d at 5. Appellate courts routinely review whether such facts reasonably support a challenged government action, considering both expert "record" evidence and extra-record "scientific commentaries." *Jones v. United States*, 548 A.2d 35, 41 (D.C. 1988) (collecting cases).

There are at least two reasons for this. First, consulting extra-record sources helps expose possible expert bias. *Jones*, 548 A.2d at 42. Outside scientific articles may provide "a sound basis"—and sometimes "the only basis—for rejecting" wayward expert testimony. *Id.*; *e.g. Commonwealth v. Fatalo*, 191 N.E.2d 479, 480 (Mass. 1963) (appellate court relied on published articles to reject expert opinion that polygraph is 95% reliable).

Second, whenever courts evaluate the "general acceptance of a scientific technique, there is an obvious logic, if not imperative, in investigating how the larger body of courts and commentators have come out." *Jones*, 548 A.2d at 42. Gleaning the broader consensus, as shown by "record" testimony *and* review of extra-record "scientific articles," is "useful if not essential" for setting the correct baseline. *Id.*; *accord Ga. Aquarium, Inc. v. Pritzker*, 135 F. Supp. 3d 1280, 1289 (N.D. Ga. 2015).[2]

---

[2] *See also* Stephanie Tai, *Friendly Science: Medical, Scientific, and Technical Amici Before the Supreme Court*, 78 Wash. U. L.Q. 789, 796 (2000) ("[S]cientific and technical amici may be most helpful to the Court in dis-

5

This Court agrees. In *Hope Clinic v. Ryan*, it reviewed whether two state laws regulating partial-birth abortion were constitutional. 195 F.3d 857 (7th Cir. 1999) (en banc), *vacated on other grounds*, *Christensen v. Doyle*, 530 U.S. 1271 (2000). This Court upheld both, relying both on record facts *and* citations to extra-record materials, including both scientific studies and partisan reports. *Id.*; *see id.* at 884-85 (Posner, J., dissenting). In dissent, Judge Posner expressed "no objection to a court's relying on extra-record evidence to determine" the effects of a proscribed medical procedure. *Id.* at 884. He said those "effects should … be treated as a legislative fact" to "avoid inconsistent results" across jurisdictions. *Id.* Judge Posner cautioned only that this Court should decide the issue after reviewing the "extra-record evidence" that best reflects "the consensus of the relevant expert community." *Id.* at 885. No one disputed that this Court could properly review extra-record legislative facts.

For good reason. Even when the U.S. Supreme Court relies heavily on the record below, it routinely considers extra-record evidence. Take *Stenberg v. Carhart*, where it reviewed Nebraska's partial-birth abortion ban by considering both "materials presented at trial" and supplemental extra-record "literature." 530 U.S. 914, 923, 929 (2000). As the Fourth Circuit observed, to decide that constitutional question, the Supreme

putes that implicate the procedural aspects of science rather than substantive scientific determinations because such meta-scientific information is less akin to "facts" ordinarily left to the determination of the trial court and more related to the establishment of legal rules.").

6

Court "supplemented the district court record with" extra-record "information from a significant array of medical sources," including "medical textbooks and journals relating to" relevant disciplines; factual records "developed in prior 'partial birth abortion' cases; and amicus briefs (with citations to medical authority)." *Richmond Med. Ctr. for Women v. Hicks*, 409 F.3d 619, 623 (4th Cir. 2005). That's par for the course.

Without helpful *amicus* briefs, the Court must do this research itself, which does not promote judicial efficiency. It's no surprise then that U.S. Supreme Court clerks report giving *amicus* briefs presenting "science data closer consideration." Kelly J. Lynch, *Best Friends? Supreme Court Law Clerks on Effective Amicus Curiae Briefs*, 20 J.L. & Pol. 33, 66 (2004). Most clerks say "such briefs are useful because they frequently add to the merits briefs in a way that the average amicus brief does not." *Id.* As one put it, "the farthest thing from a party argument is what is most helpful. For example, hard facts or … science data. Briefs that offer this information would be on the more helpful end of the spectrum. Often you wish you knew more facts than you get from a party brief." *Id.* Providing scientific material, as ADF has done here, "is a classic example of a helpful brief," because direct litigation "parties often do not have space to include [scientific] studies in their merits brief." *Id.* at 67.

### III. This Court should not strike the challenged appendix.

Appellees do not move to strike ADF's *amicus* brief. After all, the brief provides "facts [or] legal perspectives that the litigants have not adequately developed." *Sierra Club*, 358 F.3d at 518; *see* § I. And it offers supplemental legislative facts to help this Court decide a novel constitutional question. § II. The brief is plainly allowed. *Cf. Practitioner's Handbook for Appeals to the United States Court of Appeals for the Seventh Circuit*, XXII.B "Amicus Briefs" (2020 ed.). Instead, Appellees move only to strike that brief's appendix. This Court should deny that motion.

*First*, no rule forbids *amici* from filing an appendix of publicly available sources cited in a brief. That is reason enough to deny Appellees' motion.

*Second*, granting the motion would waste judicial resources. The appendix contains reviewable legislative facts. § II. ADF provided the appendix to help the Court easily review cited material. The Court can of course electronically search for the publicly available material itself—no matter how it decides Appellees' motion. § II. But the far easier course would be to keep and use the appendix instead. It's there for convenience. This Court should encourage parties to help preserve judicial resources, not require them to unnecessarily burden it with extra work.

*Third*, while the appendix need not overlap the record below, § II; *e.g. Blue Earth*, 558 N.W.2d at 30; *Kuhlman*, 722 N.W.2d at 3; it substan-

tially relates to the record. On Appellees' count, 25 of 38 appendix documents were "referenced" by at least one of the parties' eight experts. Mot. 3. Nothing prevents this Court from seeing referenced materials, whether from cases or scientific literature. In fact, this Court *should* review cited materials to weigh the scientific evidence. *See Hope Clinic*, 195 F.3d at 885 (Posner, J., dissenting); *see id.* at 873.

*Finally*, the appendix provides helpful context. Scientific literature often presents complex ideas. Attorneys try their best to convey that information accurately. The provided appendix allows this Court to easily compare the brief's assertions to what the literature says. More context is better when this Court is asked to consider legislative facts.

## CONCLUSION

Because this Court may review legislative facts when deciding constitutional questions, the appendix is both helpful and allowed. Striking it would waste judicial resources, remove context, and require the Court to electronically search for reviewable materials it could easily see all in one place. This Court should summarily deny Appellees' motion.

Dated: September 14, 2023

                            Respectfully submitted,

                            */s/ John J. Bursch*

JACOB P. WARNER             JOHN J. BURSCH
ALLIANCE DEFENDING FREEDOM    JAMES A. CAMPBELL
15100 N. 90th Street              ALLIANCE DEFENDING FREEDOM
Scottsdale, AZ 85260            440 First Street NW, Suite 600
(480) 444-0020                   Washington, DC 20001
jwarner@ADFlegal.org           (616) 450-4235
                                     jbursch@ADFlegal.org

                      *Attorneys for Amicus Curiae*

# CERTIFICATE OF COMPLIANCE

This response complies with the word limit of Fed. R. App. P. 27(d) because it contains 2,114 words, excluding parts exempted by Fed. R. App. P. 32(f).

This response complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in Word 365 using a proportionally spaced typeface, 14-point Century Schoolbook.

Dated: September 14, 2023

*/s/ John J. Bursch*
John J. Bursch

*Attorney for Amicus Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2023, I electronically filed the foregoing response with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ John J. Bursch*
John J. Bursch

*Attorney for Amicus Curiae*