No. 23-2366

# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

K.C., ET AL.,
*Plaintiffs-Appellees*,

*v.*

INDIVIDUAL MEMBERS OF THE MEDICAL LICENSING BOARD
OF INDIANA, ET AL.,
*Defendants-Appellants*.

On Appeal from the United States District Court
for the Southern District of Indiana, Case No. 1:23-cv-00595-JPH-KMB
Before the Honorable James P. Hanlon

## BRIEF OF FOREIGN NON-PROFIT ORGANIZATIONS ADVOCATING FOR THE RIGHTS OF TRANSGENDER PEOPLE AS AMICI CURIAE IN SUPPORT OF PLAINTIFFS-APPELLEES AND AFFIRMANCE

ANDREW RHYS DAVIES
  *Counsel of Record*
CHARLES C. BRIDGE
EMILY BRODY-BIZAR
ANNA MIZZI
DUY NGUYEN
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY  10007
(212) 230-8800

September 27, 2023

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>23-2366</u>

Short Caption: <u>K.C., et al. v. Individual Members of the Medical Licensing Board of Indiana, et al.</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

<u>Stonewall Equality Limited and 8 additional foreign non-profit organizations (see Addendum, Appendix A)</u>

_____

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

<u>Wilmer Cutler Pickering Hale and Dorr LLP</u>

_____

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        <u>None.</u>

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        <u>None.</u>

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

<u>n/a</u>

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

<u>n/a</u>

Attorney's Signature: <u>/s/ Andrew Rhys Davies</u>    Date: <u>September 27, 2023</u>

Attorney's Printed Name: <u>Andrew Rhys Davies</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ☑  No ☐

Address: <u>Wilmer Cutler Pickering Hale and Dorr LLP</u>

        <u>7 World Trade Center, 250 Greenwich Street, New York, NY  10007</u>

Phone Number: <u>(212) 230-8800</u>    Fax Number: <u>(212) 230-8888</u>

E-Mail Address: <u>andrew.davies@wilmerhale.com</u>

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2366

Short Caption: K.C., et al. v. Individual Members of the Medical Licensing Board of Indiana, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

        ☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)      The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

        Stonewall Equality Limited and 8 additional foreign non-profit organizations (see Addendum, Appendix A)

(2)      The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

        Wilmer Cutler Pickering Hale and Dorr LLP

(3)      If the party, amicus or intervenor is a corporation:

        i)      Identify all its parent corporations, if any; and

           None.

        ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

           None.

(4)      Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

        n/a

(5)      Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

        n/a

Attorney's Signature: /s/ Charles C. Bridge      Date: September 27, 2023

Attorney's Printed Name: Charles C. Bridge

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ☐   No ☑

Address: Wilmer Cutler Pickering Hale and Dorr LLP

        7 World Trade Center, 250 Greenwich Street, New York, NY 10007

Phone Number: (212) 230-8800      Fax Number: (212) 230-8888

E-Mail Address: charles.bridge@wilmerhale.com

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2366

Short Caption: K.C., et al. v. Individual Members of the Medical Licensing Board of Indiana, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Stonewall Equality Limited and 8 additional foreign non-profit organizations (see Addendum, Appendix A)

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Wilmer Cutler Pickering Hale and Dorr LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

    None.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

    None.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    n/a

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    n/a

Attorney's Signature: /s/ Emily Brody-Bizar      Date: September 27, 2023

Attorney's Printed Name: Emily Brody-Bizar

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐   No ☑

Address: Wilmer Cutler Pickering Hale and Dorr LLP

    7 World Trade Center, 250 Greenwich Street, New York, NY 10007

Phone Number: (212) 230-8800      Fax Number: (212) 230-8888

E-Mail Address: emily.brody-bizar@wilmerhale.com

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2366

Short Caption: K.C., et al. v. Individual Members of the Medical Licensing Board of Indiana, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Stonewall Equality Limited and 8 additional foreign non-profit organizations (see Addendum, Appendix A)

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Wilmer Cutler Pickering Hale and Dorr LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and
    None.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:
    None.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:
    n/a

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:
    n/a

Attorney's Signature: /s/ Anna Mizzi    Date: September 27, 2023

Attorney's Printed Name: Anna Mizzi

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: Wilmer Cutler Pickering Hale and Dorr LLP

    7 World Trade Center, 250 Greenwich Street, New York, NY 10007

Phone Number: (212) 230-8800    Fax Number: (212) 230-8888

E-Mail Address: anna.mizzi@wilmerhale.com

rev. 12/19 AK

Save As    Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2366

Short Caption: K.C., et al. v. Individual Members of the Medical Licensing Board of Indiana, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Stonewall Equality Limited and 8 additional foreign non-profit organizations (see Addendum, Appendix A)

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Wilmer Cutler Pickering Hale and Dorr LLP

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

None.

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

None.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

n/a

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

n/a

Attorney's Signature: /s/ Duy Nguyen    Date: September 27, 2023

Attorney's Printed Name: Duy Nguyen

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: Wilmer Cutler Pickering Hale and Dorr LLP

7 World Trade Center, 250 Greenwich Street, New York, NY 10007

Phone Number: (212) 230-8800    Fax Number: (212) 230-8888

E-Mail Address: duy.nguyen@wilmerhale.com

rev. 12/19 AK

**ADDENDUM TO FRAP 26.1 STATEMENTS**

**LIST OF AMICI CURIAE FOREIGN NON-PROFIT ORGANIZATIONS**

*K.C., et al. v. Medical Licensing Board*, No. 23-2366

(1)     Stonewall Equality Limited

(2)     Swedish Federation for Lesbian, Gay, Bisexual, Transgender, Queer and Intersex Rights ("RFSL")

(3)     Seta ry / Seta rf / Seta Lgbtiq Rights in Finland

(4)     Norwegian Organization for Sexual and Gender Diversity

(5)     Australian Professional Association for Trans Health

(6)     LGBT+ Denmark

(7)     Bundesverband Trans* e.V.

(8)     Fundación Colectivo Hombres XX, AC

(9)     Professional Association for Transgender Health Aotearoa New Zealand

# TABLE OF CONTENTS

Page

DISCLOSURE OF CORPORATE AFFILIATIONS AND
    FINANCIAL INTEREST ................................................................i

TABLE OF AUTHORITIES ............................................................ iii

INTEREST OF AMICI CURIAE ........................................................1

SUMMARY OF ARGUMENT .............................................................2

ARGUMENT ...................................................................................4

I.    ADOLESCENTS HAVE ACCESS TO APPROPRIATE GENDER-
      AFFIRMING HEALTHCARE IN THE UNITED KINGDOM, FINLAND,
      SWEDEN, AND NORWAY ..........................................................4

      A.    United Kingdom ..........................................................4

      B.    Finland .......................................................................9

      C.    Sweden ......................................................................12

      D.    Norway ......................................................................14

II.   GENDER-AFFIRMING HEALTHCARE IS AVAILABLE TO
      ADOLESCENTS IN OTHER DEVELOPED COUNTRIES AS WELL ........15

      A.    Australia ....................................................................16

      B.    Denmark ....................................................................17

      C.    Germany ....................................................................18

      D.    Mexico .......................................................................19

      E.    New Zealand..............................................................20

CONCLUSION ...............................................................................23

CERTIFICATE OF COMPLIANCE

APPENDIX A

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Bell v. Tavistock & Portman NHS Foundation Trust*,
 [2021] EWCA 1363 (Civ) ...........................................................8, 9

*Gillick v. West Norfolk & Wisbech Health Authority*,
 [1986] 1 AC 112 (HL) ....................................................................8

*Re Imogen* (No. 6),
 [2020] FamCA 761 (Austl.)............................................................17

*Re J (An Infant): B & B v. Director-General of Social Welfare*,
 [1996] 2 NZLR 134 (N.Z.) .............................................................20

*Secretary, Department of Health & Community Services v. JWB & SMB*,
 (1992) 175 CLR 218 (Austl.) .........................................................16

## STATUTES

Ind. Code. §§ 25-1-22-1 *et seq.* .................................................................2

## FOREIGN LEGISLATIVE MATERIALS

Care of Children Act 2004, Public Act 2004 No. 90, https://legislation
 .govt.nz/act/public/2004/0090/latest/DLM317233.html ..............................20

Sveriges Riksdag, Health and Medical Services Act (2017),
 SFS No. 2017:30 (Swed.), https://www.riksdagen.se/sv/
 dokument-lagar/dokument/svensk-forfattningssamling/halso--
 och-sjukvardslag-201730_sfs-2017-30 .......................................13

## OTHER AUTHORITIES

Amendments to Service Specification for Gender Identity
 Development Service for Children and Adolescents (Oct. 6,
 2021), http://qna.files.parliament.uk/qna-attachments/1258355/
 original/HL11064-Amendment-to-Gender-Identity-
 Development-Service-Specification-for-Children-and-
 Adolescents.pdf ..............................................................6

Académie Nationale de Médecine, *Medicine and Gender Transidentity in Children and Adolescents* (Feb. 25, 2022) ....................................................15

AusPATH, *Australian Standards of Care and Treatment Guidelines for Trans and Gender Diverse Children and Adolescents* (Nov. 2020), https://www.rch.org.au/uploadedFiles/Main/Content/adolescent-medicine/australian-standards-of-care-and-treatment-guidelines-for-trans-and-gender-diverse-children-and-adolescents.pdf ..................................................................................16

The Cass Review, *The Independent Review of Gender Identity Services for Young People: Interim Report*, NHS (Feb. 2022), https://cass.independent-review.uk/publications/interim-report ...............7, 8

COHERE Finland, *Background Memorandum and Recommendations*, https://palveluvalikoima.fi/documents/1237350/22895008/Valmistelumuistio_sukupuoli-identiteetin+variaatiot.pdf/991c7413-3bd5-3e9d-52c4-24c4e2a7a9e5/Valmistelumuistio_sukupuoli-identiteetin+variaatiot.pdf (last visited Sept. 27, 2023) .........................10, 11

COHERE Finland, *Recommendations*, https://palveluvalikoima.fi/documents/1237350/22895008/Alaik%C3%A4isetsuositus.pdf/c987a74c-dfac-d82f-2142-684f8ddead64/Alaik%C3%A4iset_suositus.pdf?t=1592317701000 (last visited Sept. 27, 2023).......................11

Government of Mexico, Secretary of Health, *Protocolo para el Acceso sin Discriminación a la Prestación de Servicios de Atención Médica de las Personas Lésbico, Gay, Bisexual, Transexual, Travesti, Transgénero e Intersexual y Guías de Atención Específicas* (2020), https://www.gob.mx/cms/uploads/attachment/file/558167/Versi_n_15_DE_JUNIO_2020_Protocolo_Comunidad_LGBTTI_DT_Versi_n_V_20.pdf ..........................19

Government Offices of Sweden, Ministry of Health & Social Affairs, *Every Child in Sweden Has the Right to a Safe, Secure and Bright Future* (July 25, 2023), https://government.se/articles/2023/07/every-child-in-sweden-has-the-right-to-a-safe-secure-and-bright-future.............................................................................13

Helsedirektoratet, *Gender Incongruence*, https://www.helsedirektoratet.no/retningslinjer/kjonnsinkongruens (last visited Sept. 27, 2023) .........................................................................14

New Zealand Ministry of Health, *Response to Your Request for Official Information* (Apr. 27, 2023), https://www.health .govt.nz/system/files/documents/information-release/ h2023022566_response_letter.pdf.................................................21

New Zealand Ministry of Health, *Response to Your Request for Official Information* (June 1, 2023), https://www.health.govt.nz/ system/files/documents/information-release/h2023024782_ response_-_proactive_release.pdf.................................................21

NHS England, *Treatment: Gender Dysphoria*, https://www.nhs.uk/ conditions/gender-dysphoria/treatment (last reviewed May 28, 2020) ...................................................................................................5

NHS England, *Interim Service Specification* (June 9, 2023), https:// www.england.nhs.uk/wp-content/uploads/2023/06/Interim- service-specification-for-Specialist-Gender-Incongruence- Services-for-Children-and-Young-People.pdf ...............................5

NHS Standard Contract for Gender Identity Service for Children and Adolescents (Dec. 30, 2019), https://www.england.nhs.uk/wp- content/uploads/2017/04/gender-development-service-children- adolescents.pdf....................................................................................6

NICE, *Evidence Review: Gonadotrophin Releasing Hormone Analogues for Children and Adolescents with Gender Dysphoria* (2021), https://segm.org/sites/default/files/20210323 _Evidence%2Breview_GnRH%2Banalogues_For%2Bupload _Final_download.pdf.................................................................6, 7

Oliphant, Jeannie, et al., *Guidelines for Gender Affirming Healthcare for Gender Diverse and Transgender Children, Young People and Adults in Aotearoa New Zealand*, Transgender Health Research Lab, University of Waikato (Oct. 2018), https:// researchcommons.waikato.ac.nz/bitstream/handle/10289/ 12160/Guidelines%20for%20Gender%20Affirming%20Health %20low%20res.pdf.........................................................................20

Oslo kommune, *Health Center for Gender and Sexuality*, https://www.oslo.kommune.no/helse-og-omsorg/helsetjenester/helsestasjon-og-vaksine/helsestasjon-for-ungdom-hfu/helsestasjon-for-kjonn-og-seksualitet-hks/#gref (last visited Sept. 27, 2023) ................................................................................15

Oslo universitetssykehus, *Gender Incongruence*, https://oslo-universitetssykehus.no/behandlinger/kjonnsinkongruens-utredning-og-behandling-av-barn-og-unge-under-18-ar (last visited Sept. 27, 2023) ..................................................................15

Press Release, *German Ethics Council Publishes Ad Hoc Recommendation on Trans Identity Among Children and Young People* (Feb. 20, 2020), https://www.ethikrat.org/mitteilungen/mitteilungen/2020/deutscher-ethikrat-veroeffentlicht-ad-hoc-empfehlung-zu-trans-identitaet-bei-kindern-und-jugendlichen ..............18, 19

Retsinformation, *Guidelines on Healthcare Help for Gender Identity Issues* (Aug. 16, 2018), https://www.retsinformation.dk/eli/retsinfo/2019/9060 ......................................................................18

Socialstyrelsen, *Care of Children and Adolescents with Gender Dysphoria* (Dec. 2022), https://www.socialstyrelsen.se/globalassets/sharepoint-dokument/artikelkatalog/kunskapsstod/2023-1-8330.pdf ............................................12, 14

Socialstyrelsen, *God vård av barn och ungdomar med könsdysfori (Good care of children with gender dysphoria)* (Apr. 2015), https://etik.barnlakarforeningen.se/wp-content/uploads/sites/16/2022/03/1.-SoS-God-va%CC%8Ard-av-barn-....pdf ..............................................................................13

### INTEREST OF AMICI CURIAE[1]

Amici curiae (1) Stonewall Equality Limited; (2) the Swedish Federation for Lesbian, Gay, Bisexual, Transgender, Queer and Intersex Rights ("RFSL"); (3) Seta ry / Seta rf / Seta Lgbtiq Rights in Finland; (4) the Norwegian Organization for Sexual and Gender Diversity; (5) the Australian Professional Association for Trans Health; (6) LGBT+ Denmark; (7) Bundesverband Trans* e.V.; (8) the Fundación Colectivo Hombres XX, AC; and (9) the Professional Association for Transgender Health Aotearoa New Zealand (collectively, the "Amici Organizations") are non-profit organizations dedicated in whole or in part to securing and protecting the rights of transgender people. The Amici Organizations respectfully submit this brief to assist the Court in understanding the availability of gender-affirming healthcare for adolescents in each of the Amici Organizations' respective home countries.

A more detailed statement of interest for each of the Amici Organizations is included in Appendix A.

---

[1]    All parties have consented to the filing of this amicus brief. No counsel for a party authored any part of this brief, and no person other than amici curiae, their members, and their counsel made a monetary contribution to the preparation or submission of the brief.

## SUMMARY OF ARGUMENT

Earlier this year, Indiana enacted a statute, Senate Enrolled Act 480, that prohibits gender-affirming healthcare for adolescents (the "State Healthcare Ban"). *See* Ind. Code. §§ 25-1-22-1 *et seq.* On June 16, 2023, the District Court preliminarily enjoined portions of the State Healthcare Ban from taking effect, finding that there is a risk of irreparable harm to adolescents if this care is denied.

In defense of the State Healthcare Ban, Indiana—as well as some of its amici[2]—claims that the legislation finds support in recent actions taken in certain European countries regarding the treatment of transgender adolescents. They point to some assessments of existing research conducted by certain European governmental and nongovernmental bodies, and to changes in practices adopted regarding the provision of care; however, these reports and practices neither amount to nor support a ban on treatment for transgender adolescents.

These assertions of Indiana and its amici about the approaches that other developed countries are taking to the provision of gender-affirming healthcare to adolescents are not correct—or, at a minimum, are exaggerated and misleading and

---

[2]    Amicus curiae Alliance Defending Freedom asserts that "many European nations" have forbidden gender-affirming healthcare "for children with gender dysphoria," Brief of Alliance Defending Freedom as Amicus Curiae in Support of Appellants and for Reversal at 1, and that those nations "are now backtracking and forbidding" such healthcare in response to "new evidence," *id.* at 25-26; *see also* Brief of Alabama, Arkansas, Tennessee, and 18 Other States as Amici Curiae Supporting Appellants and Reversal ("Amici States Br.") at 4.

presented without vitally important context.  As the District Court correctly

explained, "no European country" has responded to the available research and

evidence by banning gender-affirming healthcare for adolescents.  *See* SA26-27.

In each of the countries, care continues to be provided to adolescents who need it.

The State Healthcare Ban and similar laws recently enacted in the United States are

thus inconsistent with international practices.

The Amici Organizations submit this brief to clarify the record, and to

ensure that the Court has the benefit of accurate information about the gender-

affirming healthcare that is available to adolescents in the foreign countries that

Appellants and their Amici States have referenced.  This brief also provides

information about the availability of gender-affirming healthcare to adolescents in

several other developed countries: Australia, Denmark, Germany, Mexico, and

New Zealand.

In all the countries surveyed below, adolescent patients—together with their

physicians and parents and/or legal guardians—make decisions about whether

gender-affirming healthcare is appropriate.  And in all those countries, when

medically appropriate, adolescent patients have access to treatment that is

prohibited by the State Healthcare Ban.  These foreign sovereigns leave these

important decisions principally to patients, their families, and the medical

community—not to lawmakers enacting blanket prohibitions on entire categories

of medical treatments.  The Court should affirm the District Court's preliminary

injunction.

## ARGUMENT

**I.    ADOLESCENTS HAVE ACCESS TO APPROPRIATE GENDER-AFFIRMING HEALTHCARE IN THE UNITED KINGDOM, FINLAND, SWEDEN, AND NORWAY**

Appellants and their amici cite materials referencing Sweden, the United

Kingdom, Finland, and Norway in support of a ban on gender-affirming healthcare

for minors.  *See, e.g.*, Appellants' Br. 20-24; Amici States Br. 19-23.  While some

assessments of existing evidence performed in these countries have recommended

certain changes to standards of care for transgender adolescents, the governments

in those countries—unlike Indiana's—have not prohibited clinicians from treating

their patients.  In all four of those countries, and in many other developed nations

around the world, adolescents have access, when needed, to appropriate gender-

affirming healthcare, including care that the State Healthcare Ban prohibits.

### A.    United Kingdom

Appellants and the Amici States present an incorrect and incomplete picture

of adolescents' access to gender-affirming healthcare in the United Kingdom,

portraying the United Kingdom as "let[ting] its children become research

subjects."  Appellants' Br. 2-3; *see* Amici States Br. 20-21.

First, Appellants ignore the fact that the policies they reference apply only to the United Kingdom's publicly funded National Health Service (the "NHS"). There is no ban on gender-affirming healthcare for adolescents in the United Kingdom; the very policy Appellants reference as having "reversed" the country's policy on regularly providing gender-affirming care to minors, Appellants' Br. 21, actually contemplates adolescents coming into the NHS's care after having already received puberty blockers and/or hormone therapy from a private physician.[3] The NHS's webpage of information on Treatment of Gender Dysphoria includes information on hormone therapy for adolescents.[4]

Second, Appellants and the Amici States portray gender-affirming care as "experimental," *e.g.*, Appellants' Br. 2, 24, going so far as to accuse European nations of treating their "children as guinea pigs," Amici States Br. 23. But the fact that adolescents, to access free hormone therapy from the NHS, will be enrolled in "formal research protocol[s],"[5] SA26, does not indicate that the treatment is "experimental"—nor does it render the treatment's benefits any less

---

[3]    NHS England, *Interim Service Specification* 16-18 (June 9, 2023), https://www.england.nhs.uk/wp-content/uploads/2023/06/Interim-service-specification-for-Specialist-Gender-Incongruence-Services-for-Children-and-Young-People.pdf.

[4]    *See* NHS England, *Gender Dysphoria – Treatment*, https://www.nhs.uk/conditions/gender-dysphoria/treatment (last visited Sept. 15, 2023).

[5]    NHS England, *Interim Service Specification*, *supra* note 3, at 17.

meritorious.  It shows only that the United Kingdom is doing precisely what the

Appellants purport to believe should occur: responding to the Cass Report and

developing additional data to drive evidence-based policies.[6]  Developing a body

of evidence to support medical decisions informed by scientific study is an entirely

reasonable approach—and is far from a ban on treatment.

Appellants and the Amici States also misconstrue the review by the U.K.

National Institute for Health and Care Excellence ("NICE"), from which they

quote selectively.  *See* Appellants' Br. 20-21; Amici States Br. 20-21.  Although

NICE concluded that the evidence of the effectiveness of treatment with puberty

blockers was of "very low certainty" under the GRADE rating system,[7] the report

recommended that gender dysphoria should be treated with "management plans

[that] are tailored to the needs of the individual."[8]  According to NICE, such

treatment plans may include "psychological support and exploration and, for some

---

[6]    *See generally* NHS Standard Contract for Gender Identity Service for
Children and Adolescents (Dec. 30, 2019), https://www.england.nhs.uk/wp-content
/uploads/2017/04/gender-development-service-children-adolescents.pdf, *as
amended*, Amendments to Service Specification for Gender Identity Development
Service for Children and Adolescents (Oct. 6, 2021), http://qna.files.parliament.uk
/qna-attachments/1258355/original/HL11064-Amendment-to-Gender-Identity-
Development-Service-Specification-for-Children-and-Adolescents.pdf.

[7]    NICE, *Evidence Review: Gonadotrophin Releasing Hormone Analogues for
Children and Adolescents with Gender Dysphoria* 4-6 (2021), https://segm.org
/sites/default/files/20210323_Evidence%2Breview_GnRH%2Banalogues_For
%2Bupload_Final_download.pdf.

[8]    *Id.*

individuals, the use of GnRH analogues [i.e., puberty blockers] in adolescence to suppress puberty; this may be followed later with gender-affirming hormones of the desired sex."[9]

Moreover, the NHS's recent Interim Report makes clear that gender-affirming healthcare should be available to adolescents in the United Kingdom when appropriate. To be sure, the Interim Report urges caution, and states that "clinical services must be run as safely and effectively as possible, within the constraints of current knowledge," and that "treatment options must be weighed carefully."[10] Unlike Indiana, however, the NHS's Interim Report acknowledges that "treatment decisions must be made in partnership between the clinicians and the children, young people and their families and carers, based on our current understanding about outcomes."[11]

The Interim Report does not advocate for a ban on gender-affirming healthcare services for adolescents. To the contrary, it calls for the immediate expansion and regionalization of services, so that patients under eighteen have

---

[9]     *Id.*

[10]    The Cass Review, *The Independent Review of Gender Identity Services for Young People: Interim Report* 68, NHS (Feb. 2022), https://cass.independent -review.uk/publications/interim-report (select "Download the Interim report").

[11]    *Id.*

access to a better quality of care closer to home, and with reduced waiting time.[12]
As to puberty blockers in particular, the Interim Report again does not recommend
a ban, but instead observes that it is especially important for an adolescent patient's
treating clinician to be able to demonstrate informed consent.[13]

This point about informed consent—which Indiana and the Amici States do
not meaningfully address—is critical. In the United Kingdom, unlike in certain
U.S. jurisdictions, minors can validly consent to a medical procedure, provided that
they have so-called *Gillick* competence. *See Gillick v. West Norfolk & Wisbech
Health Auth.*, [1986] 1 AC 112 (HL). Under *Gillick*, a minor's "capacity to make
his or her own decision depends upon the minor having sufficient understanding
and intelligence to make the decision," without regard to any "judicially fixed age
limit." *Id.* ¶ 188B. It is not the role of the court to intercede into a clinician's
authority in determining whether to recommend treatment—or the decision of a
competent minor in determining whether to undergo such treatment. *See id.*

Applying these principles, the Court of Appeal for England and Wales has
established that an adolescent's ability to consent to gender-affirming healthcare—
like other healthcare—is a matter for adolescents and their clinicians and parents or
legal guardians, not for the government. *Bell v. Tavistock & Portman NHS Found.*

---

[12]    *Id.* at 69-72.

[13]    *Id.* at 72.

*Tr.*, [2021] EWCA 1363 (Civ), ¶¶ 86-87.  In so holding, the Court of Appeal roundly rejected a trial court's conclusion that adolescents under the age of sixteen were generally incapable of providing such consent and that judicial involvement in the medical decision-making process was therefore needed.  *See id.* ¶¶ 91-94. The Court of Appeal acknowledged that the provision of gender-affirming healthcare is a complex topic, noting that clinicians should take "great care" before recommending gender-affirming treatment to an adolescent, *id.* ¶ 92, but concluded that, as far as a minor's *Gillick* competence to consent to such care is concerned, "[n]othing about the nature or implications of the treatment with puberty blockers allows for a real distinction to be made" between that and any other medical treatment, *id.* ¶ 76.  In the Court of Appeal's judgment, "the [trial] court was not in a position to generalise about the capability of persons of different ages to understand what is necessary for them to be competent to consent to the administration of puberty blockers."  *Id.* ¶ 85.  Likewise, Indiana and the Amici States are in no such position.

**B.    Finland**

Indiana and the Amici States cite to recommendations promulgated by the Council for Choices in Health Care in Finland ("COHERE Finland") in support of Appellants' position that uncertainty regarding treatment outcomes justifies the State's actions here.  *See* Appellants' Br. 21-22; Amici States Br. 22.  However,

Indiana seeks to do something Finland has never done—ban treatment. And Finland's decision to stop allowing surgical transitions for minors, *see* Appellants' Br. 21, is of little import here, since no party has asked this Court to revisit the District Court's conclusion that "no minor could receive gender-transition surgery from a physician or other practitioner in Indiana, regardless of [the State Healthcare Ban]." SA15.

Moreover, and in any event, Appellants and the Amici States misconstrue the contours of the COHERE Finland recommendations they cite. COHERE Finland is a permanent body, appointed by the Government of Finland, that works in conjunction with Finland's Ministry of Social Affairs and Health.[14] In 2011, Finland created an avenue for adolescents to seek treatment for trauma caused by gender dysphoria. Although adolescents cannot access surgical treatment for gender dysphoria until age eighteen, they can begin the diagnostic process at age thirteen.[15] COHERE Finland's recommendations recognize a treatment protocol for transgender adolescents as part of the Finnish healthcare system. Patients whose puberty has not started and who experience long-term or severe gender

---

[14]    *See* COHERE Finland, *Background Memorandum and Recommendations*, https://palveluvalikoima.fi/documents/1237350/22895008/Valmistelumuistio _sukupuoli-identiteetin+variaatiot.pdf/991c7413-3bd5-3e9d-52c4-24c4e2a7a9e5 /Valmistelumuistio_sukupuoli-identiteetin+variaatiot.pdf (last visited Sept. 21, 2023).

[15]    *See id.* at 16.

dysphoria-related anxiety can be sent for consultation at the university hospitals in Helsinki or Tampere.[16]  There, after conducting diagnostics to confirm medical necessity with no contraindications, clinicians can treat a patient with puberty blockers upon the onset of puberty.[17]  It is also possible to access medication to block menstruation.[18]

COHERE Finland's recommendations also state that an adolescent who has already begun puberty can be referred to a university hospital for gender-affirming treatment if the patient's gender identity variation and related dysphoria appear stable over the long term.[19]  Gender-affirming hormonal interventions can be prescribed for patients commencing at age sixteen, absent contraindications, if the patient's gender dysphoria is considered permanent and severe and the patient has the capacity to understand the impact of the non-reversible aspects of the treatment and the pros and cons of hormonal treatment.[20]  The District Court was therefore correct in finding that, in Finland, "puberty blockers and cross-sex hormone

---

[16]    *Id.* at 7.

[17]    *Id.* at 14, 17.

[18]    *Id.* at 16.

[19]    *Id.* at 15.

[20]    *See* COHERE Finland, *Recommendations* 9, https://palveluvalikoima.fi /documents/1237350/22895008/Alaik%C3%A4isetsuositus.pdf/c987a74c-dfac -d82f-2142-684f8ddead64/Alaik%C3%A4iset_suositus.pdf?t=1592317701000 (last visited Sept. 21, 2023).

therapies" remain permitted "when gender dysphoria is severe and other psychiatric symptoms have ceased." SA26-27.

### C.     Sweden

Indiana and the Amici States do not accurately describe the state of Swedish healthcare for transgender adolescents. For example, Appellants cite a literature review released by the Swedish Agency for Health Technology Assessment and Assessment of Social Services ("SBU") and policy guidance from the Swedish National Board of Health and Welfare as purported evidence that Sweden no longer permits gender-affirming healthcare. *See* Appellants' Br. 22-23. But gender-affirming healthcare is available to adolescents on an individual basis in Sweden, and the Swedish government has not inserted itself into its citizens' medical decision-making, as Indiana has done by means of the State Healthcare Ban's prohibition on physicians' ability to provide medical treatment that they consider appropriate.[21] Sweden and its national health agency have simply updated the agency's non-binding medical recommendations. Sweden continues to permit individual patients to receive appropriate gender-affirming healthcare when that course of treatment is deemed appropriate by a physician.

---

[21]     *See* Socialstyrelsen, *Care of Children and Adolescents with Gender Dysphoria* 4-5 (Dec. 2022), https://www.socialstyrelsen.se/globalassets/sharepoint -dokument/artikelkatalog/kunskapsstod/2023-1-8330.pdf.

In Sweden, access to healthcare is governed by the Health and Medical Services Act.[22]  Under the framework of that law, medical treatment is valid so long as it comprises treatment that can relieve or alleviate pain or illness.  Gender-affirming healthcare, like all medical practice in Sweden, needs to be performed within the framework of the law, based on medical evidence and well-known practice.  Sweden also adheres to the United Nations Convention on the Rights of the Child, which recognizes a child's right to have a say in their medical treatment, and that this right increases with age.[23]

For over twenty years, adolescent patients in Sweden have had access to gender-affirming healthcare.  The Swedish National Board of Health and Welfare promulgates national guidelines to support clinicians in making decisions concerning the healthcare needs of their patients.[24]  Since 2015, the guidelines have addressed hormone treatment for gender dysphoria.  And although those guidelines

---

[22]    Sveriges Riksdag, Health and Medical Services Act (2017), SFS No. 2017:30 (Swed.), https://www.riksdagen.se/sv/dokument-lagar/dokument/svensk -forfattningssamling/halso--och-sjukvardslag-201730_sfs-2017-30 (select "English" translation).

[23]    Government Offices of Sweden, Ministry of Health & Social Affairs, *Every Child in Sweden Has the Right to a Safe, Secure and Bright Future* (July 25, 2023), https://government.se/articles/2023/07/every-child-in-sweden-has-the-right-to-a -safe-secure-and-bright-future.

[24]    Socialstyrelsen, *God vård av barn och ungdomar med könsdysfori (Good care of children with gender dysphoria)* (Apr. 2015), https://etik .barnlakarforeningen.se/wp-content/uploads/sites/16/2022/03/1.-SoS-God-va%CC %8Ard-av-barn-....pdf.

were updated in 2022—to advise that hormone treatment should be "administered in exceptional cases" rather than at "a group level"—the guidelines still permit the use of puberty blockers and gender-affirming hormones on a case-by-case basis, and they emphasize the importance of young people with gender dysphoria continuing to receive care within the healthcare system.[25]

### D.    Norway

In Norway, both puberty blockers and hormone therapy are available to adolescent patients, although surgical treatment is generally not available before the age of majority.  Access to gender-affirming healthcare, including hormone therapy and mental health support, for adolescent patients is defined in the National Guidelines on the Treatment of Gender Incongruence, promulgated by the Norwegian Directorate of Health.[26]  Puberty blockers are administered to patients based on their pubertal development stage.  Any patient over the age of sixteen may access puberty blockers and hormone therapy upon prescription by a clinician; parental consent is not required.

---

[25]    Socialstyrelsen, *Care of Children and Adolescents with Gender Dysphoria*, *supra* note 21, at 3.

[26]    *See* Helsedirektoratet, *Gender Incongruence*, https://www.helsedirektoratet .no/retningslinjer/kjonnsinkongruens (select "English" translation) (last visited Sept. 21, 2023).

For adolescents under sixteen, puberty blockers are available with parental

consent on a case-by-case basis after an evaluation by medical experts, either

through the clinician specialist team at Oslo University Hospital or via a health

service organized under the Municipality of Oslo which specializes in services for

gender nonconforming and LGBTQI youth.[27]

## II.    GENDER-AFFIRMING HEALTHCARE IS AVAILABLE TO ADOLESCENTS IN OTHER DEVELOPED COUNTRIES AS WELL

A review of the status of gender-affirming healthcare access in other

countries reveals a common thread.[28]  With appropriate consultation and diagnoses,

adolescents can access various forms of gender-affirming care, including treatment

that the State Healthcare Ban prohibits.

---

[27]    *See* Oslo universitetssykehus, *Gender Incongruence*, https://oslo-universitetssykehus.no/behandlinger/kjonnsinkongruens-utredning-og-behandling -av-barn-og-unge-under-18-ar (select "English" translation) (last visited Sept. 21, 2023); Oslo kommune, *Health Center for Gender and Sexuality*, https://www.oslo .kommune.no/helse-og-omsorg/helsetjenester/helsestasjon-og-vaksine/helsestasjon -for-ungdom-hfu/helsestasjon-for-kjonn-og-seksualitet-hks/#gref (select "English" translation) (last visited Sept. 21, 2023).

[28]    Absent a French amicus organization, this brief does not address the situation in France.  Appellants' own expert, however, acknowledges that "medical authorities in France have not issued any actual restriction" prohibiting clinicians from providing gender-affirming healthcare.  Cantor Decl., Dkt. 48-1, ¶ 29.  On the contrary, France's National Academy of Medicine (Académie Nationale de Médecine) contemplates that clinicians may provide such treatment, provided that they exercise "great medical caution" and explore alternative therapies as well. *Id.*; *see* Académie Nationale de Médecine, *Medicine and gender transidentity in children and adolescents* (Feb. 25, 2022), Dkt. 49-11, at 2.

### A.    Australia

In Australia, a parent generally has power to consent to medical treatment, but the parental power to consent diminishes as the patient's capacities and maturities grow. *See Secretary, Dep't of Health & Cmty. Servs. v. JWB & SMB* ("*Marion's case*"), (1992) 175 CLR 218 (Austl.). The Australian High Court has adopted the *Gillick* competence framework, *see supra* pp. 8-9, holding that a minor is capable of giving informed consent, and a parent is no longer capable of consenting on the minor's behalf when the minor achieves *Gillick* competence— that is, a sufficient understanding and intelligence to enable them to understand fully what treatment is proposed. *See Marion's case*, 175 CLR at 237 (Mason CJ, Dawson, Toohey and Gaudron JJ) (citing *Gillick*).

The Australian Standards of Care and Treatment Guidelines for Trans and Gender Diverse Children and Adolescents (the "ASOCT Guidelines"), developed with available evidence and supported by AusPATH, recommend that, following a DSM-V diagnosis of gender dysphoria and comprehensive, developmentally appropriate medical and psychosocial assessment, clinicians prescribe puberty blockers, hormone treatment, and psychological support as appropriate where the patient agrees that hormone therapy or puberty blockers is in their best interest.[29]

---

[29]    *See* AusPATH, Australian Standards of Care and Treatment Guidelines for Trans and Gender Diverse Children and Adolescents 23-24 (Nov. 2020), https://www.rch.org.au/uploadedFiles/Main/Content/adolescent-medicine/australian-

The ASOCT Guidelines rely on empirical evidence and clinical consensus and were developed in consultation with professionals working with transgender and gender diverse communities across Australia and New Zealand.[30]

Legal access to gender-affirming healthcare for patients under eighteen was addressed in *Re Imogen* (No. 6), [2020] FamCA 761 (Austl.), in which the Australian Family Court held that adolescent patients can legally receive hormone treatment if there is no dispute between parents (or those with parental responsibility), the medical practitioner, and the patient with regard to *Gillick* competence, the diagnosis of gender dysphoria, or the proposed treatment for alleviating the suffering caused by the gender dysphoria. *See id.* ¶ 35. Any such dispute requires an application to the Family Court. *Id.* ¶¶ 35, 38. But where the adolescent, their parents, and their clinician are all in agreement, care is available, and there are no governmental barriers.

---

standards-of-care-and-treatment-guidelines-for-trans-and-gender-diverse-children-and-adolescents.pdf.

[30]    *See id.* at 2. Australia is also home to clinical research affirming the medical benefit of puberty blockers for transgender youth. For example, one published Australian study found that the available evidence, although limited, points to the safety of puberty blockers and the psychological benefits of suppressing puberty before the possible future commencement of hormone therapy. *See* Mahfouda et al., Puberty Suppression in Transgender Children and Adolescents, 5 Lancet Diabetes & Endocrinology 816, 819-820 (2017), https://www.sciencedirect.com /science/article/pii/S2213858717300992?via%3Dihub#!.

**B.     Denmark**

In Denmark, hormone therapy for adolescents is available through the

Danish public healthcare system, after consultation with a multidisciplinary team

of doctors including pediatric, psychiatric, and endocrinology specialists.[31]  For

patients under the age of fifteen, parental consent is required for treatment in the

Danish healthcare system.

**C.     Germany**

Gender-affirming healthcare for patients under the age of eighteen is

available in various forms throughout Germany.  German medical associations are

developing guidelines for gender-affirming healthcare relating to teenage patients.

In February 2020, the German Ethics Council addressed healthcare for

transgender teenagers.[32]  The Council acknowledged the tension created by the

potentially irreversible consequences of either administering treatment or

withholding treatment, but its statement declared that it is not an option to limit

access to gender-affirming healthcare for adolescents who understand the

---

[31]     *See* Retsinformation, *Guidelines on Healthcare Help for Gender Identity Issues* § 9 (Aug. 16, 2018), https://www.retsinformation.dk/eli/retsinfo/2019/9060 (select "English" translation).

[32]     Press Release, *German Ethics Council Publishes Ad Hoc Recommendation on Trans Identity Among Children and Young People* (Feb. 20, 2020), https://www .ethikrat.org/mitteilungen/mitteilungen/2020/deutscher-ethikrat-veroeffentlicht-ad-hoc-empfehlung-zu-trans-identitaet-bei-kindern-und-jugendlichen (select "English" translation).

consequences of their decision to undergo treatment.[33]  The Council noted that

where "the child is sufficiently capable of insight and judgement to understand the

scope and significance of the planned treatment, to form his own judgement and to

decide accordingly, his will must be decisively taken into account."[34]

### D.     Mexico

Transgender healthcare in Mexico is guided by the Protocol for Access

without Discrimination to Health Care Services for Lesbian, Gay, Bisexual,

Transsexual, Transvestite, Transgender, and Intersex Persons and Specific Care

Guidelines.[35]  The Protocol is observed in healthcare facilities administered by the

Mexican federal government.  The Protocol acknowledges that the process of

defining one's sexual orientation, gender identity and/or expression may occur at

early stages.[36]  The Protocol therefore advises that medical facilities start from a

presumption of providing medical care, and it recommends that clinicians consider

---

[33]     *Id.*

[34]     *Id.*

[35]     Government of Mexico, Secretary of Health, *Protocolo para el Acceso sin Discriminación a la Prestación de Servicios de Atención Médica de las Personas Lésbico, Gay, Bisexual, Transexual, Travesti, Transgénero e Intersexual y Guías de Atención Específicas* (2020), https://www.gob.mx/cms/uploads/attachment/file /558167/Versi_n_15_DE_JUNIO_2020_Protocolo_Comunidad_LGBTTI_DT _Versi_n_V_20.pdf.

[36]     *Id.* at 35.

the use of puberty blockers and hormone treatment when appropriate.[37]  In addition

to the Protocol, various Mexican states have reformed their civil codes to recognize

the right to gender-affirming healthcare for patients under eighteen.

### E.     New Zealand

In New Zealand, the Care of Children Act 2004 empowers adolescents aged

sixteen and older to consent to medical care.[38]  With respect to medical care

generally, including gender-affirming care, adolescents under sixteen may consent

to treatment if they meet the *Gillick* standard, *see supra* pp. 8-9, which the New

Zealand Court of Appeal has cited with approval, *see Re J (An Infant): B & B v.*

*Director-General of Social Welfare*, [1996] 2 NZLR 134 (N.Z.).  Family support

is, however, considered an important aspect of gender-affirming care for all

adolescents in New Zealand, with families involved in care wherever possible.

New Zealand has provided gender-affirming healthcare to adolescents for

over sixteen years.  Clinicians in New Zealand also consider the ASOCT

Guidelines—developed, as noted above, with the help of New Zealand adolescent-

health clinicians.  *See supra* pp. 16-17.  New Zealand's current national guidelines

for gender-affirming healthcare for gender diverse and transgender patients were

---

[37]     *Id.* at 36.

[38]     Care of Children Act 2004, Public Act 2004 No. 90, https://legislation.govt
.nz/act/public/2004/0090/latest/DLM317233.html.

published in 2018; they allow for puberty blockers to be prescribed depending on the stage of puberty, and also allow for hormone treatment.[39]

In September 2022, New Zealand's Ministry of Health altered certain language on its website relating to puberty blockers.[40]  The update "recognised that overseas jurisdictions, including [the United Kingdom], Norway and Sweden, were reviewing the use of puberty blockers in their health systems particularly in younger people," and that "any medical intervention carries a balance of benefit and risk that needs to be considered in context by the person in partnership with their health professional."[41]  But the Ministry of Health has since reaffirmed that "[i]t is important that health services meet the needs of all New Zealanders, with inclusiveness and dignity for all"[42]—and that the Ministry "has not advised any change to access to services for young people" in New Zealand.[43]

---

[39]    Oliphant et al., *Guidelines for Gender Affirming Healthcare for Gender Diverse and Transgender Children, Young People and Adults in Aotearoa New Zealand* 29-31, Transgender Health Research Lab, University of Waikato (Oct. 2018), https://researchcommons.waikato.ac.nz/bitstream/handle/10289/12160 /Guidelines%20for%20Gender%20Affirming%20Health%20low%20res.pdf.

[40]    *See* New Zealand Ministry of Health, *Response to Your Request for Official Information* (Apr. 27, 2023), https://www.health.govt.nz/system/files/documents /information-release/h2023022566_response_letter.pdf.

[41]    *See id.*

[42]    *Id.*

[43]    New Zealand Ministry of Health, *Response to Your Request for Official Information* (June 1, 2023), https://www.health.govt.nz/system/files/documents /information-release/h2023024782_response_-_proactive_release.pdf.

## CONCLUSION

The Court should affirm the preliminary injunction order entered by the

District Court.

 

                           Respectfully submitted.

                           */s/  Andrew Rhys Davies*
                           ANDREW RHYS DAVIES
                             *Counsel of Record*
                           CHARLES C. BRIDGE
                           EMILY BRODY-BIZAR
                           ANNA MIZZI
                           DUY NGUYEN
                           WILMER CUTLER PICKERING
                             HALE AND DORR LLP
                           7 World Trade Center
                           250 Greenwich Street
                           New York, NY  10007
                           (212) 230-8800

September 27, 2023

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 29(a)(4)(G) and 32(g)(1), the undersigned hereby certifies that this brief complies with the type-volume limitation of Circuit Rule 29.

1.      Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(f), the brief contains 4,274 words.

2.      The brief has been prepared in proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman font.  As permitted by Fed. R. App. P. 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.


*/s/  Andrew Rhys Davies*
ANDREW RHYS DAVIES

September 27, 2023

## APPENDIX A

**Stonewall Equality Limited** ("Stonewall") has fought since 1989 to create transformative change in the lives of LGBTQ+ people across communities in the United Kingdom and around the world. Stonewall seeks to drive positive change in public attitudes and public policy, and to ensure that LGBTQ+ people can thrive throughout their lives by building deep, sustained change programs with the institutions that have the biggest impact on them. Stonewall's work includes supporting legal efforts to ensure that trans young people have access to gender-affirming medical treatment.

**The Swedish Federation for Lesbian, Gay, Bisexual, Transgender, Queer and Intersex Rights** ("RFSL") is a non-profit community organization that has been advocating for the rights of LGBTQIA persons in Sweden and internationally since its founding in 1950. RFSL engages support and educational services, political advocacy, lobbying initiatives, and community space in furtherance of its mission supporting LGBTQIA persons. Since 2001, RFSL has formally included transgender people within the communities it serves. RFSL's key initiatives today include transgender rights advocacy, asylum rights, and family law.

**Seta ry / Seta rf / Seta Lgbtiq Rights in Finland** is a non-profit organization that has been advocating for the rights of LGBTI persons in Finland

since its founding in 1974. Seta ry / Seta rf / Seta Lgbtiq Rights in Finland aims for
an equal society and individual welfare that includes everyone, regardless of sexual
orientation, gender identity and gender expression.

**The Norwegian Organization for Sexual and Gender Diversity** ("FRI")
is a membership-based nongovernmental organization with local chapters
throughout Norway. FRI's vision is a society free from harassment and
discrimination based on sexual orientation, gender identity, and/or gender
expression. FRI's key activities include national-level advocacy for the rights of
LGBTI people, building competency of government institutions and employees
within different sectors (education, health, social welfare, justice) to include
LGBTI people in a non-discriminatory way, and engaging in international
solidarity by partnering with LGBTI organizations in Europe, Asia and Africa. As
a membership and community-based organization, FRI has firsthand experience of
the impact that gender-affirming healthcare—or the lack thereof—has on
transgender people, and has deep concern that the State Healthcare Ban, by
restricting access to gender-affirming care, will be detrimental to the lives of
transgender people in Indiana.

**The Australian Professional Association for Trans Health** ("AusPATH")
is Australia's principal body representing, supporting, and connecting those
working to strengthen the health, rights, and well-being of all transgender people—

binary and non-binary. The AusPATH membership comprises over 350 experienced professionals working across Australia. AusPATH firmly believes that all young people who desire puberty suppression should be able to access such care in a timely manner under appropriate supervision and assessment by a multidisciplinary team. AusPATH advocates for access to timely, culturally safe, and person-centered gender-affirming healthcare as critical to protect transgender children, adolescents, and adults from negative health and well-being implications.

**LGBT+ Denmark** is Denmark's largest and oldest political organization for LGBT+ people in Denmark. LGBT+ Denmark fights for everyone to be able to live their life in full compliance with their own identity through rights, safe communities, and social change—locally, nationally and globally.

**Bundesverband Trans\* e.V.** ("BVT\*") is the largest transgender association in Germany. The association's common endeavor is the commitment to gender diversity and self-determination. BVT\* is committed to human rights and to the respect, recognition, equality, social participation and health of transgender and non-binary people.

**Fundación Colectivo Hombres XX, AC** (the "Fundación") is a non-profit community LGBTI organization with a particular focus on men in Mexico who were assigned a female gender at birth. The Fundación has operated since 2012 as a collective and since 2018 as a Civil Association and has extensive lobbying

experience. The Fundación participated in the drafting of the Protocol for Access without Discrimination to Health Care Services for Lesbian, Gay, Bisexual, Transsexual, Transvestite, Transgender and Intersex Persons and Specific Care Guidelines, which provides guidance for the administration of healthcare to transgender individuals in Mexico.

**The Professional Association for Transgender Health Aotearoa New Zealand** ("PATHA NZ") is an incorporated society established in May 2019 to be an interdisciplinary professional organization working to promote the health, well-being, and rights of transgender people. PATHA NZ comprises over 200 members who work professionally for transgender health in clinical, academic, community, legal, and other settings. As a society committed to supporting gender-affirming care, PATHA NZ's role includes advocacy both within New Zealand and internationally. PATHA NZ views gender-affirming care for children and adolescents as an essential part of healthcare and views the denial of access to care until the age of eighteen in any country or state as a violation of human rights.

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of September, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit using the appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ *Andrew Rhys Davies*
ANDREW RHYS DAVIES