No. 23-2366

---

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

---

K.C. et al.,

*Plaintiffs-Appellees*,

v.

THE INDIVIDUAL MEMBERS OF THE MEDICAL LICENSING BOARD OF
INDIANA, in their official capacities, et al.,

*Defendants-Appellants.*

---

On Appeal from the United States District Court
for the Southern District of Indiana
No. 1:23-cv-00595-JPH-KMB (Hon. James P. Hanlon)

---

**BRIEF FOR CONSERVATIVE LEGISLATORS, FORMER
LEGISLATORS, AND ACTIVISTS AS *AMICI CURIAE* SUPPORTING
APPELLEES AND AFFIRMANCE**

---

CJ Morrison
GOODWIN PROCTER LLP
Three Embarcadero Center
28th Floor
San Francisco, CA 94111
(415) 733-6000

Brian T. Burgess
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC 20036
(202) 346-4000

Jesse Lempel
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1000

September 27, 2023

*Counsel for Amici Curiae*

Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2366

Short Caption: K.C. et al. v. The Individual Members of the Medical Licensing Board of Indiana et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐　　**PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)　　The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Ileana Ros-Lehtinen for a coalition of conservative legislators, former legislators, and activists listed in the appendix.

(2)　　The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Goodwin Procter LLP

(3)　　If the party, amicus or intervenor is a corporation:

　　i)　　Identify all its parent corporations, if any; and

　　　　N/A

　　ii)　　list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

　　　　N/A

(4)　　Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)　　Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Brian T. Burgess　　Date: September 27, 2023

Attorney's Printed Name: Brian T. Burgess

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).　**Yes** ☑ **No** ☐

Address: 1900 N Street, NW

Washington, DC 20036

Phone Number: (202) 346-4000　　Fax Number: (202) 204 7265

E-Mail Address: BBurgess@goodwinlaw.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2366

Short Caption: K.C. et al. v. The Individual Members of the Medical Licensing Board of Indiana et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Ileana Ros-Lehtinen for a coalition of conservative legislators, former legislators, and activists listed in the appendix.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Goodwin Procter LLP

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

N/A

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Jesse Lempel    Date: September 27, 2023

Attorney's Printed Name: Jesse Lempel

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes [ ]  No [✓]

Address: 100 Northern Avenue

Boston, MA 02210

Phone Number: (617) 570-1000    Fax Number:

E-Mail Address: jlempel@goodwinlaw.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2366

Short Caption: K.C. et al. v. The Individual Members of the Medical Licensing Board of Indiana et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Ileana Ros-Lehtinen for a coalition of conservative legislators, former legislators, and activists listed in the appendix.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Goodwin Procter LLP

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

N/A

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ CJ Morrison                    Date: September 27, 2023

Attorney's Printed Name:  CJ Morrison

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address:  Three Embarcadero Center, 28th Floor

San Francisco, CA 94111

Phone Number: (415) 733-6000                    Fax Number:

E-Mail Address: CJMorrison@goodwinlaw.com

rev. 12/19 AK

## TABLE OF CONTENTS

**Page**

INTEREST OF *AMICI CURIAE* ...................................................................1

INTRODUCTION .......................................................................................2

ARGUMENT ..............................................................................................5

I.    S.E.A. 480 usurps the constitutional right of parents to make
      important healthcare choices for their minor children. ...................5

II.   The authority claimed by the State would provide a blueprint for
      States to override parents' decisions wholesale. ..........................10

CONCLUSION ........................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

CASES:

*Abigail Alliance for Better Access to Developmental Drugs v. von Eschenbach*,
495 F.3d 695 (D.C. Cir. 2007) ................................................................. 9

*Cook Cnty. v. Wolf*,
962 F.3d 208 (7th Cir. 2020) .................................................................. 5

*John and Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*,
78 F.4th 622 (4th Cir. 2023) ............................................................. 10, 11

*Parham v. J.R.*,
442 U.S. 584 (1979) ..................................................................... 5, 6, 7, 9

*Pierce v. Soc'y of Sisters*,
268 U.S. 510 (1925) ............................................................................... 5

*Troxel v. Granville*,
530 U.S. 57 (2000) ............................................................................. 6, 7

*Washington v. Glucksberg*,
521 U.S. 702 (1997) ......................................................................... 4, 7, 9

*L. W. ex rel. Williams v. Skrmetti*,
73 F.4th 408 (6th Cir. 2023) ................................................................. 9

RULES AND REGULATIONS:

Fed. R. App. P. 29(a)(2) .......................................................................... 1

Ind. Code § 25-1-22-5(a)(2) ................................................................... 8

OTHER AUTHORITIES:

Bill Chappell, *Texas Supreme Court OKs state child abuse inquiries into the families of trans kids*, NPR (May 13, 2022), https://www.npr.org/2022/05/13/1098779201/texas-supreme-court-transgender-gender-affirming-child-abuse ........................................................ 12

Jessica Chasmar, *Cincinnati schools told to 'consider' reporting child abuse if parents unsupportive of child's gender identity*, FOX NEWS (May 18, 2023), https://www.foxnews.com/politics/cincinnati-schools-told-consider-reporting-child-abuse-parents-unsupportive-childs-gender-identity ........................................................... 13

Sarah Davis, *My Republican Colleagues' Anti-Transgender Laws Threaten American Freedom*, NEWSWEEK (July 6, 2023), https://www.newsweek.com/my-republican-colleagues-anti-transgender-laws-threaten-american-freedom-opinion-1811107 ......................... 3

Robbie Feinberg, *Maine expands ability of older teens to receive gender-affirming care without parents' consent*, WBUR (July 13, 2023), https://www.wbur.org/news/2023/07/13/teens-gender-affirming-care-parental-consent .......................................................... 11

Lulu Garcia-Navarro, *Why the G.O.P.'s Attack on Trans Rights Could Backfire on the Party*, N.Y. TIMES (Mar. 2, 2023), https://www.nytimes.com/2023/03/02/opinion/trans-gender-attacks-republican-party.html ................................................ 4

Asa Hutchinson, *Why I vetoed my party's bill restricting health care for transgender youth*, WASH. POST (Apr. 8, 2021), https://www.washingtonpost.com/opinions/asa-hutchinson-veto-transgender-health-bill-youth/2021/04/08/990c43f4-9892-11eb-962b-78c1d8228819_story.html ......................................... 3

Iowa Capital Dispatch, *Rep Chad Ingels on SF 538 1*, YOUTUBE (Mar. 12, 2023), https://www.youtube.com/watch?v=4RAHdguMepo ......................... 5

Ed Komenda, *Transgender minors protected from estranged parents under Washington law*, PBS (May 9, 2023), https://www.pbs.org/newshour/politics/transgender-minors-protected-from-estranged-parents-under-washington-law ................................. 11

Brooke Migdon, *Christie knocks transgender health care bans on campaign trail: 'It's more of a parent's decision'*, THE HILL (June 23, 2023), https://thehill.com/homenews/campaign/4065197-christie-knocks-transgender-health-care-bans-on-campaign-trail/ ...................... 3

Ileana Ros-Lehtinen, *Former Republican Congresswoman: The GOP Needs the LGBTQ*, NEWSWEEK (Aug. 22, 2023), https://www.newsweek.com/former-republican-congresswoman-gop-needs-lgbtq-1821713 ...................................................................... 3

Amy Taxin & Sophie Austin, *California sues district that requires parents be notified if their kids change their gender or pronouns*, PBS (Aug. 28, 2023), https://www.pbs.org/newshour/politics/california-sues-district-that-requires-parents-be-notified-if-their-kids-change-their-gender-or-pronouns ............................................................................ 10

Samantha Valentino, *Ky. lawmakers who broke from party lines on 'anti-trans' bill explain their vote*, WKYT (May 17, 2023), https://www.wkyt.com/2023/03/17/ky-lawmakers-who-broke-party-lines-anti-trans-bill-explain-their-vote/ ....................................... 3

Jim Vertuno, *Texas investigates hospital over care for transgender minors*, ASSOCIATED PRESS (May 5, 2023), https://apnews.com/article/texas-transgender-hospital-investigation-greg-abbott-dce466dcaa7be541c009a2fdc0b4a286 ..................... 12

## INTEREST OF *AMICI CURIAE*

*Amici curiae* are Republicans and political conservatives from diverse backgrounds who have served as federal, state, and local officeholders.[1] They share the conservative principle of a commitment to limited government and respect for liberty, including in particular respecting the rights of families and of parents to make decisions in the best interests of their children. The full list of *Amici* is provided as an Appendix to this brief.

Parents want their children to be safe, happy, and healthy, including parents of transgender children. Reasonable people can disagree about what is best for kids, but the question presented here is *who* makes that decision: their parents or government bureaucrats? *Amici* strongly believe that the Constitution protects the traditional rights of families and prescribes a limited government that respects parental authority. Specifically, the Constitution safeguards the fundamental right of parents to make important medical decisions for their minor children without interference by the State. Indiana's new law that bans gender-affirming medical care for minors with gender dysphoria (like the many similar laws recently enacted by

---

[1] All parties have consented to the filing of this brief. *See* Fed. R. App. P. 29(a)(2). No counsel for a party authored this brief in whole or in part. No party, no counsel for a party, and no person other than *Amici* and their counsel made a monetary contribution to fund the preparation or submission of this brief.

other states) directly infringes this right by usurping the parental role and improperly intruding into a family's medical choices.

In light of *Amici*'s extensive and varied experience working to protect and support parents and families through the political process, *Amici* believe that this brief will assist the Court with its consideration of this case.

## INTRODUCTION

Parents know what is best for their children far better than the government does. And in our constitutional system, parents have the fundamental right to make critical decisions about the care of their own children, including medical decisions. While the government has a role to play in keeping kids safe, that role is limited, and it does not justify the State second-guessing the judgments of parents acting in good faith who are best positioned to know what is in the best interest of their children. States have no business overruling the decisions of fit parents who make an informed medical choice for their children that is supported by their doctors, by the medical profession more generally, by the children themselves, and by their conscience. That is not limited government, and it is not constitutional.

Indiana has done just that by enacting S.E.A. 480, which bans "gender transition procedures" (a broadly defined term) for minors. Numerous other states have recently adopted similar bans, some of which make it a crime to provide such care or consider the facilitation of such care to be child abuse. These laws are

nothing less than "a vast government overreach," as the former Republican Governor of Arkansas Asa Hutchinson put it in explaining why he vetoed similar legislation, because they anoint "the state as the definitive oracle of medical care, *overriding parents*, patients and health-care experts."[2]  Other prominent defenders of limited government recognize this as well.  Former New Jersey Governor Chris Christie, for instance, emphasized that how to care for a transgender child is "more of a parent's decision than a governor's decision," because "parents are the people who are best positioned to make these judgments" and "the government should [n]ever be stepping into the place of the parents."[3]  Many of *Amici* have also publicly defended parental rights from legislation akin to Indiana's.[4]

---

[2] Asa Hutchinson, *Why I vetoed my party's bill restricting health care for transgender youth*, WASH. POST (Apr. 8, 2021), https://www.washingtonpost.com/opinions/asa-hutchinson-veto-transgender-health-bill-youth/2021/04/08/990c43f4-9892-11eb-962b-78c1d8228819_story.html (emphasis added).

[3] Brooke Migdon, *Christie knocks transgender health care bans on campaign trail: 'It's more of a parent's decision'*, THE HILL (June 23, 2023), https://thehill.com/homenews/campaign/4065197-christie-knocks-transgender-health-care-bans-on-campaign-trail/.

[4] *See, e.g.*, Sarah Davis, *My Republican Colleagues' Anti-Transgender Laws Threaten American Freedom*, NEWSWEEK (July 6, 2023), https://www.newsweek.com/my-republican-colleagues-anti-transgender-laws-threaten-american-freedom-opinion-1811107; Ileana Ros-Lehtinen, *Former Republican Congresswoman: The GOP Needs the LGBTQ*, NEWSWEEK (Aug. 22, 2023), https://www.newsweek.com/former-republican-congresswoman-gop-needs-lgbtq-1821713; Samantha Valentino, *Ky. lawmakers who broke from party lines on 'anti-trans' bill explain their vote*, WKYT (May 17, 2023), https://www.wkyt.com/2023/03/17/ky-lawmakers-who-broke-party-lines-anti-

The authority claimed by the State here to trample on parents' decisions about their own kids sweeps far beyond this particular legislation.  People of good faith have strongly held views on both sides of debates on issues involving children and gender dysphoria, and if Indiana and other states can impose their will on parents, then so can states and local governments that think differently—for instance, by allowing (or even requiring) schools to shut parents out of discussions regarding their child's gender expression.  Beyond the gender-identity context, there is no end to the kinds of parental decisions that local, state, or federal officials could hijack whenever they think they know better than parents.  Government has no business interfering with parental value judgments in this manner.  The Constitution wisely deposits that power in the hands of parents "to direct the education and upbringing of [their] children." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997).

An Iowa Republican legislator—and a signatory to this brief—who voted against a bill similar to this one hit the nail on the head: These bans ignore the basic and inviolable principle that "parents matter."[5]  *Amici* agree, and so does the Constitution.  This Court should affirm the district court's preliminary injunction.

---

trans-bill-explain-their-vote/; Lulu Garcia-Navarro, *Why the G.O.P.'s Attack on Trans Rights Could Backfire on the Party*, N.Y. TIMES (Mar. 2, 2023), https://www.nytimes.com/2023/03/02/opinion/trans-gender-attacks-republican-party.html.

[5] Iowa Capital Dispatch, *Rep Chad Ingels on SF 538 1*, YOUTUBE (Mar. 12, 2023), https://www.youtube.com/watch?v=4RAHdguMepo.

## ARGUMENT

Plaintiffs moved for a preliminary injunction on several grounds, including that "S.E.A. 480 denies the parent plaintiffs their fundamental right to dictate the care, custody, and control of their children." ECF No. 27 at 23. Although the court below did not reach this question, *see* SA29 n.7, this Court "may affirm the district court's issuance of a preliminary injunction on any basis in the record." *Cook Cnty. v. Wolf*, 962 F.3d 208, 226 (7th Cir. 2020).

*Amici* submit that parents' due process right to direct the medical care of their children supplies ample basis to affirm the district court's decision.

## I.    S.E.A. 480 usurps the constitutional right of parents to make important healthcare choices for their minor children.

Reflecting bedrock "concepts of the family as a unit with broad parental authority over minor children," "our constitutional system long ago rejected any notion that a child is 'the mere creature of the State.'" *Parham v. J.R.*, 442 U.S. 584, 602 (1979) (quoting *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 535 (1925)). A long line of Supreme Court cases firmly establishes "that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000) (plurality opinion) (collecting "this extensive precedent"). This core right encompasses the right "to recognize symptoms of illness and to seek and follow medical advice." *Parham*, 442 U.S. at 602. "Simply because the decision of

a parent … involves risks does not automatically transfer the power to make that decision from the parents to some agency or officer of the state." *Id.* at 603.

In keeping with this constitutional principle, it is generally the *parents'* decision, not the State's, whether to seek certain medical treatments for their minor children—particularly when those treatments are widely accepted in the medical community and are legal for adults.  By enacting S.E.A. 480, the State claims the power to make that decision instead of the child's parents.  Indeed, in the court below, Indiana argued that its ban was justified because "minors do not have the 'maturity, experience, or capacity for judgment required for making life's difficult decisions.'"  ECF No. 54 at 24-25 (quoting *Parham*, 442 U.S. at 602).[6]  But Indiana conspicuously omits the first half of the sentence it quotes from *Parham*, which reads: "The law's concept of the family rests on a presumption that *parents* possess what a child lacks in maturity, experience . . . ."  442 U.S. at 602 (emphasis added); *see also id.* at 603 ("Most children, even in adolescence, simply are not able to make sound judgments concerning many decisions, including their need for medical care or treatment.  *Parents* can and must make those judgments." (emphasis added)).  The State's effort to usurp the parental role and responsibility is directly contrary to the

---

[6] To similar effect, in an *amicus* brief before the Eleventh Circuit, Indiana and numerous other states defended these bans on the ground that "minors struggle to navigate peer pressure, weigh costs and benefits of life-altering decisions, or make clear-headed judgments about their adult lives."  Br. of the States of Arkansas et al. 13, *Eknes-Tucker v. Governor of Alabama*, No. 22-11707 (11th Cir. July 5, 2022).

6

Constitution's guarantee of "liberty," and the sphere of authority the Constitution reserves for parents "to direct the … upbringing" of their own children. *Glucksberg*, 521 U.S. at 720.

At bottom, the Indiana statute at issue here is an attempt by "the State to inject itself into the private realm of the family to further question the ability of [a fit] parent to make the best decisions concerning the rearing of that parent's children." *Troxel*, 530 U.S. at 68-69. It is no surprise, then, that the State's opening brief in this Court repeatedly lapses into rhetoric drawing upon the discredited notion "that a child is 'the mere creature of the State.'" *Parham*, 442 U.S. at 602 (citation omitted). Over and over, the State argues that "Indiana need not let *its* children become research subjects," that it must "look after the health and safety of *its* children," that it "need not make *its* children test subjects," and that it seeks "to avoid irreversible health risks to *its* children." Indiana Opening Br. 2, 31, 45, 49 (emphases added) (citations omitted). The 21 *Amici* States are guilty of the same Freudian slip, claiming "to look after the health and safety of *their* children" by prohibiting "irreversible medical treatments of *their* children" and that "[t]he Constitution does not require Indiana to offer *its* children as guinea pigs." Br. of Alabama, Arkansas, Tennessee, and 18 Other States as *Amici Curiae* 1, 23 (emphases added) (brackets and citations omitted). It should be uncontroversial that parents have primary

authority over their children, not the State.  This statute violates that elementary truth and, with it, the Constitution.

Crucially, this is not a situation in which the State has deemed the medical treatments at issue to be too risky, unsafe, or experimental as a *general* matter.  In fact, these treatments are fully legal and available for adults.  Many of these same treatments (for example, hormone therapy) also remain legal for *all minors* so long as they are not "performed for the purpose of assisting an individual with a gender transition"—even though such treatments for a different purpose have *the same* physiological effects.  Ind. Code § 25-1-22-5(a)(2).   Instead, S.E.A. 480 makes a paternalistic rule *for minors as a category* that draws a bright-line between 17-year-olds and 18-year-olds.  The statute's ban turns entirely on the general age of majority because it is aimed at shielding children from choices they would be free to make as adults.  Of course, that is generally the parents' duty—but the State does not trust parents to make that decision for their own children.[7]

---

[7] The same is true of similar legislation in other states.  Arkansas, for instance, has explained that "[a]dults remain free to undergo the same experimental procedures that the Act prohibits for minors.  For example, a practitioner cannot perform a gender-transition procedure on a girl one month *before* her eighteenth birthday but can perform it one month *after* her eighteenth birthday."  Br. of Defendants-Appellants 29-30, *Brandt v. Rutledge*, No. 21-2875 (8th Cir. Nov. 15, 2021).  And Alabama stressed that "the State did *not* ban the procedures for consenting adults." Opening Br. of State Defendants 44, *Eknes-Tucker v. Governor of Alabama*, No. 22-11707 (11th Cir. June 27, 2022).

The theory underlying this ban is plain: Because they say children cannot make choices about medical care for themselves given the potential long-term implications, the State must step in, vetoing the judgments of not just children but their parents.  That approach defies the concept of family embedded in our constitutional system, which charges *parents* with making important medical decisions for their children, not a state legislature.  *See Parham*, 442 U.S. at 603 ("Simply because the decision of a parent … involves risks does not automatically transfer the power to make that decision from the parents to some agency or officer of the state.").  To put it bluntly, the State thinks it knows how to take care of children better than the children's own parents, and, even more disturbingly, that it has the right to substitute its own judgment for that of the parents.  That view is anathema to the Constitution.[8]

---

[8] Contrary to Indiana's argument below, ECF No. 54 at 21, it is beside the point that a state has authority to ban certain experimental or controversial medical procedures *in general*, for adults and children alike.  The Sixth Circuit made this same mistake in *L. W. ex rel. Williams v. Skrmetti*, 73 F.4th 408, 417-18 (6th Cir. 2023).  Both Indiana and the Sixth Circuit relied upon *Abigail Alliance for Better Access to Developmental Drugs v. von Eschenbach*, 495 F.3d 695 (D.C. Cir. 2007) (no constitutional right for the terminally ill to access experimental drugs) and *Washington v. Glucksberg*, 521 U.S. 702 (1997) (no constitutional right to assisted suicide).  But those cases are irrelevant because neither involved a State's effort to replace the parents as medical decisionmaker for their children.  No one doubts that the State may ban certain risky medical treatments or procedures.  What it cannot do, though, is enact a special ban only for children on the theory that the State, not parents, has the right to make important medical decisions that children cannot make on their own.

II.    **The authority claimed by the State would provide a blueprint for States to override parents' decisions wholesale.**

While the State may prefer to override certain choices parents make about the care of their children, the authority it claims would open Pandora's box.  It takes little imagination to picture a different local government, state legislature, or even Congress enacting policies that run roughshod over the rights of parents in a way that offends the preferences of Indiana's current government.  A few examples illustrate the point.

Consider a school district in Maryland that enacted a policy authorizing schools to implement "gender support plans" that help students pursue a gender transition without the knowledge or consent of the students' parents.  *John and Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*, 78 F.4th 622, 626 (4th Cir. 2023). Indeed, the policy specifically provides that "the school may withhold information about a student's gender support plan 'when the family is nonsupportive.'"  *Id.* at 627.[9]  In that case, a group of parents understandably argued that "the Parental Preclusion Policy violates their fundamental right to raise their children under the Fourteenth Amendment of the Constitution."  *Id.*  But that fundamental right cannot

---

[9] Pushing the same line, California is already suing a school district that "requir[es] schools to notify parents if their children change their gender identification or pronouns."  Amy Taxin & Sophie Austin, *California sues district that requires parents be notified if their kids change their gender or pronouns*, PBS (Aug. 28, 2023), https://www.pbs.org/newshour/politics/california-sues-district-that-requires-parents-be-notified-if-their-kids-change-their-gender-or-pronouns.

extend only to parents who make parental decisions of which the government approves.

The example above is not isolated. Maine recently enacted legislation permitting minors to obtain hormones for the purpose of gender transitions *without parental consent* in some circumstances. *See* Robbie Feinberg, *Maine expands ability of older teens to receive gender-affirming care without parents' consent*, WBUR (July 13, 2023), https://www.wbur.org/news/2023/07/13/teens-gender-affirming-care-parental-consent ("Transgender 16- and 17-year-olds in Maine can now, in certain situations, receive gender-affirming hormone therapy without a parent's consent."). And Washington changed its law to allow shelters housing a minor "seeking gender-affirming care" not to contact the parents. Ed Komenda, *Transgender minors protected from estranged parents under Washington law*, PBS (May 9, 2023), https://www.pbs.org/newshour/politics/transgender-minors-protected-from-estranged-parents-under-washington-law. If parental rights are cast aside in this case at the altar of State authority, what principled basis would be left to oppose such laws that also seek to remove parents from core decisions involving their children?

The principle of state control that Indiana and other states espouse may extend even further, putting families at risk of outright losing their children. Consider Texas's policy of investigating parents for "child abuse" simply for choosing to

provide gender transition care to their children.[10]  As this litigation makes clear, many people and medical professionals believe that it endangers children with gender dysphoria *not to* provide them with gender-affirming care.  The district court found that "Plaintiffs have designated evidence of risks to minors' health and wellbeing from gender dysphoria if those treatments can no longer be provided to minors—prolonging of their dysphoria, and causing additional distress and health risks, such as depression, posttraumatic stress disorder, and suicidality."  SA24-25. Against this backdrop, it is not hard to imagine jurisdictions on the other side of the culture war authorizing a prosecutor or child protective services to investigate parents for neglect or even "child abuse" simply because the parents do not allow their child to undergo any gender transition procedures.  Indeed, the Cincinnati Board of Education has advised public schools "to 'consider' reporting child abuse to child protective services if a student's parents are unsupportive of his or her gender identity."[11]

---

[10] Bill Chappell, *Texas Supreme Court OKs state child abuse inquiries into the families of trans kids*, NPR (May 13, 2022), https://www.npr.org/2022/05/13/1098779201/texas-supreme-court-transgender-gender-affirming-child-abuse; *see also* Jim Vertuno, *Texas investigates hospital over care for transgender minors*, ASSOCIATED PRESS (May 5, 2023), https://apnews.com/article/texas-transgender-hospital-investigation-greg-abbott-dce466dcaa7be541c009a2fdc0b4a286.

[11] Jessica Chasmar, *Cincinnati schools told to 'consider' reporting child abuse if parents unsupportive of child's gender identity*, FOX NEWS (May 18, 2023), https://www.foxnews.com/politics/cincinnati-schools-told-consider-reporting-child-abuse-parents-unsupportive-childs-gender-identity.

Examples of potential government overreach stretch far beyond the context of transgender identity and medical care, and could easily be multiplied. For instance, consider whether states or local jurisdictions might enact laws or policies that disregard parental choice and consent regarding "unhealthy" foods, "dangerous" sports or athletic activities, or even ear piercings for girls and circumcision for boys. No one wants a system in which parents' basic judgments in raising and caring for their children are overridden at every turn by politicians and bureaucrats who disagree with the parents' choices. But that is where the State's logic leads, putting a host of routine parental decisions up for grabs by the State.

Thankfully, the Constitution safeguards the rights of *all* parents against governmental policies that seek to control their children, regardless of whether the policy is popular with conservatives or liberals. This Court should enforce that constitutional protection and affirm the district court's preliminary injunction.

## CONCLUSION

For the foregoing reasons, the decision of the district court should be affirmed.

Dated: September 27, 2023

Respectfully submitted,

*s/ Brian T. Burgess*

CJ Morrison
GOODWIN PROCTER LLP
Three Embarcadero Center
28th Floor
San Francisco, CA 94111
(415) 733-6000

Brian T. Burgess
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC 20036
(202) 346-4000

Jesse Lempel
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1000

*Counsel for Amici Curiae*

14

## APPENDIX

*Amici* are the following individuals:

Kim Banta (R-KY),
> Member of the Kentucky House of Representatives, 2019-Present.

Sarah Davis (R-TX),
> Member of the Texas House of Representatives, 2011-2021.

Jordan Willow Evans (R-MA),
> Town Constable of Charlton, Mass., 2016-2020; Member of the Dudley-Charlton Regional School Committee, 2020-2022; and the Nation's first openly transgender elected Republican.

Chad Ingels (R-IA),
> Member of the Iowa House of Representatives, 2021-Present.

Ileana Ros-Lehtinen (R-FL),
> Member of the U.S. House of Representatives, 1989-2019.

Chris Sander (R-MO),
> Member of the Missouri House of Representatives, 2021-Present.

Dan Zwonitzer (R-WY),
> Member of the Wyoming House of Representatives, 2005-Present.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) and Circuit Rule 29 because it contains 3,166 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Circuit Rule 23(b), the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it appears in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated:  September 27, 2023          *s/ Brian T. Burgess*

Brian T. Burgess
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC 20036
(202) 346-4000

## CERTIFICATE OF SERVICE

I, Brian T. Burgess, hereby certify that on September 27, 2023, I caused the foregoing **Brief for Conservative Legislators, Former Legislators, and Activists as *Amici Curiae* Supporting Appellees and Affirmance** to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Pursuant to ECF Procedure (h)(2) and Circuit Rule 31(b), and upon notice of this Court's acceptance of the electronic brief for filing, I certify that I will cause 15 copies of the **Brief for Conservative Legislators, Former Legislators, and Activists as *Amici Curiae* Supporting Appellees and Affirmance** to be transmitted to the Court within 7 days of that notice date.

Dated:  September 27, 2023          *s/ Brian T. Burgess* 

Brian T. Burgess
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC 20036
(202) 346-4000

*Counsel for Amici Curiae*