

January 24, 2024

Office of the Clerk
U.S. Court of Appeals for the Seventh Circuit
219 S. Dearborn St., Rm. 2722
Chicago, Illinois 60604

    Re:    K.C., et al. v. Individual Members of Med. Licensing Bd. of Ind., et al.
              No. 23-2366; Rule 28(j) Notice

Dear Clerk:

This appeal concerns whether the district court properly issued a preliminary injunction against the enforcement of Indiana Senate Enrolled Act 480 (2023), which generally prohibits the provision of certain forms of gender-affirming care to Hoosier minors diagnosed with gender dysphoria. Oral argument is scheduled for February 16, 2024. Pursuant to Rule 28(j) of the Federal Rules of Appellate Procedure, I write to inform the Court of a recent development in the district court.

In relevant part, the appellants contend that the district court "erred in awarding relief to nonparties" by prohibiting the enforcement of S.E.A. 480 "against 'any provider, as to any minor,' without certifying a class." (Br. of Appellants 51). For the reasons described previously (*see* Br. of Appellees 48-51), this argument is erroneous. Nonetheless, on January 23, 2024, the district court issued its Order Granting Motion for Class Certification, in which it certified three plaintiff classes and two plaintiff subclasses pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure. I attach a copy of the district court's order.

As certified by the district court, Class 1 ("the Minor Patient Class") consists of minors "who are, or will be, diagnosed with gender dysphoria, and are receiving, or would receive but for Senate Enrolled Act 480, care that falls within the statute's definition of 'gender transition procedures.'" (S.D. Ind. Dkt. 116 at 5). Class 2 ("the Parent Class") consists of the parents of these minors. (*Id.*). And Class 3 ("the Provider Class") consists of "all current physicians and practitioners in Indiana, as those terms are defined in Senate Enrolled Act 480, who are providing care that falls within the statute's definition of 'gender transition procedures' or who, but for the Act, would provide that care." (*Id.*).

The certification of these plaintiff classes may affect this Court's consideration of the appellants' argument concerning the scope of the preliminary injunction issued by the district court.

Thank you very much.

Very truly yours,

*/s/ Gavin M. Rose*

Gavin M. Rose
Attorney at Law

Cc:    Counsel of record (via CM/ECF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| K. C. *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:23-cv-00595-JPH-KMB |
| | ) | |
| THE INDIVIDUAL MEMBERS OF THE MEDICAL LICENSING BOARD OF INDIANA in their official capacities, *et al.* | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING MOTION FOR CLASS CERTIFICATION**

Indiana Senate Enrolled Act 480 would prohibit physicians and other practitioners from knowingly providing gender transition procedures to a minor, and from aiding or abetting another physician or practitioner in the provision of gender transition procedures to a minor.  Gender transition procedures banned by S.E.A. 480 include the use of puberty-blocking drugs, cross-sex hormone therapy, and gender reassignment surgery.[1]  Plaintiffs—four minor children, many of their parents, and a doctor and her family medical practice—allege that S.E.A. 480 violates the United States Constitution and other federal laws.  The Court has granted a preliminary injunction prohibiting Defendants—who are various State officials—from enforcing S.E.A. 480's prohibitions on (1) providing gender transition procedures for minors

---

[1] Based on the parties' stipulation that in Indiana no "provider performs gender-transition surgery on persons under the age of 18," dkt. 51 at 4, the Court previously held that Plaintiffs lack standing to challenge S.E.A. 480's prohibition of that procedure, and therefore did not enjoin its enforcement.  Dkt. 67 at 13–15.

1

except gender reassignment surgery and (2) speech that would aid or abet gender transition procedures for minors. Dkt. 67; dkt. 68.

Plaintiffs have filed a motion to certify this case as a class action, proposing three Classes and two Subclasses of minor patients, parents, and medical providers. Dkt. [10]. For the reasons below, that motion is **GRANTED**, and the proposed Classes and Subclasses are certified.

# I.
# Facts and Background

In early 2023, the Indiana General Assembly passed S.E.A. 480, and Governor Holcomb signed it into law. S.E.A. 480 (codified at Ind. Code §§ 25-1-22-1 et seq. (eff. July 1, 2023)). S.E.A. 480 prohibits physicians and other medical practitioners from "knowingly provid[ing] gender transition procedures to a minor." *Id.* § 13(a). The prohibited "gender transition procedures" include "any medical or surgical service . . . that seeks to: (1) alter or remove physical or anatomical characteristics or features that are typical for the individual's sex; or (2) instill or create physiological or anatomical characteristics that are different from the individual's sex." *Id.* § 5(a). Medical services prohibited under S.E.A. 480 can thus include "medical services that provide puberty blocking drugs [and] gender transition hormone therapy." *Id.* § 5(a)(2). Physicians and other medical practitioners are further prohibited from "aid[ing] or abet[ting] another physician or practitioner in the provision of" prohibited gender transition procedures to a minor. *Id.* § 13(b).

Plaintiffs K.C., M.W., A.M., and M.R. are all minors who have been diagnosed with gender dysphoria and are receiving medical treatment. Dkt. 51.

2

Plaintiff Dr. Catherine Bast is a board-certified family-practice physician at Mosaic Health and Healing Arts in Goshen, Indiana. *Id.* at 11–12. As of April 2023, Mosaic treated 72 minor patients who are diagnosed with gender dysphoria and are prescribed puberty blockers and/or hormones as treatment. *Id.* at 12.

Plaintiffs brought this action in April 2023, alleging that S.E.A. 480's restrictions violate (1) the minor plaintiffs' Fourteenth Amendment equal protection rights, (2) the parent plaintiffs' "fundamental rights protected by due process" under the Fourteenth Amendment, (3) the medical-provider plaintiffs' First Amendment speech rights, and (4) Medicaid provisions in 42 U.S.C. §§ 18116 and 1396d(a). Dkt. 1 at 42–45. Plaintiffs filed a motion for a preliminary injunction under Federal Rule of Civil Procedure 65, requesting that the Court "prohibit[ ] the enforcement of" S.E.A. 480. Dkt. 9. In June 2023, the Court granted that motion in large part, preliminarily enjoining Defendants from enforcing S.E.A. 480's prohibitions on (1) providing gender transition procedures for minors except gender reassignment surgery and (2) speech that would aid or abet gender transition procedures for minors. Dkt. 67; dkt. 68. A bench trial is scheduled to begin on November 4, 2024. Dkt. 94.

Plaintiffs have moved for class certification, proposing three Classes and two Subclasses of minor patients, parents, and medical providers. Dkt. 10; dkt. 105 at 2–3. Defendants oppose class certification. *See* dkt. 106.

3

## II.
## Applicable Law

Class actions were designed as "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 155 (1982). "Federal Rule of Civil Procedure 23 governs class actions." *Santiago v. City of Chicago*, 19 F.4th 1010, 1016 (7th Cir. 2021). "Rule 23 gives the district courts broad discretion to determine whether certification of a class-action lawsuit is appropriate," *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008), and "provides a one-size-fits-all formula for deciding the class-action question," *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 399 (2010).

"Rule 23(a) enumerates four—and only four—requirements for class certification: numerosity, commonality, typicality, and adequacy of representation." *Simpson v. Dart*, 23 F.4th 706, 711 (7th Cir. 2022). In addition to those "prerequisites," the class must fit one of Rule 23(b)'s "particular types of classes, which have different criteria." *Santiago*, 19 F.4th at 1016. "A class may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites for class certification have been met." *Id.*

## III.
## Analysis

### A. Proposed Classes and Subclasses

Plaintiffs seek certification of three Classes and two Subclasses:

1) Class 1 ("the Minor Patient Class"), which is represented by K.C., M.W., A.M., and M.R., is defined as "all minors in the State of Indiana who are, or will be, diagnosed with gender dysphoria, and are receiving, or would receive but for Senate Enrolled Act 480, care that falls within the statute's definition of 'gender transition procedures.'"

   a) Subclass 1-A ("the Medicaid Patient Subclass"), which is a subclass of the Minor Patient Class and is represented by A.M, is defined as "all members of Class 1 who are, or will be, Medicaid recipients."

2) Class 2 ("the Parent Class"), which is represented by Nathaniel and Beth Clawson, Ryan and Lisa Welch, Emily Morris, and Maria Rivera, is defined as "all parents of minors in the State of Indiana who are, or will be, diagnosed with gender dysphoria, and are receiving, or would receive but for Senate Enrolled Act 480, care that falls within the statute's definition of 'gender transition procedures.'"

3) Class 3 ("the Provider Class"), which is represented by Dr. Catherine Bast and Mosaic Health and Healing Arts, Inc. ("Mosaic"), is defined as "all current physicians and practitioners in Indiana, as those terms are defined in Senate Enrolled Act 480, who are providing care that falls within the statute's definition of 'gender transition procedures' or who, but for the Act, would provide that care."

   a) Subclass 3-A ("the Medicaid Provider Subclass"), which is also represented by Dr. Bast and Mosaic, is defined as "all members of Class 3 who are Medicaid providers and who are currently providing care, reimbursed by Medicaid, which falls within the definition in Senate Enrolled Act 480 of 'gender transition procedures' and those providers in the future who would provide such care but for Senate Enrolled Act 480."

Dkt. 105 at 2–3. Defendants do not object to these definitions but argue that class certification is inappropriate under Rule 23. *See* dkt. 106 at 1–3.

"The party seeking certification bears the burden of demonstrating . . . by a preponderance of the evidence" that each of Rule 23's requirements is

5

satisfied. *Santiago*, 19 F.4th at 1016. Here, Plaintiffs seek certification under Rule 23(b)(2), dkt. 10 at 1; dkt. 105 at 4, which requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

### B. Rule 23(a) Requirements

#### 1. Numerosity

To satisfy the numerosity requirement, the proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, Plaintiffs have designated evidence indicating that each Class and Subclass has more than forty members, including the Minor Patient Class with hundreds of members. Dkt. 105 at 4–10; *see Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 860 (7th Cir. 2017) ("While there is no magic number that applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement."). Defendants do not dispute that evidence. Dkt. 234 at 3–5. They instead argue that numerosity is not satisfied for the Provider Class and its Medicaid Provider Subclass because those class members could all be joined as parties. Dkt. 106 at 6.

"While 'impracticable' does not mean 'impossible,' a class representative must show that it is extremely difficult or inconvenient to join all the members of the class." *Anderson v. Weinert Enters., Inc.*, 986 F.3d 773, 777 (7th Cir. 2021). That standard is satisfied here. The Provider Class and Medicaid Provider Subclass contain roughly fifty members who work for several different

6

organizations across Indiana. See dkt. 105 at 7; *Anderson*, 986 F.3d at 778 ("Our reasoning does not require a plaintiff to identify the exact number of class members at the certification stage."). That Class and Subclass are therefore each currently large enough to make the joinder of all members extremely inconvenient. Moreover, anyone who later begins providing "gender transition procedures" would also meet the class definition, and it would be impracticable to join those providers as this suit progresses. *See Lindh v. Fed. Corr. Inst., Terre Haute, Ind.*, No. 2:14-cv-142-JMS-WGH, 2014 WL 7334745 at *3 (S.D. Ind. Dec. 19, 2014) ("[T]he joinder of [future class members], regardless of the number, is inherently impracticable."); *A.B. v. Hawaii State Dept. of Education*, 30 F.4th 828, 838 (9th Cir. 2022) ("[W]hen, as here, a class's membership changes continually over time, that factor weighs in favor of concluding that joinder of all members is impracticable.").

Defendants nevertheless argue that the providers work for only three employers, so they could join this lawsuit, which would cover the providers unless they also provide care independently of their employers. Dkt. 106 at 4. But Defendants cite no support for using proposed class members' employers as a proxy for the class members themselves under Rule 23. *See id.* Moreover, S.E.A. 480 covers "physicians" and "other practitioners"—not entities—so S.E.A. 480 does not directly regulate those employers and they are not class members. Rule 23 requires that "*the class*" be so numerous that joinder "*of all members*" is impracticable, without offering an exception if their rights could be litigated in other ways, such as through an employer. Fed. R. Civ. P. 23(a)(1).

7

Defendants' argument, based on the fact that there are only a few entities that employ all current members of the Provider Class and Medicaid Provider Subclass, does not make certification improper.

The Provider Class and Medicaid Provider Subclass therefore satisfy the numerosity requirement. The same is true for the other Classes and Subclasses, which are larger and for which Defendants do not contest numerosity. *See* dkt. 234 at 3–5.

### 2. Commonality and Typicality

To satisfy the commonality requirement, there must "be one or more common questions of law or fact that are capable of class-wide resolution and are central to the claims' validity." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1026 (7th Cir. 2018). And to satisfy the typicality requirement, "'the claims or defenses of the representative party [must] be typical of the claims or defenses of the class.'" *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009). "A claim is typical if it 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . [the] claims are based on the same legal theory.'" *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006). "[T]he typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members," but the named plaintiffs' claims should "have the same essential characteristics as the claims of the class at large." *Muro*, 580 F.3d at 492.

Plaintiffs argue that the commonality and typicality requirements are met because the Classes' and Subclasses' claims turn on shared constitutional questions. Dkt. 105 at 10–12. Defendants respond that the claims instead require individual considerations. Dkt. 106 at 6–7.

Plaintiffs outline several questions of law common to the proposed Classes and Subclasses, including:

- Does S.E.A. 480 violate the minor patients' equal protection rights?
- Does S.E.A. 480 violate federal Medicaid law and the Affordable Care Act?
- Does S.E.A. 480 violate the Due Process Clause's protections for parental rights?
- Does S.E.A. 480 violate medical providers' First Amendment rights?

Dkt. 105 at 10–11.

S.E.A. 480 is a broad statute that applies uniformly to each Class and Subclass, and "it is undisputed" that "the alleged discriminatory actions were undertaken pursuant to a uniform policy." *Ross v. Gossett*, 33 F.4th 433, 438 (7th Cir. 2022). Plaintiffs have thus pleaded and litigated their constitutional claims uniformly, seeking the same relief on behalf of their proposed Classes and Subclasses, without regard to class members' individual situations. *See McFields v. Dart*, 982 F.3d 511, 515–16 (7th Cir. 2020) (assessing commonality "requires a precise understanding of the nature of the plaintiffs' claims"). They allege that S.E.A. 480 by its terms broadly violates (1) minor patients' rights by "discriminat[ing] on the basis of sex," (2) parents' rights by prohibiting them "from obtaining medically necessary medical care for their children," and (3) medical providers' rights by prohibiting them from "engaging in

9

communications about medical care" and from "providing necessary medical care." Dkt. 1 at 41–45. The allegations therefore involve the entire Classes and Subclasses, without regard to individual class members' circumstances. *See id.*; *see Ross*, 33 F.4th at 438 ("[T]he issue as to the constitutionality of the policy is capable of a common answer."). And Plaintiffs' complaint and subsequent filings seek similarly broad relief—an injunction prohibiting "defendants from enforcing Senate Enrolled Act 480 and allowing plaintiffs and the class and subclass to proceed as if the law was not in effect." Dkt. 1 at 46; *see* dkt. 9; dkt. 27.

There are therefore common questions central to the Classes' and Subclasses' claims, and a shared legal analysis will determine whether Plaintiffs are entitled to any of the injunctive relief they seek. *See Ross*, 33 F.4th at 438–39; *Red Barn Motors, Inc. v. NextGear Cap., Inc.*, 915 F.3d 1098, 1102 (7th Cir. 2019) ("The proper focus of commonality is whether determination of the question will yield common answers that could resolve the litigation."). So there are, at most, "the mere 'factual distinctions' that arise in most any case," rather than "overwhelming factual distinctions that defeat any essential characteristics across the claims." *McFields*, 982 F.3d at 518.

Plaintiffs' claims thus involve common questions of law and fact, satisfying the commonality requirement. *See Beaton*, 907 F.3d at 1026. And since the named plaintiffs' claims arise from the same statute and are "based on the same legal theory," typicality is also satisfied. *See Lacy v. Cook County,*

10

*Illinois*, 897 F.3d 847, 866 (7th Cir. 2018) ("[T]he commonality and typicality . . . tend to merge.").

### 3. Adequacy of Representation

To satisfy the adequacy of representation requirement, the representative parties must "fairly and adequately protect the interests of the class." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "This adequate representation inquiry consists of two parts: (1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011).

Plaintiffs have satisfied the adequacy-of-representation requirement, which Defendants do not challenge. *See* dkt. 106. Plaintiffs' interests appear entirely consistent with those of the other Class members—so there is no indication that their claims are "idiosyncratic or possibly unique." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 758 (7th Cir. 2014). Plaintiffs have actively participated in this litigation, and their counsel represent that they will continue to do so. Dkt. 105 at 13.

Similarly, Plaintiffs' counsel will adequately represent the Classes and Subclasses. Plaintiffs are represented by ACLU attorneys Kenneth Falk, Stevie Pactor, Gavin Rose, Chase Strangio, and Harper Seldin. These attorneys have significant experience in similar cases and have done substantial work identifying, investigating, and pursuing Plaintiffs' claims. *See* dkt. 105 at 14–

15. There is no indication that any counsel has interests that conflict with those of the proposed Classes or Subclasses.

### C. Rule 23(b)(2) Requirements

A class may be certified under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338. 360 (2011). "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Id.* Accordingly, "civil rights cases against parties charged with unlawful, class-based discrimination are prime examples of what (b)(2) is meant to capture." *Id.* at 361.

Plaintiffs argue that their proposed Classes and Subclasses satisfy Rule 23(b)(2) because S.E.A. 480 applies uniformly against their members. Dkt. 107 at 9–10. Defendants contend, however, that class certification is inappropriate because final relief would require individualized determinations about different gender transition procedures, medical providers' approaches, and each minor's medical situation. Dkt. 106 at 7–12.

Here, Plaintiffs allege that S.E.A. 480 violates the entire Classes' and Subclasses' rights uniformly because it discriminates based on sex and

transgender status, infringes fundamental parental rights, and prohibits speech.  Dkt. 1 at 42–45.  Since they challenge a generally applicable statute on broad grounds, "a single injunction" against its enforcement "would provide relief to each member of the class."  *Dukes*, 564 U.S. at 360.  And they don't seek monetary damages.  *See id.* at 361–63.  This case is therefore a "prime example" for Rule 23(b)(2) certification as a "civil rights case[ ] against parties charged with unlawful, class-based discrimination."  *Id.* at 361.

Defendants' arguments about differences between the minor patient class members and differences between providers' treatment protocols misunderstand the nature of Plaintiffs' class claims.  As explained above, Plaintiffs are not seeking relief for each minor plaintiff individually—which would require individualized assessment of each treatment's benefits and risks, each patient's medical situation, and each provider's protocols.  *See* dkt. 106 at 8–12.  Instead, they broadly allege that S.E.A. 480 violates the entire Classes' and Subclasses' rights uniformly, and therefore seek injunctive relief straightforwardly "enjoining defendants from enforcing Senate Enrolled Act 480 and allowing plaintiffs and the class and subclass to proceed as if the law was not in effect."  Dkt. 1 at 42–46.

Similarly, it would not make class certification inappropriate even if Defendants are able to show that there are important differences between the use of puberty-blockers to treat minors with gender dysphoria and the use of hormones to treat minors with gender dysphoria.  *See* dkt. 106 at 9–11.  Since that argument broadly addresses the differences between those treatments—

13

rather than differences in patients from the same treatment—it goes to the legal merits instead of the appropriateness of class certification. For example, if the prohibition on puberty-blocking medications violated equal protection but the prohibition on hormones did not, that ruling would apply equally to each member of the Minor Patient Class. At worst, such a distinction could be resolved with subclasses for patients receiving each treatment, since this argument does not rely on individual patients' situations. *See General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982); *Ali v. City of Chicago*, 34 F.4th 594, 603 (7th Cir. 2022) ("[P]roposed class definitions are often narrowed or expanded.").[2] Rule 23(b)(2) is therefore satisfied. *See Dukes*, 564 U.S. 365.

Finally, Defendants argue that class certification is inappropriate because S.E.A. 480 also includes a prohibition on state, county, or local government employees providing gender-transition procedures. *See* dkt. 106 at 12–13 (citing Ind. Code § 25-1-22-14). But this argument is also too broad to show that classwide relief cannot be provided. If, as Plaintiffs argue, that provision is unconstitutional, dkt. 107 at 15–16, then any injunction would be unaffected. Or, if that provision remained in effect, then an injunction could (if appropriate on the merits) grant relief to the entire Classes and Subclasses regarding the remainder of S.E.A. 480 without enjoining Indiana Code § 25-1-22-14's prohibition. In either situation, any injunctive relief would apply to the

---

[2] Similar class-definition tweaks would be available, if necessary, to address any concerns about injunctive relief affecting S.E.A. 480's prohibition on surgical interventions, which Plaintiffs lack standing to challenge. *See* dkt. 106 at 13–16; dkt. 67 at 13–15.

class as a whole. That is all that Rule 23(b)(2) requires; success on the merits is a separate issue. *See Dukes*, 564 U.S. at 365.

For these reasons, Defendants have not shown that the requested relief will require addressing individual class members' situations. Since Plaintiffs challenge S.E.A. 480 broadly, not as applied individually, the Court will be required to address the issues collectively as to the Classes and Subclasses in this case. *See Dukes*, 564 U.S. 365 ("[T]he validity of a (b)(2) class depends on whether final injunctive relief . . . is appropriate respecting the class *as a whole*."). If Plaintiffs are unable to show that S.E.A. 480 should be enjoined classwide—independently of individual circumstances—then their claims will simply fail on the merits. *See Chi. Teachers Union, Local No. 1 v. Bd. of Ed. of City of Chi.*, 797 F.3d 426, 444–45 (7th Cir. 2015); *Beaton*, 907 F.3d at 1031 ("[C]ertification is largely independent of the merits . . . and a certified class can go down in flames on the merits."). But that does not make certification inappropriate.

In short, "[h]ere we have a proposed Rule 23(b)(2) class asking for the same injunction . . . for all." *Chi. Teachers Union*, 797 F.3d at 443 (reversing the denial of Rule 23(b)(2) class certification). Since Plaintiffs are litigating the merits of their claims on behalf of their Classes and Subclasses as a whole, Rule 23(b)(2) is satisfied.

### D. Appointment of Class Representatives & Class Counsel

After a court certifies a Rule 23 class, the court is required to appoint class counsel to represent the class members. *See* Fed. R. Civ. P. 23(g)(1). In appointing class counsel, the court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class.

Fed R. Civ. P. 23(g)(1)(A).

For the reasons explained above and based on the Court's finding of the adequacy of class representatives and class counsel, the Court makes the following appointments:

- K.C., M.W., A.M., and M.R. as class representatives of Class 1, the Minor Patient Class.
- A.M. as class representative of Subclass 1-A, the Medicaid Patient Subclass
- Nathaniel and Beth Clawson, Ryan and Lisa Welch, Emily Morris, and Maria Rivera as class representatives of Class 2, the Parent Class.
- Dr. Catherine Bast and Mosaic as class representatives of Class 3, the Provider Class.
- Dr. Catherine Bast and Mosaic as class representatives of Subclass 3-A, the Medicaid Provider Subclass.
- Kenneth Falk, Stevie Pactor, Gavin Rose, Chase Strangio, and Harper Seldin as class counsel.

# IV.
# Conclusion

Plaintiffs' motion for class certification is **GRANTED**.  Dkt. [10].

**SO ORDERED.**

Date: 1/23/2024

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel