IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

_____

No. 23-2366

K.C., *et al.*,

Plaintiffs/Appellees,

v.

INDIVIDUAL MEMBERS OF THE MEDICAL LICENSING
BOARD OF INDIANA, *et al.*

Defendants/Appellants

_____

On Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division
No. 1:23-cv-00595-JPH-KMB,
The Honorable James P. Hanlon, Judge

**Appellees' Reply In Support of Motion for Panel Reconsidaration and
Reconsideration En Banc As To Sua Sponte Stay of Preliminary Injunction**

## TABLE OF CONTENTS

Table of Authorities……………………………………………………………….. iii

Introduction ................................................................................................... 1

    I.     The Panel's Sua Sponte Stay Order Should Be Rescinded............ 1

    II.    Any Stay That Issues Must Be Subject to A Grace Period………… 2

Conclusion ...................................................................................................... 7

Certificate of Compliance ................................................................................ 9

# TABLE OF AUTHORITIES

**Cases**

*Deering Milliken, Inc. v. F.T.C.*, 647 F.2d 1124 (D.C. Cir. 1978) ................................ 6

*Eknes-Tucker v. Governor of Alabama*, 80 F.4th 1205 (11th Cir. 2023) ..................... 6

*Flower Cab Co. v. Petitte*, 685 F.2d 192 (7th Cir. 1982) ............................................. 6

*Frank v. Walker*, 766 F.3d 755 (7th Cir. 2014) ........................................................... 6

*In re Starnet, Inc.*, 355 F.3d 634 (7th Cir. 2004) ......................................................... 6

*L. W. v. Skrmetti*, 73 F.4th 408 (6th Cir. 2023) ...................................................... 7, 11

*Nat'l Resources Defense Council, Inc. v. Winter*, 518 F.3d 704 (9th Cir. 2008) ........... 6

*Poe v. Drummond*, No. 23-CV-177-JFH-SH, 2023 WL 6516449 (N.D. Okla. Oct. 5, 2023) ........................................................................................................................ 11

*Stone v Signode*, 777 F. App'x 170 (7th Cir. 2019) ..................................................... 6

**Statutes**

Ala. Code § 26-26-4 ................................................................................................... 10

Ariz. Rev. Stat. Ann. § 32-3230 ................................................................................. 10

Ark. Code Ann. § 20-9-1502 ...................................................................................... 10

Fla. Admin. Code Ann. r. 64B8-9.019 ....................................................................... 10

Fla. Admin. Code Ann. r. 64B15-14.014 ................................................................... 10

Ga. Code Ann. § 43-34-15(b)(4) ................................................................................ 10

Idaho Code Ann. § 18-1506C .................................................................................... 10

Ind. Code Ann. § 25-1-22-13 ..................................................................................... 10

Ind. Code Ann. § 25-1-22-4 ......................................................................................... 8

Iowa Code Ann. § 147.164 ........................................................................................ 10

Ky. Rev. Stat. Ann. § 311.372(6) ............................................................................... 10

La. Stat. Ann. § 40:1098.2(D) .................................................................................... 10

Miss. Code Ann. § 41-141-5 ............................................................................................ 11

Mo. Ann. Stat. § 191.1720(4) ......................................................................................... 10

Mont. Code Ann. § 50-4-1004 ....................................................................................... 11

N.C. Cent. Code Ann. § 12.1-36.1-03............................................................................ 11

N.C. Gen. Stat. Ann. § 90-21.152(b).............................................................................. 11

Neb. Rev. Stat. Ann. § 71-7304 ..................................................................................... 11

Ohio Rev. Code Ann. § 3129.02(B) ............................................................................... 11

Okla. Stat. Ann. tit. 63, § 2607.1(a)(2)(b)(7) ................................................................. 11

S.D. Codified Laws § 34-24-38...................................................................................... 11

Tenn. Code Ann. § 68-33-103(b) ................................................................................... 11

Tex. Health & Safety Code Ann. § 161.703(b), (c) ....................................................... 11

Utah Code Ann. § 58-1-603 ........................................................................................... 11

Utah Code Ann. § 58-1-603.1 ........................................................................................ 11

W. Va. Code Ann. § 30-3-20(c), (d) .............................................................................. 11

**Other Authorities**

AL LEGIS 2022-289, 2022 Alabama Laws Act 2022-289 (S.B. 184) .......................... 10

AR LEGIS 626 (2021), 2021 Arkansas Laws Act 626 (H.B. 1570) ............................. 10

AZ LEGIS 104 (2022), 2022 Ariz. Legis. Serv. Ch. 104 (S.B. 1138).......................... 10

GA LEGIS 4 (2023), 2023 Georgia Laws Act 4 (S.B. 140).......................................... 10

IA LEGIS 9 (2023), 2023 Ia. Legis. Serv. Ch. 9 (S.F. 538)......................................... 10

ID LEGIS 292 (2023), 2023 Idaho Laws Ch. 292 (H.B. 71) ........................................ 10

IN LEGIS 10-2023 (2023), 2023 Ind. Legis. Serv. P.L. 10-2023 (S.E.A. 480) (April 5, 2023 enactment)........................................................................................................ 10

KY LEGIS 132 (2023), 2023 Kentucky Laws Ch. 132 (SB 150)................................. 10

La. Sess. Law Serv. Act 466 (H.B. 648) ....................................................................... 10

MO LEGIS S.B. 49, 236 & 164 (2023), 2023 Mo. Legis. Serv. S.B. 49, 236 & 164 (VERNON'S) (West's No. 4) ................................................................................ 11

MT LEGIS 306 (2023), 2023 Montana Laws Ch. 306 (S.B. 99) ................................ 11

NE LEGIS 574 (2023), 2023 Nebraska Laws L.B. 574 ............................................. 11

Ohio Rev. OH LEGIS 16 (2024), 2024 Ohio Laws File 16 (Sub. H.B. 68) ................ 11

SD LEGIS 127 (2023), 2023 South Dakota Laws Ch. 127 (HB 1080) ....................... 11

2023 Tex. Sess. Law Serv. Ch. 335 (S.B. 14) ............................................................ 11

WV LEGIS 233 (2023), 2023 West Virginia Laws Ch. 233 (H.B. 2007) ................... 11

**<u>Rules</u>**

Fed. R. App. P. 8 ........................................................................................................ 10

**INTRODUCTION**

In the week since the Panel's February 27, 2024 Order, transgender adolescents, their parents, and their medical providers have been living a nightmare. Beginning the morning after the stay order, doctors like Plaintiff-Appellee Dr. Bast had to start the process of calling patients to inform them of the news, cancel appointments for the coming week, and effectively cut people off from treatment that had been improving their symptoms of gender dysphoria. *See* Bast Decl. ¶3, attached as Exhibit A. As Dr. Bast explained, these were some of the "most difficult conversations" she has ever had in her life. *Id*. at ¶4. Not only must she withhold medical treatment she knows is helping her patients, but also she cannot even tell parents where to go to continue to receive treatment lawfully for their children.

The Panel's March 1, 2024 Order effectively denied Plaintiffs-Appellees' request for panel reconsideration on the issuance of the stay. Appellees renew their request for en banc reconsideration of the stay here and emphasize, again, that, at a minimum, a delayed implementation of the stay is warranted.

I. **The Panel's Sua Sponte Stay Order Should Be Rescinded.**

After Appellees filed their February 28, 2024 Emergency Petition for Panel Rehearing and Rehearing En Banc, the Court issued a March 1, 2024 Order requesting briefing on whether a "grace period" from the sua sponte stay is warranted. Doc. No. 127. By issuing that briefing order on the narrow question of a "grace period", the Court effectively denied Appellees' request to vacate the stay. *See* Doc. No. 127, Dissent of Judge Jackson-Akiwumi (dissenting from the Order insofar

as it does not request briefing on whether a stay should issue). A vote from the en banc court is warranted upon a denial of reconsideration by the panel. *See, e.g.*, *Flower Cab Co. v. Petitte*, 685 F.2d 192, 195 (7th Cir. 1982) (noting circuit rules for rehearing). No such reference to en banc consideration was made in the Court's briefing order. *Contra id.* (noting specifically that "no member of the court in regular active service has voted to hear the matter en banc.").

In their Brief in Opposition, Appellants largely re-litigate the merits of the case and argue in favor of a stay for the first time here. For the reasons outlined in Appellees' February 28, 2024 Petition and Motion and the merits briefing in this matter, the Panel was wrong to grant a stay, particularly without a call for briefing from the parties, and Appellees renew their request for en banc consideration to vacate the stay here.[1]

## II. Any Stay That Issues Must Be Subject to A Grace Period.

Among the many harms that flow from the Court's decision to sua sponte stay the district court's injunction is the lack of notice provided to patients and families.

---

[1] Appellants' citations to other cases where stays were entered are inapposite. As discussed in Appellees' Petition/Motion, in *Eknes-Tucker v. Governor of Alabama*, 80 F.4th 1205 (11th Cir. 2023), the Court had already issued an opinion on the merits, a petition for rehearing was pending, and the Appellants moved for a stay. In *Frank v. Walker*, 766 F.3d 755, 755-56 (7th Cir. 2014), Wisconsin had asked for stay and the motion was granted after the case was briefed and orally argued. In *Stone v Signode*, 777 F. App'x 170 (7th Cir. 2019), the Court vacated a stay rather than issued one, in an unpublished opinion with reference to the district court's underlying reasons. In *Nat'l Resources Defense Council, Inc. v. Winter*, 518 F.3d 704 (9th Cir. 2008), the Ninth Circuit concurrent with the stay issued an opinion on the merits and explaining the stay. In *In re Starnet, Inc.*, 355 F.3d 634 (7th Cir. 2004), the Court issued a stay upon party motion and with an opinion. In *Deering Milliken, Inc. v. F.T.C.*, 647 F.2d 1124 (D.C. Cir. 1978), the D.C. Circuit stayed injunctions pending resolution of the cert petition, after issuing an opinion on the merits and explaining its reasons.

At lunchtime on February 27, 2024, transgender adolescents in Indiana had access to their doctor-prescribed gender-affirming medical treatment for gender dysphoria. By bedtime that same day, that care became illegal in Indiana. Though the legislature anticipated a grace period for families to make plans in the event care was outlawed, *see* Ind. Code § 25-1-22-13(d), this Court's sua sponte order allowed for no such planning. When the Court of Appeals for the Sixth Circuit stayed Tennessee's injunction, allowing that state's law to go into effect, Chief Judge Sutton noted, "[a]s for harm to others, the Act's continuing care exception permits the challengers to continue their existing treatments until March 31, 2024. That feature of the law lessens the harm to those minors who wish to continue receiving treatment." *L. W. v. Skrmetti*, 73 F.4th 408, 421 (6th Cir. 2023) (staying district court injunction with eight months remaining in the statutory grace period).

For the first time, Appellants now suggest a stay is proper and oppose even the entry of the type of grace period the legislature mandated when enacting SEA 480. Appellants' novel and constrained reading of the law should not be credited. Now they argue that treatment can continue so long as it is "titrated down" because such interventions would no longer be for the purposes of "gender transition". *See* Op. Br. at 15-16. But such a reading cannot be reconciled with the plain text of the statute. "Gender transition hormone therapy" is defined as the provision of enumerated hormones "in an amount greater than would normally be produced endogenously in a healthy individual of that individual's age and sex." Ind. Code Ann. § 25-1-22-4. The prohibited treatment is based on the amount given, not exclusively based on the

purpose for which it is prescribed, and the State's new reading of the law is inconsistent with this plain text. If the "grace period" in the law's text was solely for the purpose of "avoid[ing] any doubts", Opp. Br. at 15, about the ability of physicians to "titrate down" treatment, then it would be superfluous. Moreover, the State's atextual interpretation hardly binds future members of the Indiana Medical Licensing Board, nor does it bind Indiana courts resolving claims brought under S.E.A. 480's private-enforcement provision, Ind. Code § 25-1-22-16.  In other words, no provider in Indiana can rely on the State's novel interpretation.

Furthermore, titrating patients off of treatment is an option of last resort, as most patients who have already started care will do whatever it takes to continue care out of state. *See* Dist. Ct. Doc. No. 26-4 (Declaration of Nathaniel and Beth Clawson, whose 11 year-old transgender daughter received a puberty blocker a year ago) at ¶18 ("If she is condemned to having to suffer through male puberty and is denied the ability to be the girl that she truly is, it will be catastrophic."); Dist. Ct. Doc. No. 26-5 (Declaration of Lisa and Ryan Welch, whose 17 year-old transgender son started testosterone about two years ago) at ¶16 ("Before receiving testosterone, we watched our son struggle with gender dysphoria and its negative effects. It is clear that the receipt of testosterone has caused him to be much happier and is allowing him to live as he is, an adolescent boy. Without the testosterone he will revert to experiencing the profound negative effects of gender dysphoria."); Dist. Ct. Doc. No. 26-6 (Declaration of Emily Morris, whose almost 12 year-old transgender daughter has been on puberty blockers since 2021) at ¶17 ("I am afraid to think about what

might happen if the puberty blocker were stopped…I believe that this would also cause her to have irreversible depression and might cause her to think again about mutilating herself…"); Dist. Ct. Doc. No. 26-7 (Declaration of Maria Rivera, whose 16 year-old transgender son started testosterone a year ago) at ¶16 ("If he is not allowed to continue receiving the hormone therapy, I am sure that his gender dysphoria will come roaring back as he stops developing male characteristics and develop female ones. This would literally threaten his life.").

    By cutting off hundreds of transgender adolescent patients from treatment with no warning, the Court's order has created chaos and harm that must be minimized. The stay has forced doctors like Dr. Bast into the impossible position of knowingly causing harm to their patients to comply with state law. The stay has forced parents to watch their children suffer and possibly uproot their lives without any advance planning. And most troublingly, the stay has left hundreds of vulnerable adolescents with no treatment and no accessible and safe means to access information from their doctors about what treatment options remain. The State has no answer except to say, the law permits you to slowly go off your medication. But does it? And even so, should this group of patients be given no choice but to travel out of state to find care elsewhere? And if they can even manage that, should they be forced to do so with no medical guidance or information? Should their parents not be able to pick up the phone and call their trusted doctors to ask for help? It is hard to think of a clearer suppression of speech. It is hard to think of a more concrete harm. At a minimum, a

grace period is warranted to give doctors, parents, and patients a chance to make a plan.

This Court's sua sponte stay order is not just a remarkable divergence from typical practice wherein a party applies for a stay in one or more courts before any court grants one, and the "moving party must give reasonable notice of the motion to all parties." Fed. R. App. P. 8(a)(1)(C), (a)(2)(A), (a)(2)(C). It is also an extraordinarily irregular decree in the severe and immediate harm it caused without warning. Indiana provided ninety days' notice before prohibiting care: SEA 480 was enacted April 5, 2023, went into effect on July 1, 2023,[2] and provided a six-month grace period through December 31, 2023.[3] This was consistent with other states' restrictions, which provided at least thirty days' notice (and typically ninety days or more), a six-month (or longer) grace period to wind down care, and/or a legacy provision allowing existing care to continue.[4] And the majority of those laws did not contain an "aiding

---

[2] *Compare* Ind. Code Ann. § 25-1-22-13 (effective July 1, 2023) *with* IN LEGIS 10-2023 (2023), 2023 Ind. Legis. Serv. P.L. 10-2023 (S.E.A. 480) (April 5, 2023 enactment).

[3] *See* Ind. Code Ann. § 25-1-22-13(d).

[4] *Compare* Ala. Code § 26-26-4 *with* AL LEGIS 2022-289, 2022 Alabama Laws Act 2022-289 (S.B. 184) (30 days' notice); *and* Ariz. Rev. Stat. Ann. § 32-3230 *with* AZ LEGIS 104 (2022), 2022 Ariz. Legis. Serv. Ch. 104 (S.B. 1138) (one year's notice); *and* Ark. Code Ann. § 20-9-1502 *with* AR LEGIS 626 (2021), 2021 Arkansas Laws Act 626 (H.B. 1570) (over ninety days' notice); Fla. Admin. Code Ann. r. 64B8-9.019 (legacy provision); Fla. Admin. Code Ann. r. 64B15-14.014 (same); *compare* Ga. Code Ann. § 43-34-15(b)(4) (legacy provision) *with* GA LEGIS 4 (2023), 2023 Georgia Laws Act 4 (S.B. 140) (over ninety days' notice); *and* Idaho Code Ann. § 18-1506C *with* ID LEGIS 292 (2023), 2023 Idaho Laws Ch. 292 (H.B. 71) (over eight months' notice); *and* Iowa Code Ann. § 147.164 *with* IA LEGIS 9 (2023), 2023 Ia. Legis. Serv. Ch. 9 (S.F. 538) (over sixty days' notice); *and* Ky. Rev. Stat. Ann. § 311.372(6) (grace period) *with* KY LEGIS 132 (2023), 2023 Kentucky Laws Ch. 132 (SB 150) (over ninety days' notice); *and* La. Stat. Ann. § 40:1098.2(D) (yearlong grace period) *with* 2023 La. Sess. Law Serv. Act 466 (H.B. 648) (over five months' notice); *and* Mo. Ann. Stat. § 191.1720(4) (legacy

and abetting" provision that would prevent doctors from safely referring their patients to providers in states where care remained legal. Only this Court's stay order and the State of Mississippi deprived all minors of care overnight.[5]

## CONCLUSION

The en banc court should reconsider the issuance of the stay and vacate the Panel's February 27, 2024 Order. In the interim, the Panel should immediately order a grace period from the stay to mitigate the escalating harms to Indiana families.

---

clause) *with* MO LEGIS S.B. 49, 236 & 164 (2023), 2023 Mo. Legis. Serv. S.B. 49, 236 & 164 (VERNON'S) (West's No. 4) (over sixty days' notice); *and* Mont. Code Ann. § 50-4-1004 *with* MT LEGIS 306 (2023), 2023 Montana Laws Ch. 306 (S.B. 99) (over five months' notice); *and* Neb. Rev. Stat. Ann. § 71-7304 (legacy clause) *with* NE LEGIS 574 (2023), 2023 Nebraska Laws L.B. 574 (over four months' notice); N.C. Gen. Stat. Ann. § 90-21.152(b) (legacy clause); N.C. Cent. Code Ann. § 12.1-36.1-03 (legacy clause); Ohio Rev. Code Ann. § 3129.02(B) (legacy clause); Ohio Rev. OH LEGIS 16 (2024), 2024 Ohio Laws File 16 (Sub. H.B. 68) (ninety days' notice); Okla. Stat. Ann. tit. 63, § 2607.1(a)(2)(b)(7) (six-month grace period); *Poe v. Drummond*, No. 23-CV-177-JFH-SH, 2023 WL 6516449 (N.D. Okla. Oct. 5, 2023) (denying preliminary injunction with one month still remaining in Oklahoma's grace period); *compare* S.D. Codified Laws § 34-24-38 (six-month grace period) *with* SD LEGIS 127 (2023), 2023 South Dakota Laws Ch. 127 (HB 1080) (over four months' notice); *compare* Tenn. Code Ann. § 68-33-103(b) (eight-month grace period) *with L.W. by & through Williams v. Skrmetti*, 83 F.4th 460, 468 (6th Cir.) (noting Tennessee law's enactment four months before effective date) *and L.W. by & through Williams v. Skrmetti*, 73 F.4th 408, 421 (6th Cir. 2023) (noting Tennessee law's "continuing care exception…lessens the harm to those minors who wish to continue receiving treatment); *and* Tex. Health & Safety Code Ann. § 161.703(b), (c) (grace period) *with* 2023 Tex. Sess. Law Serv. Ch. 335 (S.B. 14) (almost ninety days' notice); *and* Utah Code Ann. § 58-1-603 (provision for treatment of minors under certain conditions) *with* Utah Code Ann. § 58-1-603.1 (prohibiting care for minors who had not been diagnosed with gender dysphoria prior to January 28, 2023); *and* W. Va. Code Ann. § 30-3-20(c), (d) (January 1, 2024 effective date with provision allowing care under certain conditions) *with* WV LEGIS 233 (2023), 2023 West Virginia Laws Ch. 233 (H.B. 2007) (over ninety days' notice).

[5] *See* Miss. Code Ann. § 41-141-5 (law effective from February 28, 2023 enactment). And even Mississippi's aiding and abetting provision provided that it "may not be construed to impose liability on any speech protected by federal or state law." *Id.*

| | |
|---|---|
| Dated: March 5, 2024 | Respectfully submitted, |
| | Kenneth J. Falk<br>*Counsel of Record*<br>Gavin M. Rose<br>Stevie J. Pactor<br>ACLU of Indiana<br>1031 E. Washington St.<br>Indianapolis, IN 46202<br>317/635-4059<br>fax: 317/635-4105<br>kfalk@aclu-in.org<br>grose@aclu-in.org<br>spactor@aclu-in.org |
| | Chase Strangio<br>Harper Seldin<br>American Civil Liberties Union<br>125 Broad Street<br>New York, NY 10004<br>212/549-2500<br>cstrangio@aclu.org<br>hseldin@aclu.org |
| | Attorneys for Appellees |

# CERTIFICATE OF COMPLIANCE

1.　This document complies with the type-volume limitation of Circuit Rule 32(c) because this document contains 2,414 words, excluding the parts exempted by Fed. R. App. P. 32(f).

2.　This document complies with the type-face and type-style requirements of Circuit Rule 27(d)(E) because this document has prepared using Microsoft Word in Century Schoolbook font with the text in 12-point font and the footnotes in 11-point font.

Kenneth J. Falk<br>
Attorney at Law