**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals
### For the Seventh Circuit
### Chicago, Illinois 60604

Argued February 16, 2024
Decided March 21, 2024

*Before*

KENNETH F. RIPPLE, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

CANDACE JACKSON-AKIWUMI, *Circuit Judge*

No. 23-2366

| | |
|---|---|
| K.C., et al.,<br>*Plaintiffs-Appellees*,<br><br>*v.*<br><br>INDIVIDUAL MEMBERS OF THE<br>MEDICAL LICENSING BOARD OF<br>INDIANA, et al.,<br>*Defendants-Appellants*. | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division.<br><br>No. 1:23-cv-00595-JPH-KMB<br><br>James P. Hanlon,<br>*Judge*. |

**O R D E R**

This court has received Appellees' motion to reconsider and request for en banc consideration of this court's February 27, 2024, order staying the district court's preliminary injunction and order dated June 16, 2023 (DE 125 and DE 126), as well as the State's response (DE 128) and Appellees' reply (DE 129) to this motion.

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A stay simply suspend[s] judicial alteration of the status quo … ." *Nken v. Holder*, 556 U.S. 418, 429 (2009) (alteration in original) (quotation omitted); *see also Nat. Res. Def. Council, Inc. v. Winter*, 518 F.3d 704, 705 (9th Cir. 2008) (sua sponte partial stay of preliminary injunction).

The state law challenged here, IND. CODE § 25-1-22, Gender Transition Procedures for Minors, was signed on April 5, 2023, and was scheduled to go into effect on July 1, 2023, absent the district court's order and injunction, entered on June 16, 2023.

This court's February 27, 2024, stay allows us to consider the state law without altering Indiana's ability to regulate the practice of medicine through a duly enacted law. The state law would be in effect now but for the injunction. And any physician or patient who proceeded in reliance on the district court's preliminary injunction did so understanding that the injunction was subject to reversal or to stay at any time by this court.

After review and consideration, the court denies Appellees' motion, and denies the alternative relief of delaying this court's stay.

JACKSON-AKIWUMI, *Circuit Judge*, dissenting. On June 16, 2023, the district court preliminarily enjoined Indiana S.E.A. 480 from going into effect. The State appealed. On February 27, 2024, eleven days after we heard oral argument, the panel majority issued a sua sponte order staying the preliminary injunction. That meant hundreds of transgender minors in Indiana woke up the next day without access to their existing care for gender dysphoria—specifically puberty blockers and cross-sex hormones. I would grant Plaintiff-Appellees' motion for reconsideration of the majority's stay order because the order is unsolicited and unreasoned, disrupts the status quo, and threatens irreparable harm to transgender minors, their parents, and their medical providers.

To begin, the majority has taken the highly unusual two-step of staying a district court's preliminary injunction on its own *and* offering no explanation. Let's take the first part: neither party has asked us—or the district court in the first instance—for a stay. Ordinarily, when we issue a stay, we do so at the request of a party and subject to the requirements of Federal Rule of Appellate Procedure 8(a). That rule instructs parties to present motions for a stay pending appeal to the district court initially, and only then to the court of appeals. Fed. R. App. P. 8(a). In this case, the majority certainly has the

authority to act without requiring a party to first present a motion to the district court or to us, but the departure from the ordinary appellate procedure means that the majority has weighed the wisdom of a stay without the benefit of reasoned arguments from both sides or input from the district court. I see no reason in a dispute of this magnitude—more on that below—to issue an order no party has requested and that the rules of procedure otherwise govern.

But it is not just that the majority has issued the stay on its own—it has done so without explaining its decision. The order above merely states that the majority has the power to impose the stay and, so, the majority will in fact continue to impose the stay. This leaves stakeholders and reviewing courts in the dark about *why* the majority remains certain—*if* the majority is certain—that its stay decision satisfies our jurisprudential standards.

The stay order here craves explanation for two reasons. One, although the analyses of stays and preliminary injunctions "substantial[ly] overlap," they are not identical. *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). A preliminary injunction "is an order directed at someone and that governs that party's conduct." *Id.* By affecting the injunction in some way, "a stay operates upon the judicial proceeding itself." *Id.* (quoting *Nken*, 556 U.S. at 428). This is precisely why, the Supreme Court has explained, before a stay order should issue, the stay applicant must make "a *strong* showing that she is likely to succeed on the merits"—not a showing that she is merely likely to succeed, as required for preliminary injunctions. *Id.* (emphasis added) (quoting *Nken*, 556 U.S. at 434). Two, this case presents difficult questions of whether banning minors' use of puberty blockers and cross-sex hormones to treat gender dysphoria violates the Minor-Plaintiffs' Fourteenth Amendment equal protection rights, the Parent-Plaintiffs' Fourteenth Amendment due process rights, or the Provider-Plaintiffs' First Amendment free speech rights. As the filings by the parties and amici demonstrate, the issues are complicated, fact-intensive, and subject to reasonable disagreement. No one is well-served by the risk of an appearance that the court has rushed its consideration of these weighty issues or the reality that the court has issued a stay order without analyzing the merits of a stay. Every case the State cites in post-hoc defense of the majority's stay decision involves a stay issued upon request by a party or with some explanation— neither of which is present here. It is in cases precisely like this one that we should exercise caution and explain any decision we make.

My second concern is that—contrary to the majority's suggestion—the stay order disrupts, rather than maintains, the status quo pending our review of the case. This directly contravenes our jurisprudence on preliminary injunctions and stays. In *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981), the Supreme Court explained that preliminary injunctions have the "limited purpose" of "merely [preserving] the relative positions of the parties until a trial on the merits." And in *Nken*, the Court explained that stays "suspend[] judicial alteration of the status quo." 556 U.S. at 429 (quoting *Ohio Citizens for Responsible Energy, Inc. v. NRC*, 479 U.S. 1312, 1313 (1986) (Scalia, J., in chambers)). Our function in deciding whether a stay is appropriate, then, is to keep things as they are until we can determine the parties' legal rights and entitlements. *See Flynn v. Sandahl*, 58 F.3d 283, 287 (7th Cir. 1995) ("The purpose of a stay is simply to preserve the status quo."); *Ind. Planned Parenthood Affiliates Ass'n, Inc. v. Pearson*, 716 F.2d 1127, 1135 n.8 (7th Cir. 1983) (explaining that regardless of whether the stay is of an order granting affirmative relief or denying affirmative relief, "[i]n both cases, the effect of the stay is to preserve the status quo ante").

To that end, we ask a single question: "What was the 'status quo' before the parties' dispute in this case?" *Chi. United Indus., Ltd. v. City of Chicago*, 445 F.3d 940, 944 (7th Cir. 2006). Here, had Plaintiff-Appellees not filed suit, S.E.A. 480 would have gone into effect eventually (on December 31, 2023, for minors receiving cross-sex hormones and on July 1, 2023, for everyone else). This, the majority posits above, is the relevant "status quo." But our jurisprudence demands the opposite conclusion. "Status quo" does not mean the state of things the moment a party files suit; it means the "last peaceable uncontested status existing between the parties before the dispute developed." 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948 (3d ed. 2023) (internal quotation marks and citation omitted); *see Whole Woman's Health All. v. Rokita*, 13 F.4th 595, 597 (7th Cir. 2021) ("All of the contested provisions have been in force for years, so a stay would preserve the status quo pending appellate resolution.").

Before the Indiana Legislature enacted S.E.A. 480, transgender minors used puberty blockers and cross-sex hormones to treat gender dysphoria for years. On June 16, 2023, weeks before S.E.A. 480's effective date of July 1, 2023, the district court preliminarily enjoined the law. So transgender minors continued to use puberty blockers and cross-sex hormones to treat gender dysphoria. The State did not ask the district court to reconsider its preliminary injunction, nor did the State ask us to stay the district court's order pending appeal. This means during this appeal, transgender minors have continued to use puberty blockers and cross-sex hormones. They did so

undisturbed until February 27, 2024—the day the panel majority decided that S.E.A. 480 should go into effect.

Our court's statements on the topic of the status quo are worth noting: "Fundamentally, the reluctance to disturb the status quo prior to trial on the merits is an expression of judicial humility." *Chi. United Indus., Ltd.*, 445 F.3d at 945 (quoting *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 1015 (10th Cir. 2004) (en banc) (McConnell, J., concurring)). "It is one thing for a court to preserve its power to grant effectual relief by preventing parties from making unilateral and irremediable changes during the course of litigation, and quite another for a court to force the parties to make significant alterations in their practices before there has been time for a trial on the merits." *Id*. (citation omitted). Preserving the status quo allows us to remain neutral and forces the parties to act in accordance with their good-faith dispute about legal entitlements. *See id.* "The moving party is not given any rights, even temporarily, that would normally be his only if the legal dispute were resolved in his favor." *Id*. (citation omitted).

Yet, in a highly unusual move, the majority decided on its own that S.E.A. 480 should go into effect immediately, thereby forcing the parties to significantly alter their practices before any issue has been decided on the merits. To be sure, not all stays or injunctions that force litigants to shift action prove problematic: "[I]t is sometimes necessary to require a party who has recently disturbed the status quo to reverse its actions. Such an injunction *restores*, rather than disturbs, the status quo ante, and is thus not an exception to the rule." *O Centro*, 389 F.3d at 1013 (McConnell, J., concurring) (emphasis added). I do not see how the majority's requirement that the State implement a law that has yet to go into effect can be justified as necessary to preserve the status quo. The "stay" thus does something other than stabilize existing conditions: it effectuates change (potentially life-altering change for the Minor-Plaintiffs) and functionally provides final relief on the merits to the State. It does so, as I have stressed, without issuing judgment and a reasoned opinion or even the promise of reasoned opinion to come.

Now to my final reason for dissenting from the denial of Plaintiff-Appellees' motion for reconsideration. I believe that had our court undertaken the analysis commanded by *Nken*, it would have been clear that the balance of harms tilts decisively in favor of Plaintiff-Appellees—in fact, profound irreparable harm is happening now. Overnight, the stay terminated key parts of transgender care and prohibited families from working with their medical providers to achieve continuity of care out of state. *See*

ECF No. 125 at 5, 9–10. The abbreviated record before us leaves no doubt that this situation dramatically impairs the health of minors with gender dysphoria. It establishes that this condition, when left untreated, causes grave adverse mental health outcomes including suicidality. *Id*. at 6 (citing Dkt. 26-3 at 18 ¶ 32 (Turban Declaration)). And what of the State's harm? Why, if the State's claim of irreparable harm was so serious as to warrant preliminary relief in its favor, did it tolerate the longstanding use of puberty blockers and cross-sex hormones by minors? More importantly, why did it choose not to ask the district court or our court to stay the preliminary injunction pending appeal?

We are left with the following balancing picture: The most harm that could befall the State (by maintaining the preliminary injunction while we decide the appeal and prepare an opinion) is a delay by several months of a change to the status quo. The most harm that could befall Plaintiff-Appellees (by lifting the preliminary injunction while we decide the appeal) is serious physical or other harm—harm that may be permanent.

Even accepting what I must assume is the majority's conclusion that the State would suffer an irreparable harm, this would not necessarily warrant a stay. "A stay is not a matter of right, even if irreparable injury might otherwise result. It is instead an exercise of jurisdiction, and the propriety of its issue is dependent upon the circumstances of the particular case." *Nken*, 556 U.S. at 433 (internal quotation marks and citation omitted). The fact that the majority issued an order on March 1, 2024, asking the State to address whether the stay should have built in a "grace period" like the one the State itself furnished in the statute, *see* IND. CODE § 25-1-22-13(d), or whether any other approach would accomplish the statute's end, is also telling. The majority has, perhaps inadvertently, signaled that the stay provides less protection than the affected minors require and less protection than the statute offered—both of which call into question the majority's balancing of harms. But because we have only an unreasoned stay decision and an unreasoned denial of a request to reconsider, we have no way of knowing to what extent the Plaintiff-Appellees' claims of irreparable harm were either lost on the majority or, if not lost, why they carried insufficient weight.

Our *Chicago United Industries* case is instructive once again: "[A] court bears more direct moral responsibility for harms that result from its intervention than from its nonintervention, and more direct responsibility when it intervenes to change the status quo than when it intervenes to preserve it . . . . Moreover, like the doctrine of stare decisis, preserving the status quo serves to protect the settled expectations of the parties. Disrupting the status quo may provide a benefit to one party, but only by

depriving the other party of some right he previously enjoyed. Although the harm and the benefit may be of equivalent magnitude on paper, in reality, deprivation of a thing already possessed is felt more acutely than lack of a benefit only hoped for." 445 F.3d at 945–46 (quoting *O Centro*, 389 F.3d at 1015–16 (McConnell, J., concurring)).

Today's decision on the motion for reconsideration, and the decision weeks ago to issue the stay in the first place, constitute unwarranted departures from the ordinary operation of the Federal Rules of Appellate Procedure, our court's well-developed standards for issuing a stay, and our established practice of providing parties with an explanation for our decisions. "The fact that the issuance of a stay is left to the court's discretion does not mean that no legal standard governs that discretion. A motion to a court's discretion is a motion, not to its inclination, but to its judgment; and its judgment is to be guided by sound legal principles." *Nken*, 556 U.S. at 434 (internal quotation marks and citation omitted). By acting sua sponte (rather than upon a motion) to disrupt the status quo (rather than to maintain it) to Plaintiff-Appellees' irreparable detriment (despite the State's lesser harm) without explanation (despite the gravity of the issue and the greater showing we require before issuing stays), the majority's stay appears to be an inclination governed by no legal standard rather than judgment guided by sound legal principles. The better course of action would have been to address the merits of the appeal promptly, or issue judgment and promise that opinions would follow. Had this route been taken, as Plaintiff-Appellees note in their motion for reconsideration, the parties would have had at least a few weeks' notice that the status quo would be changing in, at the earliest, 21 days when the mandate issued. *See* Fed. R. App. P. 41(b).

I respectfully dissent.