IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

_____

No. 23-2366

K.C., *et al.*,

Plaintiffs/Appellees,

v.

INDIVIDUAL MEMBERS OF THE MEDICAL LICENSING
BOARD OR INDIANA, *et al.*

Defendants/Appellants

_____

On Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division
No. 1:23-cv-00595-JPH-KMB,
The Honorable James P. Hanlon, Judge

---

## Petition for Rehearing En Banc As To Sua Sponte Stay of Preliminary Injunction

---

Kenneth J. Falk
*Counsel of Record*
Gavin M. Rose
Stevie J. Pactor
ACLU of Indiana
1031 E. Washington St.
Indianapolis, IN 46202
317/635-4059
kfalk@aclu-in.org
grose@aclu-in.org
spactor@aclu-in.org

Chase Strangio
Harper Seldin
American Civil Liberties Union
125 Broad Street
New York, N.Y. 10004
212/549-2500
cstrangio@aclu-in.org
hseldin@aclu-in.org

*Counsel for Appellees*

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 23-2366

Short Caption: K.C. et al.. v. Individual Members of the Medical Licensing Board, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

K.C., Nathaniel & Beth Clawson; M.W., Ryan & Lisa Welch; A.M, Emily Morris; M.R., Maria Rivera, Catherine Bast,MD

Mosaic Health & Healing Arts, Inc. (Unredacted disclosure statement filed and sealed pursuant to July 17, 2023 Order)

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

ACLU of Indiana, American Civil Liberties Union

(3)     If the party, amicus or intervenor is a corporation:

     i)     Identify all its parent corporations, if any; and

     None

     ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

     None

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Kenneth J. Falk     Date: September 18, 2023

Attorney's Printed Name: Kenneth J. Falk

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☑    **No** ☐

Address: ACLU of Indiana, 1031 E. Washington St., Indianapolis, IN 46202

Phone Number: 317/635-4059     Fax Number: 317/635-4105

E-Mail Address: kfalk@aclu-in.org

Save As     Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 23-2366

Short Caption: K.C., et al. v. Individual Members of the Medical Licensing Board of Indiana, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

K.C., Nathaniel & Beth Clawson, M.W., Ryan &Lisa Welch, A.M., Emily Morris, M.R., Maria Rivera, Catherine Bast, M.[

and Mosaic Health & Healing Arts, Inc.  Full names of minors included in sealed disclosure statement of Kenneth J. Fa[

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

ACLU of Indiana, American Civil Liberties Union

(3)     If the party, amicus or intervenor is a corporation:

i)     Identify all its parent corporations, if any; and

None

ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

None

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Gavin M. Rose     Date: July 14, 2023

Attorney's Printed Name: Gavin M. Rose

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     Yes [ ]     No [✔]

Address: 1031 E. Washington St.

Indianapolis, IN  46202

Phone Number: 317/635-4059     Fax Number: 317/635-4105

E-Mail Address: grose@aclu-in.org

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2366

Short Caption: K.C., et al. v. Individual Members of the Medical Licensing Board of Indiana, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> [ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

K.C., Nathaniel & Beth Clawson, M.W., Ryan &Lisa Welch, A.M., Emily Morris, M.R., Maria Rivera, Catherine Bast, M.E

and Mosaic Health & Healing Arts, Inc. Full names of minors included in sealed disclosure statement of Kenneth J. Fa

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

ACLU of Indiana, American Civil Liberties Union

(3)    If the party, amicus or intervenor is a corporation:

     i)      Identify all its parent corporations, if any; and

         None

     ii)      list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

         None

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Stevie J. Pactor      Date: July 19, 2023

Attorney's Printed Name: Stevie J. Pactor

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes [ ]    No [✔]

Address: 1031 E. Washington St.

Indianapolis, IN 46202

Phone Number: 317/635-4059      Fax Number: 317/635-4105

E-Mail Address: spactor@aclu-in.org

Save As    Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 23-2366

Short Caption: K.C., et al. v. Individual Members of the Medical Licensing Board of Indiana, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

K.C., Nathaniel & Beth Clawson, M.W., Ryan & Lisa Welch, A.M., Emily Morris, M.R., Maria Rivera, Catherine Bast, &

Mosaic Health & Healing Arts, Inc. Full names of minors included in sealed disclosure statement of Kenneth J. Falk.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

ACLU of Indiana; American Civil Liberties Union

(3)    If the party, amicus or intervenor is a corporation:

i)      Identify all its parent corporations, if any; and

None

ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

None

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Chase Strangio       Date: August 23, 2023

Attorney's Printed Name:  Chase Strangio

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address:  125 Broad Street, New York, NY 10004

Phone Number: 212-549-2500      Fax Number:

E-Mail Address: cstrangio@aclu.org

rev. 12/19 AK

Save As     Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 23-2366

Short Caption: K.C., et al. v. Individual Members of the Medical Licensing Board of Indiana, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

K.C., Nathani & Beth Clawson, M.W., Ryan & Lisa Welch, A.M., Emily Morris, M.R., Maria Rivera, Catherine Bast, &

Mosaic Health & Healing Arts, Inc. Full names of minors included in sealed disclosure statement of Kenneth J. Falk.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

ACLU of Indiana; American Civil Liberties Union.

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

None

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

None

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Harper Seldin    Date: August 29, 2023

Attorney's Printed Name: Harper Seldin

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  Yes ☐  No ☑

Address: 125 Broad Street, New York, NY 10004

Phone Number: 267-615-4686    Fax Number:

E-Mail Address: hseldin@aclu.org

rev. 12/19 AK

# TABLE OF CONTENTS

Statement Regarding Rehearing En Banc ............................................................. 1

Background ................................................................................................ 4

Reasons for Granting Rehearing En Banc ........................................................ 6

    I.    The panels sua sponte order presents an issue of exceptional importance as it causes severe, irreparable harm to Appellees ..... 6

    II.    The panel's sua sponte order conflicts with precedent of this Court and the Supreme Court ................................................................ 11

Conclusion ................................................................................................. 14

Certificate of Compliance ........................................................................... 15

# TABLE OF AUTHORITIES

Cases:

*Boucher v. Sch. Bd. of Sch. Dist. of Greenfield*……………………………………....  13

*Camelot Banquet Rooms, Inc. v. United States Small Bus. Admin.*, 14 F.4th 624 (7th Cir. 2021)……………………………………………………………  3, 12

*Eknes-Tucker v. Governor of Alabama*, 80 F.4th 1205 (11th Cir. 2023), pet. for rh' filed (11th Cir. Sept. 11, 2023)……………………………………………  14

*Eknes-Tucker v. Governor of Alabama,* No. 22-11707 (11th Cir. Nov. 21, 2023).  14

*In re A & F Enterprises, Inc.* II, 742 F.3d 763 (7th Cir. 2014) …………………………  11

*L.W. by & through Williams v. Skrmetti*, 75 F.4th 408……………………………………  14

*Nken v. Holder*, 556 U.S. 418 (2009) ……………………………………………………  3, 10


Statutes:

Indiana Senate Enrolled Act 480 ………………………………………………… *passim*

Indiana Code § 25-1-22-13(a) ……………………………………………………  5, 7

Indiana Code § 25-1-22-13(b) ……………………………………………………  4

Indiana Code § 25-1-22-13(d) ……………………………………………………  5, 7


Court rules:

Federal Rule of Appellate Procedure 35 ……………………………………………  1

Federal Rule of Appellate Procedure 41(b)……………………………………………  2


Regulations

844 Ind. Admin. Code § 5-2-7 ……………………………………………………  10

Other authorities:

AMA Code of Medical Ethics, Opinion 1.2.3, https://code-medical-ethics.
ama-assn.org/ethics-opinions/consultation-referral-second-opinions ................. 10

## STATEMENT REGARDING REHEARING EN BANC

Pursuant to Fed. R. App. P. 35, Appellees respectfully move for rehearing en banc of the panel's February 27, 2024 and March 21, 2024 orders staying the preliminary injunction and order entered by the district court on June 16, 2023. (District Court Dkt. Nos. 67 and 68).

By staying the district court's preliminary injunction and order sua sponte and allowing Senate Enrolled Act ("SEA") 480 to go into effect upon entry of its order, the panel did not allow for briefing on the immediate, irreparable harms that would flow to Appellees and the hundreds of other transgender adolescents and parents across Indiana, who are all suddenly unable to obtain vital care. *See* ECF No. 129 (outlining harms flowing from Court's stay order). It also did not allow for briefing on the immediate, irreparable harms that would flow to Mosaic Health and Healing Arts, Inc. and other medical providers, who not only must immediately cease providing care to their patients but may not even refer their patients to out-of-state providers or cooperate with those providers to ensure the continuity of their patients' care. *See* ECF No. 129-2. Ultimately, the panel decision was contrary to the governing legal standard for stays pending appeal.

The split panel issued its stay sua sponte with no opinion and no reversal of the district court's injunction. The split panel's subsequent two orders again included no reference to the governing legal standard or the panel's reasoning. Had a stay application ever been filed by the Appellants, Appellees and other transgender adolescents and families could have filed a response demonstrating that a stay was

inappropriate and prepared for the possibility that SEA 480 might immediately go into effect. Alternatively, had an opinion and order reversing the district court's preliminary injunction been issued, Appellees and other transgender adolescents and families would have had either 21 days from the issuance of the order or from denial of rehearing for the mandate to issue. *See* Fed. R. App. P. 41(b); ECF No. 130 at 7, Jackson-Akiwumi, J., dissenting (noting the absence of the typical time period to prepare for possible entry of stay). Because the panel circumnavigated those typical procedures, transgender youth, their families, and their medical providers have been scrambling without medical care, and with no notice and no opportunity to meaningfully find alternative treatment options outside of Indiana.

In addition to the procedural irregularities of the split panel's orders, the decision to issue a stay – albeit with no reasoning – is contrary to the controlling legal standards governing stays and should never have issued.

Rehearing en banc of the panel's stay order is within the Court's authority, *Flower Cab Co. v. Petitte*, 685 F.2d 192, 195 (7th Cir. 1982), and is warranted because the panel's order presents an issue of exceptional importance and conflicts with decisions of this Court and the Supreme Court. As shown below:

- The panel's sua sponte stay order and subsequent order denying reconsideration, both issued without any reasoning, present a matter of exceptional importance insofar as they resulted in the immediate, and now sustained, termination of medical treatment that Appellees have been relying on for their health and well-being, punish medical providers for following their

ethical duty to ensure continuity of care for their patients, and force parents to watch their children suffer or uproot their families, all creating severe and irreparable harms;

- The panel's sua sponte decision to stay the district court's preliminary injunction conflicts with well-established precedent of this Court and the Supreme Court. When considering whether to issue a stay, this Court considers the likelihood of success on the merits of the appeal and the threat of irreparable harm absent a stay, but also takes into account "the balance of harms, primarily in terms of the balance of risks of irreparable harm in case of a judicial error, and … the public interest, which refers primarily to the interests of those who are not parties to the suit." *Camelot Banquet Rooms, Inc. v. United States Small Bus. Admin.*, 14 F.4th 624, 628 (7th Cir. 2021); *see also Nken v. Holder*, 556 U.S. 418, 434 (2009) (noting the traditional stay factors include "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."). The split panel's orders provide no reasoning, erroneously suggest that they merely restore the status quo ante, and do not meet the *Nken* standard for issuing a stay pending appeal. Even if the panel determined that Appellants were likely to succeed on the merits of their appeal, that alone is not sufficient to grant a stay, particularly a stay causing

such an immediate and transformational change in the legal paradigm in Indiana. There was no basis to conclude, particularly without the benefit of briefing, that the irreparable harm to Appellees was somehow outweighed by a previously never-identified harm to Appellants and that the public interest was served by a sua sponte stay. Such decision is inconsistent with precedent of this Court and the Supreme Court and warrants lifting the stay.

## BACKGROUND

This is an appeal of the district court's opinion and order (District Court Docket Numbers ["Dkts."] 67 and 68) entering a preliminary injunction against enforcement of Indiana Senate Enrolled Act ("SEA") 480, which bans gender affirming medical care, including pubertal suppression and gender affirming hormone therapy, for transgender adolescents with gender dysphoria and prohibits medical providers from "aiding or abetting" in the provision of such care. The district court found that SEA 480 likely violated the Equal Protection Clause and that the aiding or abetting prohibition in the law, Indiana Code § 25-1-22-13(b), likely violated the First Amendment to the extent that it prohibited "providing patients with information, making referrals to other medical providers, and providing medical records or other information to medical providers." (Dkt. 68). Defendants appealed the district court's order preliminarily enjoining SEA 480 but did not seek a stay of the injunction.

The appeal is fully briefed, and oral argument was presented to a panel of this Court on February 16, 2024. At no time prior to, during, or after oral argument did Appellants request a stay of the district court's injunction. At no time prior to, during,

or after argument were the parties informed that the Court was considering staying the district court's injunction. On February 27, 2024, the panel stayed the lower court's opinion and order in their entirety. The immediate and unforeseen effects of that order, which allowed SEA 480 to go into effect for the first time, were disastrous.

The immediacy of the stay is contrary to SEA 480 itself, which allowed for a six-month grace period for those adolescents currently receiving gender-affirming hormones to taper off such treatment and make other arrangements. *See* Ind. Code § 25-2-22-13(a), (d) (allowing for treatment to continue for a period of six months after the law's effective date on July 1, 2023, terminating on January 1, 2024). Whereas the legislature recognized, at a minimum, that those currently undergoing treatment could not and should not have that treatment immediately cut off, this Court created, without notice or warning, the conditions that the Indiana legislature sought to avoid in passing SEA 480. Subsequent to the issuance of the February 27, 2024 order and after petitioners' first petition for panel reconsideration and rehearing en banc, on March 1, the panel directed the parties to brief whether a "grace period" from the stay was warranted. ECF No. 127. Judge Jackson-Akiwumi dissented from the March 1 order insofar as it did not request full briefing from both parties on whether a stay should issue in the first instance. *Id.*

Since the issuance of the stay, transgender adolescents, their parents, and their medical providers have been living a nightmare. Doctors like Plaintiff-Appellee Dr. Bast have had to call patients to inform them of their sudden loss of medical care, cancel appointments, and effectively cut people off from treatment that had been

improving their symptoms of gender dysphoria. See ECF No. 129-2, Bast Decl. ¶3. As Dr. Bast explained, these were some of the "most difficult conversations" she has ever had in her life. *Id*. at ¶4. Not only must she withhold medical treatment she knows is helping her patients, but also, she cannot even tell parents where to go to continue to receive treatment lawfully for their children.

The district court record details the serious harms of gender dysphoria and the efficacy of the now-banned treatment at alleviating those harms. The record further details the particularly acute impact of cutting off treatment for those who are currently relying on it. In addition to the serious medical harms that will flow to transgender adolescents across Indiana, the panel's stay forces medical providers to abandon their patients with no information about how to continue treatment, and will leave parents without the ability to care for their minor children, forcing them to either watch their children suffer or to relocate their families.

## REASONS FOR GRANTING REHEARING EN BANC

I.     THE PANEL'S SUA SPONTE ORDER PRESENTS AN ISSUE OF EXCEPTIONAL IMPORTANCE AS IT CAUSES SEVERE, IRREPARABLE HARM TO APPELLEES.

The panel's sua sponte order causes severe, irreparable harm to the Appellees and the members of the certified classes they represent because it requires the abrupt termination of ongoing care, prevents the provision of treatment that benefits a serious medical condition, immediately causes a halt to existing treatment protocols with no notice or grace period to make alternate arrangements, and prohibits families

from working with their Indiana physicians to maintain continuity of care out of state.

**Severe, irreparable harm to Appellee Minors and the Minor Patient Class.** The panel's sua sponte stay resulted in the immediate prohibition of, or referral for, all gender affirming medical care for transgender minors in Indiana, even for those who are currently receiving care. Even SEA 480 itself did not require an abrupt cessation of care. *See* Ind. Code § 25-2-22-13(a), (d) (providing for six-month grace period). Immediately ceasing gender affirming hormones "can cause severe physical side effects" (Dkt. 26-2 at 22 ¶ 81), in addition to the harm caused by forcing these patients to continue suffering from the distress caused by gender dysphoria. (Dkt. 58-2 at 9 ¶ 28; Dkt. 58-4 at 4 ¶ 16). If gender dysphoria is left untreated, "it can result in severe anxiety and depression, eating disorders, substance abuse, self-harm, and suicidality," (Dkt. 26-2 at 8 ¶ 35), as well as posttraumatic stress disorder (Dkt. 26-1 at 16 ¶ 57). By definition, those minors who were receiving care as of February 27, 2024, have had a medical provider determine that such care is medically necessary, and "denying gender-affirming medical care to adolescents for whom it is medically indicated puts them at risk of significant harm to their health and well-being." (Dkt. 26-1 at 18 ¶ 61).

For the individual adolescent patients, the harms of the stay are immediate and irreparable. *See* Dist. Ct. Doc. No. 26-4 (Declaration of Nathaniel and Beth Clawson, whose 11 year-old transgender daughter received a puberty blocker a year ago) at ¶18 ("If she is condemned to having to suffer through male puberty and is

denied the ability to be the girl that she truly is, it will be catastrophic."); Dist. Ct. Doc. No. 26-5 (Declaration of Lisa and Ryan Welch, whose 17 year-old transgender son started testosterone about two years ago) at ¶16 ("Before receiving testosterone, we watched our son struggle with gender dysphoria and its negative effects. It is clear that the receipt of testosterone has caused him to be much happier and is allowing him to live as he is, an adolescent boy. Without the testosterone he will revert to experiencing the profound negative effects of gender dysphoria."); Dist. Ct. Doc. No. 26-6 (Declaration of Emily Morris, whose almost 12 year-old transgender daughter has been on puberty blockers since 2021) at ¶17 ("I am afraid to think about what might happen if the puberty blocker were stopped…I believe that this would also cause her to have irreversible depression and might cause her to think again about mutilating herself…"); Dist. Ct. Doc. No. 26-7 (Declaration of Maria Rivera, whose 16 year-old transgender son started testosterone a year ago) at ¶16 ("If he is not allowed to continue receiving the hormone therapy, I am sure that his gender dysphoria will come roaring back as he stops developing male characteristics and develop female ones. This would literally threaten his life.").

Beyond the individual adolescent plaintiffs, there are now hundreds of transgender adolescents in Indiana who cannot receive treatment or even a referral from their doctors as to where to continue the treatment they have come to rely on and that is necessary for their health and wellbeing. In granting Plaintiffs' Motion for Class Certification (Dkt. 116), the district court found, as of April 2023, that Appellee Mosaic treated 72 minor patients who were prescribed puberty blockers

and/or hormone therapy to treat their gender dysphoria. (Dkt. 116 at 3). Those 72 patients are part of a class that even the State did not dispute contained hundreds of members. (*Id.* at 6).

**Severe, irreparable harm to Appellee Parents and the Parent Class.** Due to the stay, Indiana parents of transgender adolescents woke up on February 28 to the news that Indiana law immediately overrode their parental judgment as to the best medical treatment for their minor children. Had the Court informed the parties of its intention to consider a stay prior to issuing its opinion, the Appellee Parents and Parent Class could have attempted to make contingency arrangements for their children's medical care, or at least the Appellees could have demonstrated to the Court the need to build some grace period into any implementation—as, again, SEA 480 itself provided—should the preliminary injunction order be vacated. That grace period is essential to continuity of care given the barriers to obtaining care out of state, including long wait times, insurance, and travel. (*See* Dkt. 58-3 at 12 ¶ 38). However, by issuing the stay without notice and without an opportunity to be heard, the Court has precluded any continuity of care and assured serious injury to those adolescents, as the district court concluded was likely in the event SEA 480 went into effect. (*See* Dkt. 67 at 30-31). Even those families who had contingency plans in the event of this Court's reversal of the preliminary injunction assumed that they would have at least 21 days' notice to prepare for such a drastic change should reversal on the merits occur.

**Severe, irreparable harm to Appellee Providers and the Provider Class.** The stay forced doctors like Dr. Bast and members of the provider class to immediately terminate their patients' treatment, thus violating their ethical duties. According to the State, those doctors must abandon those patients and cannot provide them with referrals out of state for care. This will cause Indiana providers to violate their ethical duties, some imposed by Indiana law, to attempt to secure adequate or continuing care for their patients. *See, e.g.*, 844 Ind. Admin. Code § 5-2-7 (requiring physicians to refer patients to another practitioner "in any case where the referring practitioner does not consider himself/herself qualified to treat the patient"); AMA Code of Medical Ethics, Opinion 1.2.3 - *Consultation, Referral, and Second Opinions* ("Physicians' fiduciary obligation to promote patients' best interest and welfare can include consulting other physicians for advice in care of the patient or referring patients to other professionals to provide care.").[1]

Overnight, the panel's order left Indiana "physicians without any evidence-based treatments for adolescents' gender dysphoria, which, when left untreated, has been linked to dramatic adverse mental health outcomes, including suicidality." (Dkt. 26-3 at 18 ¶ 32).[2] Worse, by allowing SEA 480 to go into effect immediately and with no prior notice, the panel's order left those same physicians without any options for

---

[1] AMA Code of Medical Ethics, Opinion 1.2.3, https://code-medical-ethics.ama-assn.org/ethics-opinions/consultation-referral-second-opinions (last visited Feb, 28, 2024).

[2] The record is unequivocal that there are no evidence-based alternatives to the medical treatment now banned as a result of the panel's sua sponte order. Indeed, counsel for the State admitted during oral argument before the district court that there were no evidence-based alternative treatments for gender dysphoria other than the ones now banned by S.E.A. 480 and taken away from Hoosiers overnight by the split panel's order. (Transcript at 35).

assisting their patients in finding a doctor who could continue to provide that care out of state.

II.    THE PANEL'S SUA SPONTE ORDER CONFLICTS WITH PRECEDENT OF THIS COURT AND THE SUPREME COURT.

This Court and the Supreme Court follow well-established standards for assessing whether to grant a stay of a preliminary injunction pending appeal. *See* ECF No. 130 at 5-6 (Jackson-Akiwumi, J., dissenting). The relevant factors courts consider before granting a stay application include: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009). This Court has likewise explained that a stay pending appeal will consider: "the moving party's likelihood of success on the merits, the irreparable harm that will result to each side if the stay is either granted or denied in error, and whether the public interest favors one side or the other." *In re A & F Enterprises, Inc.* II, 742 F.3d 763, 766 (7th Cir. 2014). The panel's order is contrary to these well-established standards and to this Court's rules and practice and en banc review is warranted.

Under this Court's and Supreme Court precedent, courts must consider the balance of harms and the harm to the public interest before granting a stay. Though the panel's orders included no reasoning, neither the balance of harms nor the public

interest was served by the issuance of a stay.[3] The State presented no argument that it was harmed by the preliminary injunction during the pendency of the appeal. Nor could it. Indeed, all the preliminary injunction did was restore the status quo ante[4] and allow patients, parents, and doctors to continue working together to treat adolescents consistent with medical standards. At no point during the eight months since the district court preliminarily enjoined enforcement of SEA 480 did Appellants argue that they needed emergency relief from that injunction. Indeed, Appellants waited until the last possible day to even file their appeal of the district court's order. (*See* 7th Cir. Dkt. No. 1 [Civil Case Docketed on July 12, 2023]). By contrast, as detailed above, *supra*, Point I, the harms to Appellees that flow from the panel's Order are severe and irreparable. Additionally, this Court specifically considers "the interests of those who are not parties to the suit" when determining the appropriateness of a stay. *Camelot Banquet Rooms, Inc.*, 14 F.4th at 628. Here, there are hundreds of transgender adolescents, parents and medical providers who are members of the classes certified by the district court who were left scrambling in a matter of hours with no prior notice, and remain in crisis weeks later. Diverting from

---

[3] Appellees herein further submit that none of the stay factors were met and the Order is contrary to the controlling standard in its entirety. But given that no reasoning was provided and there was no underlying Motion briefed, Applicants rely on their merits brief on appeal for support of their argument that a stay was improper because Appellants are unlikely to succeed on the merits of their appeal. ECF No. 50.

[4] In its March 21 order, the panel suggested that all the stay did was restore the status quo, but that is wrong for all the reasons outlined in Judge Jackson-Akiwumi's dissent. *See* ECF 130 at 4-5.

normal practice and sua sponte staying the district court's injunction, undermined, rather than served, the public interest.

Further, the Court's Order contravenes the typical stay process, which itself created additional harms to Appellees and to transgender adolescents, their parents, and their medical providers across Indiana. By issuing the stay sua sponte in advance of an opinion on the merits, the panel has, in effect, reversed the district court's preliminary injunction determination without affording Appellees the minimum 21-day period that would exist between a reversal and the issuance of the Mandate. Even if the district court's injunction is ultimately overturned, Appellees have now been forced into the unworkable position of trying to obtain alternative care out of state on an evening's notice, while their covered healthcare providers are prohibited from even engaging in speech to inform or assist them about where and how they may find care. Now, many youth will find themselves without care, some may turn to harmful means of trying to obtain care, and families may be uprooted or separated. What is certain is that as a result of the split panel's Order, hundreds of transgender youth and the parents who love and care for them will needlessly suffer immediate, irreparable harm.

Further, the split panel's stay sua sponte stay order finds no analogue in this or any other court. In other contexts where parties have asked this Court to expedite the issuance of the mandate, the Court still affords parties an opportunity for briefing. *See*, *e.g.*, *Boucher v. Sch. Bd. of Sch. Dist. of Greenfield*, 134 F.3d 821, 829 (7th Cir. 1998) (in reversing preliminary injunction and expediting the mandate,

court afforded parties 7 days to petition for rehearing and stay the issuance of the mandate). The panel's stay is likewise nothing like the stays entered in the Sixth and Eleventh Circuits in cases challenging other bans on gender-affirming care. *See, e.g., L. W. by & through Williams v. Skrmetti*, 73 F.4th 408, 422 (6th Cir. 2023) (staying district court preliminary injunction upon application of Defendants filed within hours of injunction issuing). In *Eknes-Tucker v. Governor of Alabama*, the Eleventh Circuit stayed the district court's preliminary injunction only *after* a panel decision issued, a petition for rehearing was filed, and a subsequent application for a stay of the injunction was filed by the Defendants. *See Eknes-Tucker v. Governor of Alabama*, 80 F.4th 1205, 1210 (11th Cir. 2023), pet. for reh'g filed (11th Cir. Sept. 11, 2023); Motion for Stay of Injunction, No. 22-11707 (11th Cir. Nov. 21, 2023). Unlike in those cases, the split panel here acted upon no application, with no warning, and transformed the material realities for transgender adolescents, their families and their medical providers in an instant.

## <u>CONCLUSION</u>

The Court should grant rehearing en banc to immediately lift the stay entered by the panel and allow for the appellate process to continue.

Kenneth J. Falk
*Counsel of Record*
Gavin M. Rose
Stevie J. Pactor
ACLU of Indiana
1031 E. Washington St.
Indianapolis, IN 46202

317/635-4059
fax: 317/635-4105
kfalk@aclu-in.org
grose@aclu-in.org
spactor@aclu-in.org

Chase Strangio
Harper Seldin
American Civil Liberties Union
125 Broad Street
New York, NY 10004
212/549-2500
cstrangio@aclu.org
hseldin@aclu.org

Attorneys for Appellees

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limitation of Circuit Rule 32(c) because this document contains 3,818 words, excluding the parts exempted by Fed. R. App. P. 32(f).

2.      This document complies with the type-face and type-style requirements of Circuit Rule 27(d)(E) because this document has prepared using Microsoft Word in Century Schoolbook font with the text in 12-point font and the footnotes in 11-point font.

Kenneth J. Falk
Attorney at Law