# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

K.C., ET AL.,

*Plaintiffs-Appellees*,

v.

INDIVIDUAL MEMBERS OF THE MEDICAL
LICENSING BOARD OF INDIANA, ET AL.,

*Defendants-Appellants.*

On Appeal from the United States District Court for the
Southern District of Indiana, No. 1:23-cv-00595-JPH-KMB,
The Honorable James P. Hanlon, Judge

## RESPONSE TO PLAINTIFFS-APPELLEES' MOTION FOR
## EN BANC RECONSIDERATION

Office of the Attorney General
IGC South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204
(317) 232-0709
James.Barta@atg.in.gov

THEODORE E. ROKITA
Attorney General of Indiana

JAMES A. BARTA
Solicitor General

*Counsel for Defendants-Appellants*

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................... 1

BACKGROUND............................................................................................ 2

I.    Factual Background.............................................................................. 2

II.    Procedural Background ....................................................................... 4

    A.    District court proceedings ......................................................... 4

    B.    Appellate proceedings .............................................................. 5

ARGUMENT ................................................................................................ 6

I.    The Stay Accords with Traditional Stay Criteria ............................... 7

    A.    Plaintiffs-Appellees ignore the most important consideration—success on the merits.................................... 7

    B.    The stay is necessary to prevent irreparable harm to the State, third parties, and the public interest ...................................... 8

    C.    No alleged harms to Plaintiffs-Appellees undermine the stay............. 12

II.    The Stay Accords with Applicable Procedures ............................................. 15

CONCLUSION................................................................................................ 17

# TABLE OF AUTHORITIES

<small>CASES</small>

*In re A & F Enters., Inc. II,*
  742 F.3d 763 (7th Cir. 2014) .......................................... 7, 8, 16

*Abbott v. Perez,*
  585 U.S. 579 (2018) ............................................................ 8

*AM Gen. Corp. v. DaimlerChrysler Corp.,*
  311 F.3d 796 (7th Cir. 2002) ............................................. 8

*Barnett v. Raoul,*
  No. 23-1825 (7th Cir. May 4, 2023) ................................ 17

*Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin.,*
  14 F.4th 624 (7th Cir. 2021) ........................................... 8, 9

*Cannon v. Armstrong Containers Inc.,*
  92 F.4th 688 (7th Cir. 2024) ............................................. 6

*Deering Milliken, Inc. v. FTC,*
  647 F.2d 1124 (D.C. Cir. 1978) ....................................... 15

*Easley v. Reuss,*
  532 F.3d 592 (7th Cir. 2008) ............................................. 6

*EEOC v. Ind. Bell Tel. Co.,*
  256 F.3d 516 (7th Cir. 2001) ............................................. 6

*Eknes-Tucker v. Governor of Ala.,*
  80 F.4th 1205 (11th Cir. 2023) .................................. 1, 8, 11

*Eknes-Tucker v. Governor of Ala.,*
  No. 22-11707 (11th Cir. Jan. 11, 2024) ....................... 11, 15

*Frank v. Walker,*
  766 F.3d 755 (7th Cir. 2014) ........................................... 15

*Frank v. Walker,*
  769 F.3d 494 (7th Cir. 2014) ........................................... 7, 8

*Gonzales v. Carhart,*
  550 U.S. 124 (2007) ................................................ 1, 13, 15

<small>CASES [CONT'D]</small>

*HM Holdings, Inc. v. Rankin*,
   72 F.3d 562 (7th Cir. 1995) ..................................................... 6

*Ill. Republican Party v. Pritzker*,
   973 F.3d 760 (7th Cir. 2020) ................................................... 7

*L.W. ex rel. Skrmetti*,
   --- F.4th ---, 2023 WL 6321688 (6th Cir. 2023) ................... 11

*L.W. by Williams v. Skrmetti*,
   73 F.4th 408 (6th Cir. 2023) .................................................. 11

*L.W. by Williams v. Skrmetti*,
   83 F.4th 460 (6th Cir. 2023) ........................................... *passim*

*Maryland v. King*,
   567 U.S. 1301 (2012) ............................................................... 9

*Mitchell v. JCG Indus., Inc.*,
   753 F.3d 695 (7th Cir. 2014) ................................................... 6

*Nat. Res. Def. Council, Inc. v. Winter*,
   518 F.3d 704 (9th Cir. 2008) ................................................. 15

*New York v. Ferber*,
   458 U.S. 747 (1982) ................................................................. 9

*Nken v. Holder*,
   556 U.S. 418 (2009) ........................................................... 7, 16

*Planned Parenthood of Blue Ridge v. Camblos*,
   116 F.3d 707 (4th Cir. 1997) ........................................... 16, 17

*In re StarNet, Inc.*,
   355 F.3d 634 (7th Cir. 2004) ................................................. 15

*Stone v. Signode Indus. Grp. LLC*,
   777 F. App'x 170 (7th Cir. 2019) .......................................... 15

*United States v. Rosciano*,
   499 F.2d 173, 174 (7th Cir. 1974) ........................................... 6

*Wallirich v. Samsung Elecs. Am., Inc.*,
   No. 23-2842 (7th Cir. Nov. 8, 2023) ..................................... 17

Statutes, Rules, and Regulations

Fed. R. App. P. 2(a) ........................................................................ 16

Fed. R. App. P. 8(a)(1)(C) .............................................................. 15

Fed. R. App. P. 8(a)(2) ................................................................... 15

Ind. Code § 25-1-22-4 ...................................................................... 3

Ind. Code § 25-1-22-5(a) ............................................................. 2, 3

Ind. Code § 25-1-22-5(a)(2) ........................................................... 14

Ind. Code § 25-1-22-5(b) .................................................................. 4

Ind. Code § 25-1-22-5(b)(3) ........................................................... 14

Ind. Code § 25-1-22-5(b)(4) ........................................................... 14

Ind. Code § 25-1-22-5(b)(5) ........................................................... 12

Ind. Code § 25-1-22-5(b) .................................................................. 4

Ind. Code § 25-1-22-11 ..................................................................... 3

Ind. Code § 25-1-22-12 ..................................................................... 2

Ind. Code § 25-1-22-13(a) ......................................................... 2, 12

Ind. Code § 25-1-22-13(b) ................................................................. 2

Ind. Code § 25-1-22-13(c) ................................................................. 4

Ind. Code § 25-1-22-13(c)(3) .......................................................... 14

Ind. Code § 25-1-22-13(d) ..................................................... 4, 13, 14

Ind. Code § 25-22.5-2-7 .................................................................. 14

844 Ind. Admin. Code 5-1-3 ........................................................... 14

Other Authorities

*Gender Health Program*, Riley Children's Health, Indiana University
    Health, https://www.rileychildrens.org/departments/gender-health-
    program (last visited Apr. 8, 2024) ....................................... 12

**INTRODUCTION**

Plaintiffs-Appellees seek en banc consideration of a stay for a second time for substantially the same reasons as before. En banc review is unwarranted.

This appeal concerns a preliminary injunction prohibiting enforcement of an Indiana law, S.E.A. 480, critical to preserving the "safety and well-being of [Indiana] children." *Eknes-Tucker v. Gov. of Ala.*, 80 F.4th 1205, 1231 (11th Cir. 2023). S.E.A. 480 prohibits medical practitioners from providing gender-transition procedures—procedures to remove or replace endogenous sex characteristics through surgeries or medications—to minors 17 and younger. It, however, does not ban all treatments for gender dysphoria. S.E.A. 480 only restricts potentially irreversible interventions so new and untested that their "safety and effectiveness" remains "uncertain and unsettled." SA23; *see L.W. by Williams v. Skrmetti*, 83 F.4th 460, 488 (6th Cir. 2023) (procedures are "unsettled, developing, [and] in truth still experimental"). It represents a traditional exercise of state authority to regulate medicine where the underlying science is "uncertain[]" and evolving. *Gonzales v. Carhart*, 550 U.S. 124, 163 (2007).

After full merits briefing and oral argument, a panel of this Court stayed the injunction—and then issued a second order maintaining the stay after a round of motions practice. Plaintiffs-Appellees primarily argue that the orders warrant the full Court's consideration because (in their view) S.E.A. 480 harms them. But that assertion does not distinguish this case from any other in which a preliminary injunction is granted and later stayed. And as the panel majority plainly understood after two sets of briefing and oral argument, there is another side to consider. As even the

1

district court conceded, gender-transition procedures for minors are risky, unproven, and potentially irreversible. They are well within the State's authority to regulate. Tellingly, Plaintiffs-Appellees do not even attempt to address the underlying merits in their motion, even though that is the most important factor governing stays.

Plaintiffs-Appellees are also wrong to suggest that the stay was procedurally improper. They cite no rule or practice that prohibits a panel from staying an injunction sua sponte after argument, and as the panel majority noted, its stay accords with past practice. Nor was the panel majority required to explain its reasoning more than it did. Stays regularly issue with no or very limited explanation. That the majority disagreed with Plaintiffs-Appellees' view regarding the priority of a stay does not transform the panel's brief, non-precedential orders into rulings warranting en banc consideration, especially where an opinion on the merits is forthcoming.

## BACKGROUND

### I. Factual Background

S.E.A. 480 generally prohibits medical practitioners from "knowingly provid[ing]," or aiding or abetting the provision of, "gender transition procedures to a minor." Ind. Code § 25-1-22-13(a), (b). "[G]ender transition procedures" are ones that "seek[] to" "(1) alter or remove physical or anatomical characteristics or features that are typical for the individual's sex" or "(2) instill or create physiological or anatomical characteristics that resemble a sex different from the individual's sex." § 25-1-22-5(a). "Sex" refers to "the biological state of being male or female, based on the individual's sex organs, chromosomes, and endogenous hormone profiles." § 25-1-22-12.

As defined, gender-transition procedures include using GnRH analogues, also called puberty blockers, to prevent minors from undergoing puberty at a normal age and developing endogenous sex characteristics (*e.g.*, facial hair in natal males and breasts in natal females). *See* Ind. Code §§ 25-1-22-5(a), 25-1-22-11; Dkt. 48-2 at 14–15, 33–34 (Hruz Decl. ¶¶ 25, 59); Dkt. 26-2 at 13–15 (Shumer Decl. ¶¶ 54, 57–58). GnRH analogues are drugs approved by the FDA for central precocious puberty, a rare disorder in which children undergo puberty too early. Dkt. 48-2 at 20–22, 24 (Hruz Decl. ¶¶ 36–37, 39, 43). GnRH analogues are not FDA approved for gender dysphoria, Dkt. 48-4 at 18 (Weiss Decl. ¶ 86), a psychiatric condition marked by "clinically significant distress" with one's sex, Dkt. 49-4 at 7–8 (DSM-5 TR 3–4).

Gender-transition procedures also include hormones used to instill sex characteristics that a minor would not endogenously develop. *See* Ind. Code §§ 25-1-22-4, 25-1-22-5(a). Naturally, males produce testosterone as their principal sex hormone while females produce estrogen as their principal sex hormone. Dkt. 48-4 at 23 (Weiss Decl. ¶¶ 107–08); Dkt. 48-2 at 17 (Hruz Decl. ¶ 29). This difference contributes to males and females developing different anatomical and physical characteristics. Dkt. 48-2 at 16–20 (Hruz Decl. ¶¶ 27–34). When cross-sex hormones are prescribed for gender dysphoria, physicians give females doses of testosterone 20–40 times higher than their normal levels to induce typical male characteristics, such as lower voice and facial hair, and give males doses of estrogen about 5 times higher than their normal levels to induce typical female characteristics, such as breasts, female fat

distribution, and softer skin.  Dkt. 48-4 at 23 (Weiss Decl. ¶¶ 107–08); Dkt. 48-2 at 39–40, 42 (Hruz Decl. ¶¶ 68, 73). This use of hormones is not FDA approved either.

Notwithstanding S.E.A. 480's general prohibition on gender-transition procedures for minors, it permits (1) services for "a disorder or condition of sexual development," (2) services for a "physical disorder, physical injury, or physical illness," (3) services for "any infection, injury, disease, or disorder" attributable to gender-transition procedures, and (4) "[m]ental health or social services." Ind. Code §§ 25-1-22-5(b), 25-1-22-13(c). S.E.A. 480 also permitted practitioners to "continue to prescribe to an individual, who was taking a gender transition hormone therapy on June 30, 2023, as part of a gender transition procedure, gender transition hormone therapy until December 31, 2023." § 25-1-22-13(d). S.E.A. 480, however, did not delay the effective date of any other provision, including its aiding-and-abetting provision.

## II.    Procedural Background

In April 2023, Plaintiffs-Appellees filed a complaint alleging (among other things) that S.E.A. 480 violates equal protection and the First Amendment. Dkt. 1 at 42–45 (¶¶ 212–23). They sought a preliminary injunction. Dkt. 9.

### A.    District court proceedings

The district court preliminarily enjoined enforcement of S.E.A. 480's prohibitions on providing puberty blockers and hormones to minors for gender transitions, concluding plaintiffs had "some likelihood of success" on their equal-protection claim. SA2. The court, however, conceded that "important reasons underl[ie]" S.E.A. 480. SA1–SA2. Not only do gender-transition procedures carry numerous risks, the court

observed, but "high-quality medical research" is "exceptionally limited" and "long term effects" are "currently unknown"—so much so that "the safety and effectiveness of puberty blockers and hormone therapy is uncertain and unsettled." SA22–SA23 (cleaned up). The court nevertheless enjoined S.E.A. 480 on the theory that it was overbroad, citing a proponent's testimony that "some minors" benefit from gender-transition procedures and that some European authorities have permitted "limited" use of them in "'formal research'" and "'clinical trials.'" SA26–SA27, SA30.

The district court also enjoined enforcement of S.E.A. 480's prohibition on aiding and abetting gender-transition procedures for minors to the extent it applies "to providing patients with information, making referrals to other medical providers, or providing medical records and other information to medical providers." SA35. It ruled that applying S.E.A. 480 to these actions would violate the First Amendment, declining to consider whether the aiding-and-abetting provision prohibited only conduct "incidental to separate, prohibited conduct." SA28–SA29.

### B.  Appellate proceedings

This appeal of the preliminary injunction followed. After briefing and oral argument, a panel of the Court stayed the preliminary injunction. 7th Cir. Doc. 124 at 1–2. Judge Jackson-Akiwumi dissented. 7th Cir. Doc. 127 at 2. Plaintiffs-Appellees sought reconsideration of the stay and en banc consideration. 7th Cir. Doc. 125.

On March 21, 2024, the Court denied Plaintiffs-Appellees' request. 7th Cir. Doc. 130. Citing the standards for a preliminary injunction and stay, the panel majority explained that the "stay allows us to consider the state law without altering

Indiana's ability to regulate the practice of medicine through a duly enacted law." *Id.* at 2. Judge Jackson-Akiwumi dissented. *Id.*

This second request for en banc consideration followed, which was docketed as a motion. 7th Cir. Doc. 134.

## ARGUMENT

En banc consideration of the panel's orders regarding a stay is unwarranted. As Federal Rule of Appellate Procedure 35 reflects, the standards for en banc consideration are "'strict.'" *Cannon v. Armstrong Containers Inc.*, 92 F.4th 688, 714 n.12 (7th Cir. 2024) (quoting *HM Holdings, Inc. v. Rankin*, 72 F.3d 562, 562 (7th Cir. 1995)). The "'function of en banc hearings is not to review alleged errors,'" *HM Holdings*, 72 F.3d at 563 (quoting *United States v. Rosciano*, 499 F.2d 173, 174 (7th Cir. 1974)), "even in cases that particularly agitate judges," *EEOC v. Ind. Bell Tel. Co.*, 256 F.3d 516, 529 (7th Cir. 2001) (en banc) (Posner, J., concurring). "Otherwise every case in which the panel was divided could provoke" a request for en banc consideration, consuming the full Court's time and resources. *Mitchell v. JCG Indus., Inc.*, 753 F.3d 695, 699 (7th Cir. 2014) (Posner, J., concurring in denial of rehearing en banc). Instead, en banc proceedings "are designed to address issues that affect the integrity of the circuit's case law (intra-circuit conflicts) and the development of the law (questions of exceptional importance)." *Easley v. Reuss*, 532 F.3d 592, 594 (7th Cir. 2008).

The stay and order denying reconsideration of the stay do not meet these standards. Those short, non-precedential orders do not announce new principles of law or set precedent. Nor do they conflict with any Supreme Court or circuit

precedent. As the majority perceived after full merits briefing, oral argument, and a round of motions practice on the stay, the traditional standard for a stay is satisfied here. And no authority prohibits a panel from staying an injunction after oral argument if it deems that standard is met. There is no reason for the full Court to invest resources in reviewing all the materials the panel considered in issuing a stay—full merits briefing, oral argument, and a round of motions practice, *see* 7th Cir. Doc. 124 at 1; 7th Cir. Doc. 130 at 1—before the panel issues its forthcoming opinion.

## I.    The Stay Accords with Traditional Stay Criteria

Plaintiffs-Appellees cannot show that the stay conflicts with the traditional standard for a stay. *Contra* Mot. 3, 24. "The standard for granting a stay pending appeal mirrors that for granting a preliminary injunction." *In re A & F Enters., Inc. II*, 742 F.3d 763, 766 (7th Cir. 2014). It requires consideration of likelihood of success, the harm that will result to each side, and the public interest. *See Nken v. Holder*, 556 U.S. 418, 426 (2009). The panel majority—which cited the canonical cases on injunctions and stays—plainly understood the relevant considerations and thought they warranted a stay here. *See* 7th Cir. Doc. 130 at 2. That Plaintiffs-Appellees disagree with the majority does not establish the existence of a conflict.

### A.    Plaintiffs-Appellees ignore the most important consideration—success on the merits

Plaintiffs-Appellees do not address the "first and most important question" in evaluating a stay—and for that matter, the underlying preliminary injunction—the parties' chances on the merits. *Frank v. Walker*, 769 F.3d 494, 495–96 (7th Cir. 2014); *see Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762–63 (7th Cir. 2020). That

oversight is critical: The stronger the State's chances of success, the less significant other stay factors are. *See A & F Enters.*, 742 F.3d at 766. A preliminary injunction cannot be maintained if the party that obtained it has "no likelihood of success." *AM Gen. Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 830 (7th Cir. 2002).

Plaintiffs-Appellees' one-sentence, footnoted assertion that the State is "unlikely to succeed on the merits," Mot. 12 n.3, is difficult to take seriously. This is not a case in which a stay issued after limited briefing on a tight timeline that afforded scant opportunity for deliberation. The stay issued after full merits briefing and oral argument. *See* 7th Cir. Doc. 124 at 1. Another round of briefing preceded the denial of reconsideration. *See* 7th Cir. Doc. 130 at 1. And the majority's assessment is consistent with thorough opinions from the Sixth and Eleventh Circuits upholding statutes similar to S.E.A. 480. *See L.W. by Williams v. Skrmetti*, 83 F.4th 460 (6th Cir. 2023); *Eknes-Tucker v. Governor of Ala.*, 80 F.4th 1205 (11th Cir. 2023).

## B. The stay is necessary to prevent irreparable harm to the State, third parties, and the public interest

Other factors favor a stay as well. Contrary to Plaintiffs-Appellees' assertion, *see* Mot. 11–12, the State presented ample evidence that the injunction irreparably harms the State, third parties, and the public with every day that passes, Opening Br. at 49–51; Reply at 24–26. Most obviously, the injunction "inflicts irreparable harm on the State" by preventing "enforc[ement]" of a "duly enacted" statute. *Abbott v. Perez*, 585 U.S. 579, 602 n.17 (2018). As this Court has recognized, there is a strong "public interest in using laws enacted through the democratic process." *Frank*, 769 F.3d at 496; *see Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin.*, 14 F.4th

624, 634 (7th Cir. 2021). "'[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.'" *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers). As the panel majority perceived, a stay mitigates that harm. *See* 7th Cir. Doc. 130 at 2.

No less important, a stay prevents irreparable harm to the State's—and the public's—interest in "safeguarding the physical and psychological well-being" of "minor[s]." *New York v. Ferber*, 458 U.S. 747, 756–57 (1982). As the district court observed, the "safety and effectiveness of puberty blockers and hormone therapy is uncertain and unsettled." SA23. Children face real harm from these procedures—including risks of damaged bones, stroke, and infertility. SA22–SA23; *see* Dkt. 48-2 at 29–30, 35–38, 45–46 (Hruz Decl. ¶¶ 51–52, 54, 61–66, 79); Dkt. 48-4 at 20–21 (Weiss Decl. ¶¶ 87, 92, 96); Dkt. 49-9 at 7 (COHERE Review 6); Dkt. 49-10 at 13 (Swedish Review 12). Even proponents concede that the procedures carry risks for "bone mineralization," "compromised fertility," and "unknown effects on brain development." Dkt. 49-1 at 15 (Endocrine Society 3882); *see* Dkt. 49-3 at 60, 64, 68–69 (WPATH SOC-8 S57, S61, S65–S66). And the irreversibility of changes adds to the risk. All sides agree that cross-sex hormones cause a variety of "permanent" changes to minors' bodies. Dkt. 48-11 at 18 (Turban Dep. 61:6–15); *see* Dkt. 49-1 at 16, 20 (Endocrine Society 3883, 3887); Dkt. 49-3 at 121–22 (WPATH SOC-8 at S118–19).

Meanwhile, no controlled trials assess the safety of these relatively new procedures for minors. As the district court summarized, "high-quality medical research" on using GnRH analogues to "delay puberty past a typical age is exceptionally

limited." SA22–23; *see* Dkt. 49-5 at 13–15 (NICE GnRH Review 12–14); Dkt. 49-9 at 9 (COHERE Review 8); Dkt. 49-10 at 13 (Swedish Review 12). And the "'long term effect[s]'" of "cross-sex hormones for gender transitions are 'currently unknown.'" SA23; *see* Dkt. 49-6 at 14–15 (NICE Hormones Review 13–14); Dkt. 49-10 at 14 (Swedish Review 13). "Indeed, the consensus from all sides is that more research is needed to explore these risks." SA23; *see* Dkt. 49-1 at 14, 16 (Endocrine Society 3881, 3883) (rating research as "low" or "very low" quality); Dkt. 49-3 at 68 (WPATH SOC-8 S65) (noting "limited data" on "long-term physical, psychological, and neurodevelopmental outcomes in youth").

There is no reliable evidence of benefit to minors either. Dkt. 48-1 at 28, 30 (Cantor Decl. ¶¶ 44, 52). As several independent reviews have observed, what little research exists is beset by severe "methodological weaknesses." Dkt. 49-10 at 10–11 (Swedish Review 9–10); *see* Dkt. 49-5 at 41–42, 45 (NICE GnRH Review 40–41, 44); Dkt. 49-6 at 15, 48, 51 (NICE Hormone Review 14, 47, 50). Multiple systematic reviews of the scientific literature have thus concluded that the "[l]ong-term effects" of gender-transition procedures on both physical and mental health are "unknown." Dkt. 49-10 at 13–14 (Swedish Review 12–13); *see* Dkt. 48-1 at 39 (Cantor Decl. ¶ 74) ("there is great uncertainty about the effects" (quoting Brignardello-Petersen & Wiercioch 2022)); Dkt. 48-1 at 44 (Cantor Decl. ¶ 83) ("We found insufficient evidence to determine the efficacy or safety" (quoting Haupt 2020)); Dkt. 48-1 at 21 (Cantor Decl. ¶ 30) (Norway's 2023 review deemed the interventions "experimental").

And even if one believes that the anecdotal experiences cited by the district court suggest that "some minors" benefit from gender-transition procedures, SA30, no one can know which minors those are. All studies of prepubertal children report that up to 88% will no longer identify with the opposite gender by adolescence. Dkt. 48-1 at 59 (Cantor Decl. ¶ 115). And although Plaintiffs-Appellees dispute whether these numbers hold true for older children, they concede that adolescents' gender identity can "change[] over time." Dkt. 48-8 at 13 (Bast Dep. 44:13–20); *see* Dkt. 26-2 at 6 (Shumer Decl. ¶ 28). It is thus impossible to know which minors will come to regret irreversible interventions, for "[w]ith current knowledge, we cannot predict the psychosexual outcome for any specific child." Dkt. 49-1 at 9 (Endocrine Society 3876).

The stay thus not only prevents irreparable harm to the State's interest in enforcing its laws, but also to its interest in protecting developing minors from unproven, risky, and potentially irreversible interventions. *See L.W.*, 83 F.4th at 491 (staying injunction); *Eknes-Tucker*, 80 F.4th at 1231 (vacating injunction). True, the State may not have sought emergency relief from the injunction. *See* Mot. 12. But that does not erase the harm the injunction inflicts on the State, Indiana children, or the public. The panel's stay is consistent with stays by other courts. *See L.W. by Williams v. Skrmetti*, 73 F.4th 408 (6th Cir. 2023) (staying preliminary injunction pending appeal); Order, *Eknes-Tucker v. Governor of Ala.*, No. 22-11707 (11th Cir. Jan. 11, 2024) (staying injunction after decision while rehearing petitions were pending).

**C.      No alleged harms to Plaintiffs-Appellees undermine the stay**

No other considerations cut against a stay—much less, so strongly that the equities alone justify en banc consideration. The stay is not causing harm to minors by preventing access to gender-transition procedures precisely because the procedures' "safety and effectiveness" is "unsettled and uncertain." SA23; *see* pp. 9–10, *supra*. Indeed, one study correlates cross-sex hormones with increased risk of suicide among gender-dysphoric youth. Dkt. 48-1 at 72–73 (Cantor Decl. ¶¶ 146–150).

Nor does a stay require minors with gender dysphoria to go "untreated." Mot. 7. "[N]o one doubts" that these minors should receive "psychological and related care." *L.W.*, 83 F.4th at 491. S.E.A. 480 authorizes social support and mental-health care for minors with gender dysphoria, Ind. Code §§ 25-1-22-5(b)(5), 25-1-22-13(a), which Indiana providers have continued to offer since the stay issued, *see, e.g.*, *Gender Health Program*, Riley Children's Health, Indiana University Health, https://www.rileychildrens.org/departments/gender-health-program (last visited Apr. 8, 2024). The only interventions for gender dysphoria in minors that S.E.A. 480 bans are risky, irreversible interventions that lack reliable supporting evidence.

The non-invasive psychological treatments for gender dysphoria that S.E.A. 480 permits cannot be dismissed offhand. *Contra* Mot. 9–10 & n.2. Psychosocial support and psychotherapy have been used in treating gender-dysphoric minors for years, with articles reporting beneficial results; indeed, reviews observe that any purported benefits from medical interventions could be attributable to psychological interventions. *See* Dkt. 48-1 at 83–89 (Cantor Decl. ¶¶ 186–99); Dkt. 49-10 at 5

(Swedish Review 4). Several European authorities now "endorse psychotherapy as the treatment of choice for minors." Dkt. 48-1 at 14 (Cantor Decl. ¶ 16). And even Plaintiffs-Appellees' witnesses concede that "psychotherapy" is "very valuable for a lot of people" with gender dysphoria. Dkt. 48-9 at 22 (Karasic Dep. 76:18–24); *see* Dkt. 48-11 at 59–60 (Turban Dep. 228:16–229:1); Dkt. 48-8 at 21 (Bast Dep. 75:9–10).

Plaintiffs-Appellees still insist mental-health interventions for gender dysphoria are not "evidence-based." Mot. 10 & n.2. Whatever is meant by that, gender-transition procedures cannot claim to be "evidence-based" either. Multiple systematic reviews—which represent the apex of medical knowledge—have concluded that the safety and purported effectiveness of using GnRH analogues and hormones for gender dysphoria in minors is "unknown." SA23; *see* pp. 9–10, *supra*. And so Indiana "may reasonably exercise caution," opting for less-invasive approaches over riskier approaches with "irreversible" consequences. *L.W.*, 83 F.4th at 477. The Constitution gives States "wide discretion" to make these cost-benefit calls in areas fraught with "medical and scientific uncertainty." *Gonzales v. Carhart*, 550 U.S. 124, 163 (2007).

Contrary to Plaintiffs-Appellees' assertion, Mot. 7, S.E.A. 480 nowhere suggests that providers should be permitted to continue gender-transition procedures or refer minors for them elsewhere. To remove any doubt that physicians could safely end gender-transition procedures by titrating down hormones, S.E.A. 480 permitted practitioners to "continue to prescribe to an individual, who was taking a gender transition hormone therapy on June 30, 2023, as part of a gender transition procedure, gender transition hormone therapy until December 31, 2023." Ind. Code § 25-1-22-

13(d). But S.E.A. 480 did not delay the implementation of any other prohibition, including prohibitions against prescribing GnRH analogues, surgeries, and aiding and abetting transitioning procedures. The statute cannot be read to endorse the continuation of cross-sex hormones beyond what is necessary to end the procedure.

And while one of the statute's safe harbors for providers seeking to end hormones treatments has expired, others remain. S.E.A. 480 only prohibits procedures that "seek[] to" (1) "alter or remove physical or anatomical characteristics or features that are typical for the individual's sex" or (2) "instill or create physiological or anatomical characteristics that resemble a sex different from that individual's sex." Ind. Code § 25-1-22-5(a)(2). S.E.A. 480 thus does not prevent providers from titrating down hormones as necessary to safely *end* gender-transition procedures. Indeed, for the avoidance of doubt, S.E.A. 480 expressly permits the "treatment of any infection, injury, disease, or disorder that has been caused by or exacerbated by . . . gender transition procedures." §§ 25-1-22-5(b)(3), 25-1-22-13(c)(3); *see* § 25-1-22-5(b)(4).

Plaintiffs-Appellees identify no distinct harms to parents or providers. *Contra* Mot. 9–10. All alleged harms to those groups wrongly presume that gender-transition procedures for minors are safe, that they are effective, and that no alternative exists. Besides, Plaintiffs-Appellees cite no authority supporting their suggestion that doctors have "ethical duties" to ignore medical regulations. *Id.* at 10. In fact, the Indiana regulations they invoke in discussing ethics, *see id.*, require providers to follow "standards of conduct and practice established by statute." 844 Ind. Admin. Code 5-1-3; *see* Ind. Code § 25-22.5-2-7. This requirement reflects lawmakers' "significant

role" in "regulating the medical profession" and determining what its "'ethics'" should be. *Gonzales*, 550 U.S. at 157. The majority had ample basis for issuing a stay.

## II. The Stay Accords with Applicable Procedures

The stay was procedurally proper as well. Nothing in the Federal Rules of Appellate Procedure, this Court's rules and operating procedures, or this Court's practice bars a panel from issuing a sua sponte stay after oral argument but before an opinion. This Court and others have issued stays in similar circumstances before. *See, e.g.*, *Frank v. Walker*, 766 F.3d 755, 756 (7th Cir. 2014) (issuing stay after oral argument); *In re StarNet, Inc.*, 355 F.3d 634, 636 (7th Cir. 2004) (issuing stay sua sponte after oral argument despite denying a prior stay motion); *Eknes-Tucker v. Governor of Ala.*, No. 22-11707 (11th Cir. Jan. 11, 2024) (staying injunction after decision while rehearing petitions were pending); *Nat. Res. Def. Council, Inc. v. Winter*, 518 F.3d 704, 705 (9th Cir. 2008) (affirming injunction but partially and temporarily staying it sua sponte); *Deering Milliken, Inc. v. FTC*, 647 F.2d 1124, 1126, 1129 (D.C. Cir. 1978) (staying orders sua sponte); *cf. Stone v. Signode Indus. Grp. LLC*, 777 F. App'x 170 (7th Cir. 2019) (vacating stay of injunction sua sponte after oral argument).

Plaintiffs-Appellees identify no contrary authority. Instead, they emphasize that the stay afforded them less time to "prepare[] for the possibility that SEA 480 might immediately go into effect" than an opinion and final judgment. Mot. 1–2; *see id.* at 13. That constitutes an objection to the very concept of stay. Stays are designed to "suspend[]" or "modify[]" an injunction "while an appeal is pending." Fed. R. App. P. 8(a)(1)(C); *see* Fed. R. App. P. 8(a)(2). This feature of stays allows the Court to

"minimize the costs of error" from erroneously issued injunctions. *A & F Enters.*, 742 F.3d at 766. A rule prohibiting stays "in advance of an opinion on the merits," Mot. 13, would multiply the costs of error by prolonging an injunction even after it becomes transparent that the injunction should never have issued.

That the stay issued sua sponte does not change the analysis. The federal rules authorize a panel to act on its own motion to "expedite its decision or for other good cause." Fed. R. App. P. 2(a). So it was appropriate for the panel to issue a stay to minimize the injury to the State, Indiana children, and the public. Plaintiffs-Appellees, moreover, cannot contend that they lacked an opportunity to be heard on considerations relevant to a stay. The panel entered a stay only after considering briefs and oral argument addressing the same factors that this Court considers in granting a stay—the parties' chances of success on the merits, the harms to both sides, and the public interest—and then considered another round of briefing. *See A & F Enters.*, 742 F.3d at 766.

Nor can delay of S.E.A. 480 be justified on the theory that the panel's stay constitutes a sudden interruption of the "status quo." Mot. 3, 12. The preliminary injunction Plaintiffs-Appellees received was only a preliminary form of relief, defeasible by a stay, reversal on appeal, or final judgment. And it did not establish a new baseline. Rather, the district court's injunction "'alter[ed] the legal status quo" while the panel's stay prevents "'judicial alteration'" of it. *Nken v. Holder*, 556 U.S. 418, 429 (2009). "[T]he status quo is that which the People have wrought, not that which unaccountable federal judges impose upon them." *Planned Parenthood of Blue Ridge v.*

*Camblos*, 116 F.3d 707, 721 (4th Cir. 1997). As the panel majority observed, S.E.A. 480 "would be in effect now but for the injunction." 7th Cir. Doc. 130 at 2.

Plaintiffs-Appellees' final criticism is that the panel majority did not offer "any reasoning" in its "stay order and subsequent order denying reconsideration." Mot. 2. That is incorrect: The order denying reconsideration offered a crisp synopsis of the majority's reasoning. *See* 7th Cir. Doc. 130 at 2. In any event, no rule or practice required the majority to say more. Stays commonly issue with no or limited reasoning. *See, e.g.*, *Wallirich v. Samsung Elecs. Am., Inc.*, No. 23-2842 (7th Cir. Nov. 8, 2023); *Barnett v. Raoul*, No. 23-1825 (7th Cir. May 4, 2023).

\* \* \*

At bottom, Plaintiffs-Appellees' request for en banc consideration reduces to simple disagreement with the panel majority. The stay orders do not articulate new rules of substance or procedure. And while Plaintiffs-Appellees allege harm from the stay, any party that loses on a stay pending appeal could make the same allegation. There is no reason for the entire Court to invest its resources in considering all of the materials the panel considered—merits briefing, oral argument, and motions practice—for the purpose of double-checking its work on interlocutory orders. The Court would be better served by denying the request for en banc consideration and waiting to see whether the forthcoming opinion raises any issues warranting its attention.

## CONCLUSION

The motion for en banc consideration should be denied.

Respectfully submitted,

THEODORE E. ROKITA
Attorney General of Indiana

<u>/s/ James A. Barta</u>
JAMES A. BARTA
Solicitor General

Office of the Attorney General
IGC South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204
(317) 232-0709
James.Barta@atg.in.gov

**CERTIFICATE OF COMPLIANCE**

1.     This document complies with the type-volume limitations of Fed. R. App. P. 27(d)(2) because this document contains 4,616 words, excluding the parts exempted by Fed. R. App. P. 32(f).

2.     This document complies with the typeface requirements of Circuit Rule 32(b) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook 12-point font.

April 8, 2024

/s/ James A. Barta
JAMES A. BARTA
Solicitor General

**CERTIFICATE OF SERVICE**

I hereby certify that on April 8, 2024, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ James A. Barta
JAMES A. BARTA
Solicitor General

Office of the Indiana Attorney General
Indiana Government Center South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204-2770
Telephone: (317) 232-0709
Facsimile: (317) 232-7979
James.Barta@atg.in.gov