IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT
No. 23-2366

---

K.C., *et al.*,

Plaintiffs/Appellees,

v.

INDIVIDUAL MEMBERS OF THE MEDICAL LICENSING
BOARD OF INDIANA, *et al.*

Defendants/Appellants

---

On Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division
No. 1:23-cv-00595-JPH-KMB
The Honorable James P. Hanlon, Judge

---

**Plaintiffs' Reply In Support of Motion for Reconsideration En Banc As To
Sua Sponte Stay of Preliminary Injunction**

---

Kenneth J. Falk
*Counsel of Record*
Gavin M. Rose
Stevie J. Pactor
ACLU of Indiana
1031 E. Washington St.
Indianapolis, IN 46202
317/635-4059
kfalk@aclu-in.org
grose@aclu-in.org
spactor@aclu-in.org

Chase Strangio
Harper Seldin
American Civil Liberties Union
125 Broad Street
New York, N.Y. 10004
212/549-2500
cstrangio@aclu-in.org
hseldin@aclu-in.org

*Counsel for Appellees*

# TABLE OF CONTENTS

Table of Authorities……………………………………………………………… i

Introduction ………………………………………………………………….. 1

Reasons for Granting Reconsideration ............................................................... 1

    I.     The Panel's Sua Sponte Order Conflicts with Precedent of this Court and the Supreme Court ....................................................... 1

          A.    Appellees Are Likely to Succeed on Their Equal Protection Claim ................................................................................... 1

          B.    Appellees are Likely to Succeed on Their Due Process Claim ................................................................................... 3

          C.    Appellees are Likely to Succeed on Their First Amendment Claim ................................................................................... 4

    II.    The Balance of Harms Warrant Reconsideration ........................... 5

    III.   The Stay Does Not Accord With Typical Practice .......................... 8

Conclusion ................................................................................................. 9

Certificate of Compliance ................................................................................ 10

# TABLE OF AUTHORITIES

**Cases:**

*Bigelow v. Virginia*, 421 U.S. 809 (1975) .................................................................. 4

*Bostock v. Clayton County, Ga.*, 140 S. Ct. 1731 (2020) ...................................... 2

*Deering Milliken, Inc. v. F.T.C.*, 647 F.2d 1124 (D.C. Cir. 1978) ........................ 9

*Eknes-Tucker v. Governor of Ala.*, 80 F.4th 1205 (11th Cir. 2023) ...................... 2, 9

*Eknes-Tucker v. Marshall*, 603 F. Supp. 3d 1131 (M.D. Ala. 2022), *vacated*, 80 F.4th 1205 (11th Cir. 2023) .................................................................. 7

*Frank v. Walker*, 766 F.3d 755 (7th Cir. 2014) ...................................................... 9

*In re Starnet, Inc.*, 355 F.3d 634 (7th Cir. 2004) .................................................. 9

*K.C. v. Individual Members of Med. Licensing Bd. of Indiana*, No. 23-2366, 2024 WL 1212700 (7th Cir. Mar. 21, 2024) ...................................................... 5, 9

*K. C. v. Individual Members of Med. Licensing Bd. of Indiana*, 677 F. Supp. 3d 802 (S.D. Ind. 2023) .................................................................. 6

*Koe v. Noggle*, No. 1:23-CV-2904-SEG, 2023 WL 5339281 (N.D. Ga. Aug. 20, 2023) ................................................................................................ 7

*L.W. by Williams v. Skrmetti*, 83 F.4th 460 (6th Cir. 2023), *petition for cert. filed,* No. 23-466 (Nov. 2, 2023) ................................................ 1

*Nat'l Resources Defense Council, Inc. v. Winter*, 518 F.3d 704 (7th Cir. 2008) ... 9

*Parham v. J.R.*, 442 U.S. 584 (1979) .................................................................. 3, 4

*Pierce v. Soc'y of Sisters*, 268 U.S. 510 (1925) ...................................................... 3

*Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155 (2015) ............................................ 4

*Stone v Signode*, 777 F. App'x 170 (7th Cir. 2019) ................................................. 10

*Troxel v. Granville*, 530 U.S. 57 (2000) ................................................................. 4

*United States v. Virginia*, 518 U.S. 515 (1996) ...................................................... 2, 3

*Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*,
858 F.3d 1034 (7th Cir. 2017) ................................................................................ 2, 3

**Statutes:**

Ind. Code § 25-1-22-12 ........................................................................................... 2

Ind. Code § 25-1-22-13(b) ....................................................................................... 4

## INTRODUCTION

In the weeks since the panel's sua sponte order staying the district court's preliminary injunction, families in Indiana have been without necessary medical care for their adolescent children, doctors have been unable to meet their ethical obligations to their patients to continue treatment or provide meaningful referrals to alternative providers, and no clarity has been provided from this Court as to the legal reasoning behind the panel's departure from ordinary practice. Appellants fault Appellees for not addressing the likelihood of success prong of the stay standard, but after three panel orders issued without a single case citation, *see* ECF Nos. 124, 127, 130, the particular flaws in the panel's reasoning remain opaque. For the reasons outlined below, in Appellees' Petition for Reconsideration En Banc, and in the underlying briefing before the panel, reconsideration of the panel's stay order is warranted.

## REASONS FOR GRANTING RECONSIDERATION

### I. THE PANEL'S SUA SPONTE ORDER CONFLICTS WITH PRECEDENT OF THIS COURT AND THE SUPREME COURT

Though issued without any reasoning, the panel's implied decision that Appellees are unlikely to prevail on the merits of their claims conflicts with precedent of this Court and the Supreme Court.

#### A. Appellees Are Likely to Succeed On Their Equal Protection Claim

In support of their argument that Appellees are unlikely to succeed on the merits, Appellants rely on out-of-circuit precedent but ignore this Court's binding precedent. *See* ECF No. 136 at 8 (citing *L.W. by Williams v. Skrmetti*, 83 F.4th 460

(6th Cir. 2023), *petition for cert. filed,* No. 23-466 (Nov. 2, 2023); *Eknes-Tucker v. Governor of Ala.*, 80 F.4th 1205 (11th Cir. 2023)). Unlike the Sixth and Eleventh Circuits, this Court has explicitly held that government action that singles out "transgender [adolescents]…who fail to conform to the sex-based stereotypes associated with their assigned sex at birth," triggers heightened equal protection scrutiny. *Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1051 (7th Cir. 2017). S.E.A. 480 does precisely that. It hinges its prohibition on medical treatments that affect an adolescent's "characteristics or features" in a way that is not "typical" of the adolescent's "biological sex." Ind. Code § 25-1-22-12.

Supreme Court precedent commands that heightened scrutiny is warranted when government action is based on notions of what is typical of a person's sex. In *Bostock*, the Supreme Court explained that when a law or policy "penalizes a person identified as male at birth for traits or actions that it tolerates in [a person] identified as female at birth," the person's "sex plays an unmistakable" role. *Bostock v. Clayton County, Ga.*, 140 S. Ct. 1731, 1741-42 (2020); *see also United States v. Virginia*, 518 U.S. 515, 541 (1996) ("*VMI*") (recognizing that heightened scrutiny is required when government action is based on what is considered "typically male" or "typically female"). Indiana's law "penalizes" people with a birth sex of female for the action of masculinizing their appearance, but "tolerates" such action in those with a birth sex of male. When the government enforces a preference for gender conformity as such, heightened scrutiny is warranted.

Applying heightened scrutiny, the government is not likely to carry its burden of showing that categorically banning the only evidence-based medical treatment for gender dysphoria in adolescents is substantially related to an important governmental interest. *See, e.g.*, Dist. Ct. Dkt. 26-3 at ¶ 19 ("Other than the gender-affirming medical care banned under S.E.A. 480, there are no evidence-based treatments for adolescents with gender dysphoria."). When a sex-based classification is used, the burden rests with the state to demonstrate that its proffered justification is "exceedingly persuasive." *Whitaker*, 858 F.3d at 1050 (citing *VMI*, 518 U.S. at 533, to explain under Circuit and Supreme Court precedent that the burden under heightened scrutiny rests entirely on the state). Under heightened scrutiny, the government must explain the line it drew but none of Appellants' proffered justifications explain why this treatment alone was singled out for prohibition. *See* ECF No. 50 at 35-37. Indeed, no court has upheld such a ban under heightened scrutiny.

**B. Appellees Are Likely to Succeed on Their Due Process Claim.**

The Supreme Court has long honored "concepts of the family as a unit with broad parental authority over minor children," recognizing that "our constitutional system long ago rejected any notion that a child is 'the mere creature of the State' . . . ." *Parham v. J.R.*, 442 U.S. 584, 602 (1979) (quoting *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 535 (1925)). S.E.A. 480 also triggers heightened constitutional scrutiny because it burdens the fundamental rights of parents to direct the medical care of

their minor children in accordance with the independent recommendations of medical professionals. *See Parham*, 442 U.S. at 602.

By taking away parents' ability to consent to medical treatment on behalf of their minor children while that same treatment is legal for adults, Indiana "inject[s] itself into the private realm of the family to further question the ability of [a fit] parent to make the best decisions concerning the rearing of that parent's children." *Troxel v. Granville*, 530 U.S. 57, 68-69 (2000). Appellants have no answer to the Parent Plaintiffs' testimony that their children were suffering and their health only improved as a result of the banned care, which they consented to only after a long, deliberative process involving their adolescent children, their doctors, and their best parental judgment. The government now imposes a one-size-fits-all prohibition on treatment, overriding the reasoned judgment and consent of loving parents.

**C. Appellees Are Likely to Succeed on Their First Amendment Claim**

S.E.A. 480 prohibits practitioners from "aid[ing] or abet[ting] another physician or practitioner in the provision" of gender-affirming care. Ind. Code § 25-1-22-13(b). Indiana's law is in the minority in this regard, *see* ECF No. 129-1 at 6-7, and it prevents practitioners from telling patients how to safely continue treatment. This is pure speech: S.E.A. 480 is a content-based regulation of speech, and as such, it is subject to strict scrutiny. *See, e.g., Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163-64 (2015). The State's cursory argument that a prohibition on the dissemination of truthful information can meet this exacting standard does not carry the day. *See, e.g., Bigelow v. Virginia*, 421 U.S. 809, 829 (1975) (holding that a Virginia law

prohibiting encouraging the procuring of an abortion violated the First Amendment when applied to a Virginia newspaper advertising the availability of abortions in New York).

## II. THE BALANCE OF HARMS WARRANTS RECONSIDERATION

The harms to transgender adolescents, their parents, and their medical providers outweigh any theoretical harm to the state of maintaining the status quo ante. The panel improperly suggested that the preliminary injunction upended, rather than maintained, the status quo. "'Status quo' does not mean the state of things the moment a party files suit; it means the 'last peaceable uncontested status existing between the parties before the dispute developed.' 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948 (3d ed. 2023) (internal quotation marks and citation omitted)." ECF No. 130 at 4; *K.C. v. Individual Members of Med. Licensing Bd. of Indiana*, No. 23-2366, 2024 WL 1212700, at *3 (7th Cir. Mar. 21, 2024) (Jackson-Akiwumi, J., dissenting).

The harms to the individual plaintiffs and the classes they represent are severe and immediate. *See* ECF Nos. 125 at 6-10; 129-1 at 4-6; 135 at 5-10. After being deprived of their medical care overnight, the Minor Plaintiffs and hundreds of other transgender adolescents in Indiana were at immediate risk of severe physical side effects from lost access to medication and severe psychological distress from untreated gender dysphoria, an untenable reality persisting for the last seven weeks. *See* ECF Nos. 135 at 7-8; 125 at 6-7. The Parent Plaintiffs, and hundreds of Indiana parents like them, had no time to make contingency arrangements for alternative

care out of state for the minor children, and now cannot receive any help from their children's doctors in making those arrangements. *See* ECF Nos. 135 at 9-10; 125 at 7-8. The Provider Plaintiffs and Provider Class, including physicians like Dr. Bast, are now forced to violate their ethical duties to their patients because they must abandon their patients and cannot provide them with referrals out of state. *See* ECF Nos. 135 at 10-11; 125 at 8-10.

On the other side of the scale, the state proposes upending the status quo based on generalized risks of side effects that are present in all medicine. ECF No. 136 at 9-11. The potential risk of a medical intervention must be weighed against the risk of not providing the medication and the benefit of the medication. Appellants offer a distorted and one-sided picture of the banned treatment to suggest that Appellees are not harmed by having their medical care abruptly terminated. Such claims have no support in the record. Even after explicitly considering the state's now-rehashed arguments regarding risks and side effects, ECF No. 136 at 9-11, the district court held that S.E.A. 480's categorical prohibition swept too broadly because of the "evidence of risks to minors' health and wellbeing from gender dysphoria if those treatments can no longer be provided to minors—prolonging of their dysphoria, and causing additional distress and health risks, such as depression, posttraumatic stress disorder, and suicidality." Dist. Ct. Dkt. 67 at 24-25; *K. C. v. Individual Members of Med. Licensing Bd. of Indiana*, 677 F. Supp. 3d 802, 817 (S.D. Ind. 2023).

Moreover, the state's arguments about the risks and side effects are demonstrably incorrect. The best available evidence developed through decades of

clinical experience and a substantial body of research has demonstrated the safety and efficacy of these treatments for adolescents with gender dysphoria. Dist. Ct. Dkts. 26-1 ¶¶ 41-56; 26-2 ¶¶ 35-45, 76, 78-79; 26-3 ¶¶ 12, 14-17, 21. This care reduces distress at the time of treatment and minimizes dysphoria later in life. Dist. Ct. Dkts. 26-1 ¶¶ 40, 57; 26-2 ¶¶ 57-58; 26-3 ¶¶ 53, 57. Cross-sectional and longitudinal studies show that this care prevents the worsening of severe gender dysphoria symptoms in adolescents and improves overall health. Dist. Ct. Dkt. 26-3 ¶¶ 14-15, 32. None of the risks attendant to puberty-delaying medication and hormone therapy that the state points to, including bone density or fertility, are unique to gender-affirming care: these medication carry comparable risks and side effects regardless of the indication for which they are prescribed. Dist. Ct. Dkts. 26-2 ¶¶ 55-56, 59-60, 66-68, 70-71, 74-75, 77. And the state is simply wrong about the persistence of gender dysphoria in adolescents. ECF No. 136 at 11. The vast majority of those with gender dysphoria in adolescence will continue to experience gender dysphoria, and so "watchful waiting" after the onset of puberty is not an accepted approach because of the severe distress it would cause to patients for whom medical treatment is indicated. Dist. Ct. Dkts. 58-2 ¶ 26; 58-3 ¶ 16.[1]

---

[1] Indeed, the majority of Appellants' claims cite to the testimony of James Cantor, who has no experience treating youth and who other courts have found unreliable. See *Koe v. Noggle*, No. 1:23-CV-2904-SEG, 2023 WL 5339281, at *21 n.28 (N.D. Ga. Aug. 20, 2023) (giving Dr. Cantor's "views less weight as to the medical conclusions that can reasonably be drawn from the evidence for the treatment of gender dysphoria in minors" because "[h]e is not a physician and has no experience treating gender dysphoria in youth as such."); *Eknes-Tucker v. Marshall*, 603 F. Supp. 3d 1131, 1142–43 (M.D. Ala. 2022) (explaining that the court gave Dr. James Cantor's "testimony regarding the treatment of gender dysphoria in minors very little weight"), *vacated*, 80 F.4th 1205 (11th Cir. 2023).

It is the deprivation of this care, not its provision, that leads to poorer mental health outcomes: delayed or denied care—precisely what is happening in Indiana because of the panel's sua sponte stay—frequently results in increased depression, anxiety, suicidal ideation and self-harm, increased substance use, and deteriorating school performance. Dist. Ct. Dkts. 26-1 ¶ 59; 26-2 ¶¶ 80-81; 26-3 ¶ 32. Contrary to the state's assertions now, ECF No. 136 at 11, there are no evidence-based alternatives to this medical care after the onset of puberty, and as the state already conceded at oral argument below, Prelim. Inj. Tr. at 35:13-14, there is no evidence that psychotherapy alone addresses gender dysphoria where medical interventions are clinically indicated. Dist. Ct. Dkts. 26-1 ¶¶ 10, 58; 26-3 ¶ 19; 58-2 ¶¶ 22-25, 38; 58-4 ¶¶ 11, 39. The risks of severe physical and psychological harms increase every day for the transgender adolescents in Indiana who are no longer able to access the only evidence-based medical care for their gender dysphoria as a result of the panel's unreasoned sua sponte stay of the district court's preliminary injunction.

### III. THE STAY DOES NOT ACCORD WITH TYPICAL PRACTICE

Though not prohibited, the panel's sua sponte stay that came with no opinion, with no reasoning, and upon no motion was out of step with typical practice. "By acting sua sponte (rather than upon a motion) to disrupt the status quo (rather than to maintain it) to Plaintiff-Appellees' irreparable detriment (despite the State's lesser harm) without explanation (despite the gravity of the issue and the greater showing we require before issuing stays), the majority's stay appears to be an inclination governed by no legal standard rather than judgment guided by sound legal

principles." ECF No. 130 at 7; *K.C. v. Individual Members of Med. Licensing Bd. of Indiana*, No. 23-2366, 2024 WL 1212700, at *4 (7th Cir. Mar. 21, 2024) (Jackson-Akiwumi, J., dissenting).

Appellants' citations to other cases where stays were entered are inapposite. In *Eknes-Tucker v. Governor of Alabama*, 80 F.4th 1205 (11th Cir. 2023), the Court had already issued an opinion on the merits, a petition for rehearing was pending, and the Appellants moved for a stay. In *Frank v. Walker*, 766 F.3d 755 (7th Cir. 2014), the stay was accompanied by an opinion that explained that basis for a stay, including changed equities. In *Stone v Signode*, 777 F. App'x 170 (7th Cir. 2019), this Court issued an unpublished opinion vacating stays that it had issued. In *Nat'l Resources Defense Council, Inc. v. Winter*, 518 F.3d 704 (7th Cir. 2008), the Ninth Circuit concurrent with the stay issued an opinion on the merits and explained the stay. In *In re Starnet, Inc.*, 355 F.3d 634 (7th Cir. 2004), the Court issued a stay upon party motion and with an opinion. In *Deering Milliken, Inc. v. F.T.C.*, 647 F.2d 1124 (D.C. Cir. 1978), the D.C. Circuit stayed injunctions pending resolution of the petitions for certiorari, after issuing an opinion on the merits and explaining its reasons.

## CONCLUSION

The en banc Court should reconsider the panel's stay and allow the injunction to remain in place until the opinion issues and the appellate process proceeds.

Kenneth J. Falk
*Counsel of Record*
Gavin M. Rose
Stevie J. Pactor
ACLU of Indiana
1031 E. Washington St.
Indianapolis, IN 46202
317/635-4059
fax: 317/635-4105
kfalk@aclu-in.org
grose@aclu-in.org
spactor@aclu-in.org

Chase Strangio
Harper Seldin
American Civil Liberties Union
125 Broad Street
New York, NY 10004
212/549-2500
cstrangio@aclu.org
hseldin@aclu.org

Attorneys for Appellees

**CERTIFICATE OF COMPLIANCE**

1. This document complies with the type-volume limitation of Circuit Rule 32(c) because this document contains 2473 words, excluding the parts exempted by Fed. R. App. P. 32(f).

2. This document complies with the type-face and type-style requirements of Circuit Rule 32(b) because this document was prepared using Microsoft Word in Century Schoolbook font with the text in 12-point font and the footnotes in 11-point font.

Kenneth J. Falk
Attorney at Law