No. 23-2366

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

K.C., ET AL.,

*Plaintiffs-Appellees*,

v.

INDIVIDUAL MEMBERS OF THE MEDICAL
LICENSING BOARD OF INDIANA, ET AL.,

*Defendants-Appellants.*

On Appeal from the United States District Court for the
Southern District of Indiana, No. 1:23-cv-00595-JPH-KMB,
The Honorable James P. Hanlon, Judge

## RESPONSE IN OPPOSITION TO
## PETITION FOR REHEARING EN BANC

Office of the Attorney General
IGC South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204
(317) 232-0709
James.Barta@atg.in.gov

THEODORE E. ROKITA
Attorney General of Indiana

JAMES A. BARTA
Solicitor General

JENNA M. LORENCE
Deputy Solicitor General

KATELYN E. DOERING
Deputy Attorney General

*Counsel for Defendants-Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION ................................................................................................ 1

ARGUMENT ....................................................................................................... 2

I.   The Panel's Equal-Protection Ruling Is Consistent with Supreme Court and This Circuit's Precedent ........................................................................ 2

II.  The Supreme Court's Substantive-Due-Process Decisions Do Not Entitle Parents To Procure Unlawful Gender-Transition Procedures ........................ 5

III. The Challenged Statute Raises No First Amendment Concern and Does Not Warrant En Banc Review ...................................................................... 7

    A.  Plaintiffs' and the dissents' objections regarding factual and state law issues illustrate that en banc review is not warranted ................... 8

    B.  The panel's First Amendment ruling is correct ..................................... 9

    C.  The panel's decision does not create a circuit split .............................. 12

CONCLUSION ................................................................................................. 13

# TABLE OF AUTHORITIES

**CASES**

*Abigail All. for Better Access to Developmental Drugs v. von Eschenbach*,
  495 F.3d 695 (D.C. Cir. 2007) ................................................................. 5

*Bigelow v. Virginia*,
  421 U.S. 809 (1975) ................................................................................ 10

*Bostock v. Clayton Cnty.*,
  590 U.S. 644 (2020) ................................................................................. 4

*Dist. Att'y's Off. for Third Jud. Dist. v. Osborne*,
  557 U.S. 52 (2009) ................................................................................... 7

*Dobbs v. Jackson Women's Health Org.*,
  597 U.S. 215 (2022) .........................................................................*passim*

*Doe v. City of Lafayette*,
  377 F.3d 757 (7th Cir. 2004) ................................................................... 6

*Doe v. Univ. of Ill.*,
  138 F.3d 653 (7th Cir. 1998) ................................................................... 9

*Easley v. Reuss*,
  532 F.3d 592 (7th Cir. 2008) ................................................................... 8

*Eknes-Tucker v. Governor of Ala.*,
  80 F.4th 1205 (11th Cir. 2023) ........................................................ 2, 4, 7

*Geduldig v. Aiello*,
  417 U.S. 484 (1974) ............................................................................ 3, 4

*HM Holdings, Inc. v. Rankin*,
  72 F.3d 562 (7th Cir. 1995) ..................................................................... 8

*Holder v. Humanitarian L. Project*,
  561 U.S. 1 (2010) ................................................................................... 11

*John Doe No. 1. v. Reed*,
  561 U.S. 186 (2010) ............................................................................... 10

CASES [CONT'D]

*K.C. v. Individual Members of Med. Licensing Bd. of Indiana*,
　121 F.4th 604 (7th Cir. 2024) ................................................................. *passim*

*L.W. v. Skrmetti*,
　83 F.4th 460 (6th Cir. 2023) ................................................................. 2, 7

*Mitchell v. Clayton*,
　995 F.2d 772 (7th Cir. 1993) ................................................................. 5

*Parham v. J.R.*,
　442 U.S. 584 (1979) ................................................................. 6

*Planned Parenthood Great Nw., Haw., Ind., Ky. v. Labrador*,
　122 F.4th 825 (9th Cir. 2024) ................................................................. 12

*Prince v. Massachusetts*,
　321 U.S. 158 (1944) ................................................................. 7

*Reed v. Reed*,
　404 U.S. 71 (1971) ................................................................. 2

*Rumsfeld v. F. for Acad. & Inst. Rights, Inc.*,
　547 U.S. 47 (2006) ................................................................. 10

*United States v. Hansen*,
　599 U.S. 762 (2023) ................................................................. 9

*United States v. O'Brien*,
　391 U.S. 367 (1968) ................................................................. 10

*United States v. Virginia*,
　518 U.S. 515 (1996) ................................................................. 2, 3

*Washington v. Glucksberg*,
　521 U.S. 702 (1997) ................................................................. 1, 5, 6

*Weinberger v. Wiesenfeld*,
　420 U.S. 636 (1975) ................................................................. 3

*Whitaker ex rel. Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*,
　858 F.3d 1034 (7th Cir. 2017) ................................................................. 4

**STATUTES AND RULES**

18 U.S.C. § 2339A(b)(2)–(3) ............................................................................... 11

Ind. Code § 9-24-3-2.5 .......................................................................................... 7

Ind. Code § 25-1-22-5 ........................................................................................... 3

Ind. Code § 25-1-22-13(a) ..................................................................................... 3

Ind. Code § 25-1-22-13(b) ..................................................................................... 8

Ind. Code § 35-48-4-14.7(d) .................................................................................. 7

Fed. R. App. P. 40(b)(2), (c) .................................................................................. 8

# INTRODUCTION

Indiana and 25 other States have enacted statutes barring physicians from providing gender-transition procedures to minors. This term, the Supreme Court is set to decide whether those statutes raise any equal-protection questions. But that much-debated issue is not the focus of plaintiffs' rehearing petition. As plaintiffs observe (at 4), the Supreme Court's forthcoming decision will be "likely dispositive" of their equal-protection challenge to Indiana's regulation of gender-transition procedures. So the focus of their petition is the panel's holdings that parents likely have no unenumerated right to procure gender-transition procedures for their children, and that Indiana physicians likely do not have a First Amendment right to aid and abet gender-transition procedures. Neither of those holdings warrants en banc review.

Plaintiffs primarily argue that the panel's analysis of their substantive due-process claim is wrong. To succeed on such a claim, a plaintiff must "careful[ly] descri[be]" a putative right and provide "objective[]" evidence that the right is so "deeply rooted in this Nation's history and tradition" such that "neither liberty nor justice would exist" without it. *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997). But plaintiffs cite no evidence of a historical tradition that allows parents to demand puberty blockers, cross-sex hormones, or sex-change surgeries for their children. Nor do plaintiffs even cite evidence of a deeply rooted tradition under which parents can demand that doctors provide illegal medical procedures or banned drugs to children. Every appeals court to have considered a due-process claim like plaintiffs' has

1

rejected it. *See L.W. v. Skrmetti*, 83 F.4th 460, 475 (6th Cir. 2023), *cert. granted sub nom. United States v. Skrmetti*, 144 S. Ct. 2679 (2024); *Eknes-Tucker v. Governor of Ala.*, 80 F.4th 1205, 1220–24 (11th Cir. 2023), *reh'g en banc denied*, 114 F.4th 1241 (11th Cir. 2024).

The panel also correctly held that plaintiffs are unlikely to succeed on their First Amendment challenge. As the panel stated, physicians do not have a First Amendment right to aid and abet unlawful conduct merely because they happen to use words. Plaintiffs accuse the panel of "misunderstanding" their complaint, claiming that they only wish to refer minors to physicians who can lawfully provide gender-transition procedures. Pet. 8. But the injunction on appeal gave (and plaintiffs' complaint requests) far broader relief—it enjoined Indiana from enforcing its aiding-and-abetting statute against *any* physician facilitating gender-transition procedures, including where the procedures are performed illegally. And even if Indiana's statute affects some speech around the edges, it survives any level of scrutiny. Cursory dicta from a Ninth Circuit case focused on different issues does not suggest otherwise.

## ARGUMENT

### I. The Panel's Equal-Protection Ruling Is Consistent with Supreme Court and This Circuit's Precedent

The panel correctly held that S.E.A. 480 does not discriminate based on sex. *K.C. v. Individual Members of Med. Licensing Bd. of Indiana*, 121 F.4th 604, 617 (7th Cir. 2024). Under Supreme Court precedent, a statute classifies based on sex where it "give[s] a mandatory preference to members of either sex over members of the other," *Reed v. Reed*, 404 U.S. 71, 76 (1971), or "closes a door or denies opportunity"

2

to one sex, *United States v. Virginia*, 518 U.S. 515, 532–33 (1996). So, for example, a law that allows women, but not men, to receive benefits after a spouse's death discriminates based on sex. *See Weinberger v. Wiesenfeld*, 420 U.S. 636, 639–42 (1975). S.E.A. 480 does not discriminate based on sex. It does not allow physicians to provide *any* minor—male or female—with gender-transition procedures. Ind. Code § 25-1-22-13(a). S.E.A. 480 only uses the term "sex" in distinguishing the regulated procedures from other procedures that use sex hormones to accomplish different medical objectives. *See* § 25-1-22-5; *see* Dkt. 48-2 at 20–24, 27–29, 34–36, 38–42. S.E.A. 480 does not create a preference for boys or girls.

Some of the procedures S.E.A. 480 regulates are sex specific. *See K.C.*, 121 F.4th at 618. Physicians, for example, prescribe different sex hormones to boys and girls with gender dysphoria. *Id.* at 619. But the Supreme Court has already rejected the notion that a statute discriminates based on sex where it regulates a "medical procedure that only one sex can undergo." *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 236 (2022). For example, in *Geduldig v. Aiello*, 417 U.S. 484, 496–97 (1974), the Court upheld a statute that declined to compensate workers for disabilities attributable to pregnancy. The Court conceded that only women could become pregnant. *Id.* at 496 n.20. But it explained that the statute did not discriminate based on sex; rather, the statute divided people "into two groups" not based on sex—"pregnant women and nonpregnant persons." *Id.* So too with S.E.A. 480.

Plaintiffs do not address the panel's careful analysis of the Supreme Court's full body of equal-protection decisions. Instead, plaintiffs quote (at 4) a single, generic

3

line from *Bostock v. Clayton County*, 590 U.S. 644 (2020). But plaintiffs have not brought a Title VII challenge. This case concerns the Fourteenth Amendment, which "was ratified nearly a century before the Civil Rights Act," *K.C.*, 121 F.4th at 619–20, and "contains none of the text that the Court interpreted in *Bostock*," *Eknes-Tucker v. Governor of Alabama*, 80 F.4th 1205, 1229 (11th Cir. 2023). A passing reference to *Bostock* fails to show that there is any conflict between it and the panel's decision.

Nor is there a conflict with *Whitaker ex rel. Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034 (7th Cir. 2017). In *Whitaker*, this Court held that a school policy requiring students to use the single-sex bathroom corresponding with the "sex listed on the student's birth certificate" classified based on sex. *Id.* at 1051. But *Whitaker* did not hold that a classification is sex-based anytime that it references sex. *K.C.*, 121 F.4th at 617. "Such a statement would directly contradict the Supreme Court['s]" holdings in *Dobbs* and *Geduldig*. *Id.* Rather, *Whitaker* mentioned that the policy "referenc[ed] sex" only to explain *how*, not "*why* its classification was sex-based." *K.C.*, 121 F.4th at 618 (citing *Whitaker*, 858 F.3d at 1051). No other decision from this Court reads *Whitaker* as plaintiffs do.

Besides, as the panel observed, physicians can comply with S.E.A. 480 without referencing sex. A physician may ask if a patient "has a strong desire to be of some alternative gender different from one's assigned gender," a strong desire to be treated as "some alternative gender," and whether the patient has felt that way for six months while experiencing "clinically significant distress." *K.C.*, 121 F.4th at 618 (cleaned up). If the patient answers "yes" to those questions, "the physician knows—

4

while still ignorant to the patient's sex—that SEA 480 prohibits two treatment options." *Id.* That reality, too, distinguishes this case from *Whitaker*. The panel's equal-protection ruling does not create a conflict that warrants the full Court's attention.

## II. The Supreme Court's Substantive-Due-Process Decisions Do Not Entitle Parents To Procure Unlawful Gender-Transition Procedures

The panel's ruling on plaintiffs' substantive-due-process claim does not warrant en banc review either. As the Supreme Court has explained, courts must "exercise the utmost care" before declaring that a statute violates an unwritten right. *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). An unwritten right may be deemed fundamental only if it is "deeply rooted in [our] history and tradition" and "essential to our Nation's 'scheme of ordered liberty.'" *Dobbs*, 597 U.S. at 237. And the right cannot be described at a high level of generality. *See id.* at 257. The description must be more "'careful'" and "precise." *Glucksberg*, 521 U.S. at 721, 723.

The panel properly applied Supreme Court precedent here. Observing that gender-transition procedures for minors are highly controversial and relatively novel—the first reported use of puberty blockers for a transgender child was in 1998 in the Netherlands—the panel held that there is no deeply rooted tradition of access to them. *K.C.*, 121 F.4th at 625–26. Nor is there a deeply rooted tradition of granting parents access to banned medical procedures for their children. *See id.* at 626–27. Indeed, over three decades ago, this Court ruled that a "patient does not have a constitutional right to obtain a particular type of treatment or to obtain treatment from a particular provider if the government has reasonably prohibited that type of treatment." *Mitchell v. Clayton*, 995 F.2d 772, 775 (7th Cir. 1993); *accord Abigail All. for*

5

*Better Access to Developmental Drugs v. von Eschenbach*, 495 F.3d 695, 711 (D.C. Cir. 2007) (en banc) (rejecting asserted right to access experimental drugs).

Plaintiffs recharacterize their asserted right as a "right of parents to control their children's care and upbringing" or as a "right to obtain necessary medical care for their children." Pet. 4–5. But neither is the sort of "specific and concrete" articulation of a putative right that controlling precedent demands. *Doe v. City of Lafayette*, 377 F.3d 757, 769 (7th Cir. 2004) (en banc). Just like a putative right to physician-assisted suicide cannot be described as a "'right to die,'" *Glucksberg*, 521 U.S. at 722, and a putative right to abortion cannot be described as a right to an "intimate and personal choice" that is "central to personal dignity and autonomy," *Dobbs*, 597 U.S. at 255, the putative right here cannot be described as a right to direct a child's upbringing or obtain necessary medical care. Adopting plaintiffs' broad formulation would mean that parents have a right to override laws regulating the medical profession whenever someone decides a procedure or medication is "necessary."

Neither the Supreme Court nor this Court has held that parents have the right to demand that physicians provide drugs or service the State has banned. *Parham v. J.R.*, 442 U.S. 584 (1979)—a case about procedural due process—merely addressed the "kind of inquiry" required before parents could decide "to have a child institutionalized for mental health care," which was already legal in Georgia. *Id.* at 605–06. *Parham* did not hold that parents can force States to allow physicians to administer illegal procedures to children. Nor did it require States to choose between banning activities for "all its citizens" and banning them for no one. Pet. 6. Other cases

6

establish that States may impose restrictions on children but not adults. *See, e.g.*, *Prince v. Massachusetts*, 321 U.S. 158, 168–69 (1944). If plaintiffs' reading of *Parham* were correct and parents have a wide-ranging right "to control their children's care and upbringing," Pet. 5, parents would have a right to demand that States issue driver's licenses to thirteen-year-olds, *contra* Ind. Code § 9-24-3-2.5, or that stores sell pseudoephedrine to minors, *contra* § 35-48-4-14.7(d).

And contrary to plaintiffs' assertion (at 6–7), Indiana has compelling reasons to regulate gender-transition procedures to protect children's well-being. The district court recognized the "safety and effectiveness of puberty blockers and hormone therapy is uncertain and unsettled." SA23; *accord Skrmetti*, 83 F.4th at 489; *Eknes-Tucker*, 80 F.4th at 1230; Dkt. 49-10 at 13–14; *see* Dkt. 48-1 at 21, 39, 44; Taylor et al., *Masculinising and feminising hormone interventions for adolescents experiencing gender dysphoria or incongruence: a systematic review*, 109 Arch Dis Child s48, s54 (2024); Taylor et al., *Interventions to suppress puberty in adolescents experiencing gender dysphoria or incongruence: a systematic review*, 109 Arch Dis Child s33, s45 (2024). Regulating risky, unproven procedures for children is precisely what state legislatures have the authority to do. *See Dobbs*, 597 U.S. at 274. This Court should not "short circuit" the "prompt and considered legislative response" to an ongoing scientific debate. *Dist. Att'y's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 73 (2009).

### III. The Challenged Statute Raises No First Amendment Concern and Does Not Warrant En Banc Review

The panel's First Amendment ruling regarding S.E.A. 480's aiding-and-abetting provision does not warrant the full Court's attention either. Under S.E.A. 480, a

7

"physician or other practitioner may not aid or abet another physician or practitioner in the provision of gender transition procedures to a minor." Ind. Code § 25-1-22-13(b). The district court enjoined that provision's enforcement as applied "to providing patients with information, making referrals to other medical providers, and providing medical records or other information to medical providers." SA35. As the panel correctly held, however, S.E.A. 480 likely does not violate the First Amendment. The statute regulates conduct—not speech—and to the extent it reaches any speech, "it only regulates speech integral to unlawful conduct." 121 F.4th at 629.

A. **The standard for en banc review is not met**

Plaintiffs' principal attack on the panel defeats any argument that this case meets the standard for en banc review. They assert the panel's ruling "is predicated on a basic misunderstanding of the *facts*." Pet. 8 (emphasis added). But the "'function of en banc hearings is not to review alleged errors.'" *HM Holdings, Inc. v. Rankin*, 72 F.3d 562, 563 (7th Cir. 1995); *see* Fed. R. App. P. 40(b)(2), (c). It is "to address issues that affect the integrity of the circuit's case law (intra-circuit conflicts) and the development of the law (questions of exceptional importance)." *Easley v. Reuss*, 532 F.3d 592, 594 (7th Cir. 2008). A putative factual error falls into neither category.

The same goes for the dissent's argument that there is no First Amendment issue because Plaintiffs' "proposed speech falls outside SEA 480's purview." 121 F.4th at 646 (Jackson-Akiwumi, J., dissenting). If, as the dissent contends, there is a material, unresolved question about state law, that question ought to be resolved before the full Court takes the case. But the parties did not brief, and the district court did not address, any state-law questions. *See K.C.*, 121 F.4th at 631 (majority opinion).

8

The full Court should not be the first to consider issues. *See Doe v. Univ. of Ill.*, 138 F.3d 653, 679 (7th Cir. 1998) (opinion of Easterbrook, J.) (en banc review would "be premature" before "parties have had an opportunity to brief the subject with a recognition of its significance"), *cert. granted, judgment vacated*, 526 U.S. 1142 (1999).

## B. The panel's First Amendment ruling is correct

The panel's ruling is correct regardless. S.E.A. 480 targets activities that are "'an integral part of' unlawful conduct"—specifically, actions that aid or abet gender-transition procedures. *K.C.*, 121 F.4th at 628. And it "'has never been deemed an abridgement of freedom of speech . . . to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language.'" *United States v. Hansen*, 599 U.S. 762, 783 (2023).

Plaintiffs contend their challenge does not implicate speech integral to illegal conduct because they want to refer patients to providers who can lawfully provide gender-transition procedures. Pet. 8–9. As the panel noted, however, plaintiffs did not limit their First Amendment challenge to that scenario. *K.C.*, 121 F.4th at 631. Rather, plaintiffs argued that S.E.A. 480 violated the First Amendment to the extent that it would prevent practitioners from engaging in any "communications that are designed to allow another physician or practitioner to provide 'gender transition procedures'"—regardless of where that physician is located. Dkt. 1 ¶¶ 44, 217.

Similarly, the injunction that plaintiffs seek to defend on appeal prohibits S.E.A. 480's application to Indiana practitioners *whenever* they "provid[e] patients with information, mak[e] referrals to other medical providers," or "provid[e] medical

9

records or other information to medical providers." SA35. It does not merely prohibit plaintiffs from making referrals to physicians in other States who can lawfully perform gender-transition procedures. So the panel had to consider the injunction's full sweep. *See John Doe No. 1. v. Reed*, 561 U.S. 186, 194, 201 (2010).

*Bigelow v. Virginia*, 421 U.S. 809 (1975), does not help plaintiffs. *Contra* Pet. 9–10. In that case, the Court sustained a First Amendment challenge to a statute that prevented the publishing of an advertisement that said abortion was lawful in New York. *Id.* at 812–13. But the Court stressed that the advertisement provided information of "clear 'public interest'" about an activity (abortion) infected with "constitutional interests"—not merely speech designed to further unlawful conduct. *Id.* at 821–22.

Even if S.E.A. 480 regulated more than activity integral to unlawful conduct, it raises no First Amendment concern. Plaintiffs argue that S.E.A. 480 "is a content- and viewpoint-based regulation of speech." Pet. 11. But the statute nowhere mentions speech—much less draws lines based on content or viewpoint. It bars *any* action designed to aid or abet a gender-transition procedure—be that assisting with a sex-change surgery, dispensing cross-sex hormones, or transporting minors to appointments. Any effects on speech are "plainly incidental" to its "regulation of conduct." *Rumsfeld v. F. for Acad. & Inst. Rights, Inc.*, 547 U.S. 47, 62 (2006) (holding an equal-access requirement's impact on speech was incidental); *see United States v. O'Brien*, 391 U.S. 367, 377 (1968) (holding the same for a regulation of draft cards).

*Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010)—which involved a challenge to a statute prohibiting material support for terrorist organizations—does not suggest otherwise. *Contra* Pet. 10. There, the Court rejected the argument that the "only thing actually at issue in th[e] litigation" was "conduct." 561 U.S. at 27. But the Court did so because the challenged statute "regulate[d] speech on the basis of its content," expressly prohibiting speech that "impart[ed] a 'specific skill' or communicates advice derived from 'specialized knowledge'" while allowing speech that "impart[ed] only general or unspecialized knowledge." *Id.* (quoting 18 U.S.C. § 2339A(b)(2)–(3)). By contrast, S.E.A. 480 draws no lines based on content.

Plaintiffs fault the panel for not applying *O'Brien*'s test for regulations that have incidental burdens on speech. Pet. 13 n.6. But the panel did not need to apply that test because it concluded that S.E.A. 480 impacted "only" unprotected speech. *K.C.*, 121 F.4th at 628. Nor did the panel abuse its discretion by leaving any constitutional issues that might remain for the district court to explore. *See id.* at 631.

Regardless, S.E.A. 480 satisfies any standard of scrutiny. Indiana has a compelling interest in preventing its licensed practitioners from providing—as well as helping others to provide—risky and unproven medical procedures to minors. *See K.C.*, 121 F.4th at 633. And S.E.A. 480 sweeps no further than necessary to further that interest. It does not prevent doctors from educating patients about gender dysphoria or even cross-sex hormones. It only prohibits conduct designed to aid others in providing the procedures that Indiana deems too risky to permit for any child.

11

Indiana is not required to let other States that have reached different conclusions co-opt its licensed practitioners into abetting those procedures from Indiana.

### C. The panel's decision does not create a circuit split

Finally, the panel's decision does not conflict with *Planned Parenthood Great Northwest, Hawaii, Indiana, Kentucky v. Labrador*, 122 F.4th 825 (9th Cir. 2024). In that appeal, the appellants only raised justiciability issues. *Id.* at 834–35, 844. No merits arguments were raised. Only in dicta did the Ninth Circuit suggest that an opinion from the Idaho Attorney General stating that an Idaho physician could not lawfully refer a woman across state lines for an abortion violated the First Amendment. *Id.* at 833, 843–44; *see id.* at 845 (Miller, J., concurring in part) (observing that the "constitutional questions" had "not been briefed" and were "unnecessary to the resolution of th[e] appeal"). And even then, the Ninth Circuit did not address the principal issues before the panel in this case: whether S.E.A. 480 prohibits anything but activities integral to unlawful conduct and whether S.E.A. 480's target is conduct.

In all events, this Court need not take this case en banc at the preliminary-injunction stage to address dicta from the Ninth Circuit offered without the benefit of briefing. The panel correctly applied all controlling precedent from the Supreme Court and this Circuit. If plaintiffs believe that factual issues need to be clarified or that they have better First Amendment arguments to make (including ones based on the Ninth Circuit's decision), they will have opportunity to press those points before the district court. The full Court, however, need not be the first to address them.

## CONCLUSION

The petition for rehearing should be denied.

Respectfully submitted,

THEODORE E. ROKITA
Attorney General of Indiana

/s/ James A. Barta
JAMES A. BARTA
Solicitor General

JENNA M. LORENCE
Deputy Solicitor General

KATELYN E. DOERING
Deputy Attorney General

Office of the Attorney General
IGC South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204
(317) 232-0709
James.Barta@atg.in.gov

*Counsel for Defendants-Appellants*

# CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limitation of Fed. R. App. P. 40(d)(4) because this document contains 3,364 words, excluding the parts exempted by Fed. R. App. P. 32(f).

2. This document complies with the typeface requirements of Circuit Rule 32(b) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook 12-point font.

February 28, 2025

/s/ James A. Barta
JAMES A. BARTA
Solicitor General

**CERTIFICATE OF SERVICE**

I hereby certify that on February 28, 2025, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ James A. Barta
JAMES A. BARTA
Solicitor General

Office of the Indiana Attorney General
Indiana Government Center South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204-2770
Telephone: (317) 232-0709
Facsimile: (317) 232-7979
James.Barta@atg.in.gov